UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE: )
)   Case No. 15-23977-TBM
WESTERN CONVENIENCE STORES, INC. )
EIN: 84-1160742 )   Chapter 11
)
Debtor. )

## MOTION FOR APPROVAL OF LETTER OF INTENT
## REGARDING PROSPECTIVE FINANCING

The Debtor and Debtor in Possession, Western Convenience Stores, Inc. ("Debtor"), by and through its attorneys, Kutner Brinen Garber, P.C., moves the Court for entry of an order approving a Letter of Intent by and between the Debtor and Shea Capital Group, LLC and Och Ziff Capital Investments, LLC and as grounds therefor states as follows:

**Background**

1.      The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on December 28, 2015.  The Debtor remains a debtor-in-possession.

2.      The Debtor is engaged in business as the operator of a chain of 43 convenience stores that sell gasoline, snack foods, and related products in the States of Colorado and Nebraska.

3.      The Debtor is wholly owned by Hossein Taraghi ("Taraghi").   Taraghi at one time owned thirty seven (37) limited liability companies (the "HDT Entities") that own certain real property leased to the Debtor pursuant to separate leases (each, a "Lease"), including 37 gas stations and convenience stores.  In addition, two other limited liability companies own two (2) properties, one of which is the Debtor's office and one is a vacant property.  Each limited liability company owns one property, and all of the limited liability companies were owned by Taraghi either directly or through a holding company known as H.D.T. Limited Liability Company ("HDT").  While the foresaid accounts for 39 properties, including an office, another 6 retail locations are owned by third parties and leased directly to the Debtor.

4.      The Debtor generated approximately $250,000,000 during its 2014 fiscal year in gross sales.  Most of the revenue generated is from the sale of motor fuels which include gasoline and diesel fuel.  Additional revenue is generated from sales of product from the convenience stores and limited restaurant and liquor sales from certain locations.

5. On January 29, 2016 the Debtor filed with the Court its Motion For Approval Of Restructuring Support And Settlement Agreement (Suncor Energy (U.S.A.) Inc. ("Suncor Settlement Motion"). Docket # 149. The Suncor Settlement Motion set forth a proposed agreement, known as the Restructuring Support And Settlement Agreement and two sale agreements (collectively, "RSSA"), which has been reached between the Debtor, Taraghi, certain related entities referred to as the HDT Entities, and Suncor Energy (U.S.A.) Inc. ("Suncor"). The Suncor Settlement Motion is subject to objection by creditors and the last date for objection is February 19, 2016. The Suncor Settlement Motion limits the payment due from the Debtor and Taraghi to Suncor to the amount of $5,000,000 plus other consideration as set forth in the RSSA. In exchange, Taraghi will reacquire his ownership in the HDT Entities from Suncor. The exact terms of the Suncor Settlement Motion should be reviewed by interested parties.

6. The Debtor filed this Chapter 11 case with the express goal of resolving its issues with Suncor and refinancing all of its outstanding debt.

7. The RSSA provides that the Debtor has a period of sixty (60) days from the date of the RSSA, January 29, 2016, within which to obtain Court approval of the RSSA in the Debtor's pending Chapter 11 bankruptcy case, by March 29, 2016. If the RSSA is approved, the Debtor and Taraghi will have a period of one hundred and eighty (180) days from the date of the RSSA to close on the sale transactions with Suncor under which the $5,000,000 is paid and certain other consideration provided, by July 27, 2016.

8. The Debtor retained the firm of NRC Realty & Capital Advisors, LLC ("NRC") to advise the Debtor on raising capital to refinance all of the convenience stores, arrange for their reacquisition by Taraghi under the RSSA, pay all creditors in the case in full and refinance the existing first lien mortgages on the real property owned by the HDT Entities. The HDT Entities that own the real property, including the convenience stores and gas stations, will be reacquired by Taraghi. These properties along with the business operation of the convenience store locations provide an asset base that will support a loan which will fund payment in full to all creditors, including the existing mortgage holders.

9. NRC has located a lender who is interested in providing the required financing to the Debtor and the HDT Entities at the time they are reacquired by Taraghi. The lender will be an entity

jointly owned by affiliates of Shea Capital Group, LLC and Och Ziff Capital Investments, LLC (such entity, the "Lender").

10.     The Lender is capable of providing the funds necessary for the loan in the time frame required by the Debtor.

11.     The Lender, the Debtor, and Taraghi have entered into a generally non-binding letter of intent dated February 16, 2016 ("LOI"). The LOI contains the general terms of the loan which is proposed to be made to the Debtor and the HDT Entities. Certain aspects of the LOI are binding on the Debtor. Since the binding aspects of the LOI constitute an agreement out of the ordinary course of business, approval of the LOI is sought pursuant to this Motion. At the time a formal loan agreement is signed, that agreement will be filed with the Court along with a motion for approval on notice to creditors. The LOI also requires Court approval of the provisions that bind the Debtor.

12.     The proposed loan will have the following general terms and conditions, however the exact terms will be subject to further negotiation and documentation over the coming weeks. The terms and conditions are generally set forth as follows:

- a.     Amount of loan: $33,000,000;
- b.     Term of loan: 5 years, subject to declining prepayment fees;
- c.     Amortization: 25 year mortgage style;
- d.     Interest rate: 8.125% payable monthly in arrears;
- e.     Origination Fee: 50 basis points;
- f.     Collateral: A first lien on properties owned by the HDT Entities that will be reacquired by Taraghi, HDT Entities membership interests and Debtors stock;
- g.     Other loan conditions will include a limited guarantee from Taraghi, restrictions on the Debtor's leases of the convenience stores, limits on assignment, first rights of refusal on sale of convenience stores, environmental conditions, default, insurance and financial reporting requirements; and
- h.     The structure of the transaction will address Suncor's clawback rights under the RSSA.

13.     The LOI only seeks to bind the Debtor in certain limited respects. The terms of the LOI should be reviewed on each of the points listed below. The provisions for which Court approval is requested are summarized as follows:

- a.     **Exclusivity**- The LOI provides that the Debtor and Taraghi will not for a period of 60 days market or engage in discussions or negotiations regarding any financing of the HDT properties by a third party and will not enter into any agreement to sell, convey or otherwise transfer any property or ownership of an

entity owning property to a third party. Certain allowances are provided with the permission of the Lender and the 60 days may be extended to 90 days if the Debtor is provided with an initial draft loan agreement within 30 days and the parties are proceeding in good faith. A violation of the exclusivity period results in the obligation of the Borrowers, the Debtor and Taraghi, to pay out of pocket costs plus a $500,000 fee.

b.  **Transaction Costs**- The Borrowers are responsible for payment of all of the the Lender's costs associated with the loan transaction. Payment of the costs is due whether or not the loan closes. Costs include but are not limited to title insurance, environmental site assessments, property condition reports, and appraisals. An initial expense fund of $125,000 is required. Taraghi is funding the initial $50,000 subject to being repaid upon approval of the Debtor's payment of the $125,000. Additional funds could be requested as the parties progress with the transaction.

c.  **Broker**- NRC is the sole broker for the loan transaction and the Debtor will be liable for all fees and costs of the broker. The Debtor is indemnifying the Lender for all such fees and costs.

d.  **Governing Law**- The governing law for the lending transaction is that of New York.

e.  **Nonbinding**- The section headed as Nonbinding confirms those sections of the LOI that are binding and nonbinding under the LOI.

14.     The LOI provides for various important time periods that are critical to the overall financing transaction. The LOI provides that the Lender has a 60 day period from the later of: a) the date that all relevant due diligence materials in Borrowers' possession are placed in a virtual data room; and b) the date that all necessary Bankruptcy Court approvals have been obtained, to complete its due diligence, unless this period is otherwise extended. In the absence of any objection within the 60 days, closing and funding occur at the later of: a) 15 days after the end of such Due Diligence Period; or b) the date that all necessary Bankruptcy Court approvals have been obtained. The Lender's exclusivity period will terminate within 30 days if the Lender has not provided the Debtor with an initial draft of the loan agreement within 30 days of the date of the LOI.

15.     The LOI also provides that at the time of funding and reacquisition of the HDT Entities by Taraghi, the HDT Entities will enter into new leases of each of the convenience store locations with the Debtor. This will allow the Debtor to continue in business and be reorganized as a going concern.

16.     The LOI is in the best interest of the Debtor and the estate. The LOI presents the best

path forward for the Debtor and Taraghi to acquire the financing necessary to meet the terms of the Suncor settlement obligations and payoff all creditors in this case. The Debtor believes that the execution of and proceeding with the LOI is an exercise of the Debtor's best business judgment.

WHEREFORE, the Debtor prays that the Court enter an Order, approving the Letter of Intent, authorize the Debtor to take all actions necessary or convenient to implement such agreement, and for such further and additional relief as to the Court may appear proper.


DATED: February 18, 2016

Respectfully submitted,

By:___/s/ Lee M. Kutner_____
    Lee M. Kutner, # 10966
**KUTNER BRINEN GARBER, P.C.**
1660 Lincoln Street, Suite 1850
Denver, CO 80264
Telephone:  (303) 832-2400
Telecopy: (303) 832-1510
Email: lmk@kutnerlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 18, 2016, I served by prepaid first class mail a copy of the foregoing **MOTION FOR APPROVAL OF LETTER OF INTENT REGARDING PROSPECTIVE FINANCING AND NOTICE PURSUANT TO LOCAL RULE 9013-1 OF MOTION FOR APPROVAL OF LETTER OF INTENT REGARDING PROSPECTIVE FINANCING** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:


Kubat Equipment and Service Co.
ATTN: Craig Hoyer
1070 South Galapago Street
Denver, CO 80223

PepsiCo, Inc.
ATTN: Conrad Ragan
1100 Reynolds Blvd.
Winston-Salem, NC 27105

Harpel Oil Company
ATTN: Douglas C. Harpel
5480 Brighton Blvd.
Commerce City, CO 80022

Alan K. Motes, Esq.
U.S. Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

Philip A. Pearlman, Esq.
Jamie N. Cotter, Esq.
Spencer Fane, LLP
1700 Lincoln Street
Suite 2000
Denver, CO 80203

John O'Brien, Esq.
Snell & Wilmer, LLP
1200 Seventeenth Street
Suite 1900
Denver, CO 80202-5854

Craig K. Schuenemann, Esq.
Bryan Cave, LLP
1700 Lincoln Street
Suite 4100
Denver, CO 80203-4541

Mark G. Stingley, Esq.
William J. Maloney, Esq.
Bryan Cave, LLP
1200 Main Street
Suite 3800
Kansas City, Missouri 64105

Adam L. Hirsch, Esq.
Kutak Rock, LLP
1801 California Street
Suite 3000
Denver, CO 80202-2658

Erica F. Houck Englert, Esq.
1801 California Street
Suite 3400
Denver, CO 80202

James B. Holden, Esq.
Lynda L. Atkins, Esq.
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, CO 80203

Gregory G. Hesse, Esq.
Hunton & Williams, LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75202-2799

Steven E. Abelman, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, CO 80202

Paul G. Urtz, Esq.
Miller & Urtz, LLC
1660 Lincoln Street
Suite 2850
Denver, CO 80264

Darryl S. Laddin, Esq.
Frank N. White, Esq.
Arnall Golden Gregory, LLP
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363-1031

Samuel M. Kidder, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202-4432

Robert A. Kumin, Esq.
Scott S. Kleypas, Esq.
Robert A. Kumin, P.C.
6901 Shawnee Mission Parkway
Suite 250
Overland Park, KS 66202

Scott A. Clark, Esq.
Burns, Figa & Will, P.C.
Plaza Tower One, Suite 1000
6400 South Fiddlers Green Circle
Greenwood Village, CO 80111

Neal K. Dunning, Esq.
Brown, Berardini, Dunning & Walker,
P.C.
2000 South Colorado Boulevard
Tower Two, Suite 700
Denver, CO 80222

Douglas D. Koktavy, Esq.
Douglas D. Koktavy, P.C.
Building B, Suite 120
10200 East Girard Avenue
Denver, CO 80231

Ronald E. Gold, Esq.
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45208

Peter W. Ito, Esq.
ITO Law Group, LLC
1550 Larimer Street
Suite 667
Denver, CO 80202

Jeffrey N. Pomerantz, Esq.
Jeffrey W. Dulberg, Esq.
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4100

Gregory S. Bell, Esq.
Bell, Gould, Linder & Scott, P.C.
322 East Oak Street
Fort Collins, CO 80524

Dennis L. Rubin
Executive Managing Director
NRC Realty & Capital Advisors, LLC
8601 North Scottsdale Road
Suite 310
Scottsdale, AZ 85253

Joseph D. Frank, Esq.
Jeremy C. Kleinman, Esq.
Frank Gecker, LLP
325 North LaSalle Street
Suite 625
Chicago, IL 60654

Soukup Bush & Associates, P.C.
2032 Caribou Drive
Suite 200
Fort Collins, CO 80525

Shea Capital Group
P.O. Box 1769
Colchester, CT 06415

Joel Frank
Chief Financial Officer
Och Ziff Capital Investments, LLC
9 West 57th Street
39th Floor
New York, NY 10019

Vicky Martina

| Shea Capital Group | Och Ziff Capital Investments, LLC |
|---|---|
| P.O. Box 1769 | 9 West 57th Street, 39th Floor |
| Colchester, CT 06415 | New York, NY 10019 |

February 16, 2016

Dennis L. Ruben
Executive Managing Director
NRC Realty & Capital Advisors, LLC
8601 North Scottsdale Road | Suite 310
Scottsdale, Arizona 85253

Via email dennis.ruben@nrc.com

Re: HTD, LLC/ Western Convenience Stores – Real Estate Refinancing

Dear Mr. Ruben,

Shea Capital Group, LLC ("SCG"), in partnership with affiliates of Och-Ziff Capital Investments, LLC ("OZCI," and, together with SCG, the "Lender") is pleased to provide you with this letter of intent ("LOI") outlining the terms and conditions under which Lender would provide $33 million of first-mortgage financing to the Borrower (defined below), to be secured by 39 fee properties and six leasehold properties (the "Properties") that are leased to Western Convenience Store, Inc. ("Western").

SCG was founded by Kevin Shea, who completed over $750 million in transactions in the convenience and gas sector during a 30+ year career at Getty Realty Corp. OZCI is an affiliate of Och-Ziff Capital Management Group, a publicly traded asset management firm with approximately $44.6 billion under management as of January 1, 2016.

| Loan Description | $33 million first mortgage loan (the "Loan") secured by the Properties. |
|---|---|
| Borrower | HDT, LLC, Western and their affiliates and subsidiaries including HDT Eight, LLC, HDT Eleven, LLC, HDT Fifteen, LLC, HDT Five, LLC, HDT Forty Three, LLC, HDT Forty Two, LLC, HDT Forty, LLC, HDT Four, LLC, HDT Fourteen, LLC, HDT Nineteen, LLC, HDT One, LLC, HDT Seven, LLC, HDT Seventeen, LLC, HDT Six, LLC, HDT Sixteen, LLC, HDT Ten, LLC, HDT Thirteen, LLC, HDT Thirty Eight, LLC, HDT Thirty Five, LLC, HDT Thirty Four, LLC, |

HDT Thirty Nine, LLC, HDT Thirty One, LLC, HDT Thirty Seven, LLC, HDT Thirty Three, LLC, HDT Thirty Two, LLC, HDT Thirty, LLC, HDT Three, LLC, HDT Twenty Five, LLC, HDT Twenty Four, LLC, HDT Twenty Nine, LLC, HDT Twenty One, LLC, HDT Twenty Seven, LLC, HDT Twenty Six, LLC, HDT Twenty Three, LLC, HDT Twenty Two, LLC, HDT Twenty, LLC, HDT Two, LLC, HDT Twenty Eight, LLC. (collectively, the "Borrower").

At Lender's option, to be determined during diligence, the Borrowers that own the owned Properties will transfer all of the owned Properties to a single newly formed LLC provided that no consent of Suncor is required. Otherwise, the Borrowers will, at Lender's option contribute the owned Properties to a newly formed LLC and complete a consolidation after the expiration of any "clawback" period under the Suncor settlement documents. In either case the newly formed LLC will be a Borrower under the Loan, and there will be a single Lease for all of the Properties.

| | |
|---|---|
| Mortgagee | Lender |
| Term | 5 years (the "Term") |
| Interest Rate | 8.125%, payable monthly in arrears, and calculated using an actual/ 360 convention. |
| Amortization | 25-year mortgage-style amortization |
| Loan Origination Fee | 50 bps |
| Prepayment | The Borrower will have the option to prepay the Loan, in whole but not in part, at any time after the first anniversary of closing subject to the following |

prepayment fees:

If on or after the first anniversary of closing and before the second anniversary the fee shall be 4% of the then-outstanding balance of the Loan.

If on or after the second anniversary of closing and before the third anniversary the fee shall be 3% of the then-outstanding balance of the Loan.

If on or after the third anniversary of closing and before the fourth anniversary the fee shall be 2% of the then-outstanding balance of the Loan.

If on or after the fourth anniversary of closing and before the date this is 30 days prior to the stated maturity date, the fee shall be 1% of the then-outstanding balance of the loan.

| | |
|---|---|
| Collateral | The Lender will have a first mortgage interest in the properties on Schedule A (each a "Property" and collectively the "Properties").

All members of each Borrower other than Western will pledge the membership interests in each such Borrower to Lender.

The shareholders of Western will pledge the shares of Western to Lender. |
| Western Leases | The Borrowers other than Western shall enter into new lease or leases with Western (the "Western Leases") in a form acceptable to Lender with aggregate rent due from Western with a triple net base rent to be determined during due diligence, on or before the commencement of the Loan.

The Western Leases shall be absolute triple net. |

|  | The Western Leases shall be cross defaulted. |
|  | Borrower shall provide Lender a draft of the Proposed Western Leases prior to execution thereof for Lender's review and approval. Borrower shall provide Lender with additional information regarding the Western Leases (including but not limited to true lease opinions) as Lender may request. |
| Other Loan Provisions | Principals of Borrower, acceptable to Lender, including Hossein Taraghi ("Taraghi"), will provide Lender's customary non-recourse carve-out guarantees to Lender which will cover, without limitation, fraud, willful misconduct, gross negligence, intentional misrepresentation, misappropriation or misapplication, failure to pay taxes/insurance, forfeiture of any Property due to criminal conduct, waste, transfer, liens or indebtedness in violation of the loan documents, breach of SPE covenants, liabilities associated with the fact that Borrowers are not newly formed entities, interference with Lender's exercise of remedies, environmental liability, bankruptcy acts, among other items, with certain of the recourse items being "loss" items, and others resulting in the entire Loan being recourse to Taraghi. It will be determined during diligence whether the guarantor will be subject to ongoing net worth and liquidity covenants. |
|  | Establishment of customary reserves, including, without limitation, reserves for taxes and, to the extent not paid on a monthly basis, insurance. |

If the ratio of (a) Western's earnings before taxes, depreciation and amortization, real estate taxes and interest payments to third parties, and rent paid under the new Western Leases ("Western's Free Cash Flow") to (b) the then-current annual debt service obligation under the Loan ("DSCR") is less than 1.25x, to be tested quarterly based on TTM results, Borrower and Western would be obligated to deposit into an escrow account on the first of each month an amount equal to 100% of Western's Free Cash Flow for the preceding month until quarterly results show the TTM DSCR is 1.35x or greater. All funds in the account will be subject to a cash management regime acceptable to Lender. Once Western demonstrates the DSCR is equal to or greater than 1.4x for two consecutive quarters, the funds in the escrow will be refunded to Western.

Please note that failure to maintain a DSCR of 1.25x will not in and of itself be considered a default under the Loan. It will merely trigger the obligation to fund an escrow as described above.

The loan agreement shall provide that Lender shall have 60 days from the later of (x) the date that all relevant due diligence materials in the possession of Borrower are placed in the virtual data room and (y) the date that all necessary Bankruptcy Court approvals have been obtained, to complete its due diligence, unless extended by agreement of the parties hereto (the "Due Diligence Period"), and that the closing and funding of the Loan shall occur 15 days after the later of (x) the end of the Due Diligence Period and (y) the date that all necessary

| | |
|---|---|
| | Bankruptcy Court approvals have been obtained. |
| Right to Assign | Subject to the prior written consent of the Lender, which shall not be unreasonably withheld, the Borrower will have the right to transfer all, and not less than all, of the Properties to a third party, subject to the Loan. By way of example and not limited to the following, it will be reasonable for the Lender to withhold its consent to an assignment if the parent company of the proposed transferee has a net worth less than the greater of the combined net worth of each Borrower, at a.) the commencement of the Term or; b.) the time of the proposed assignment or, if the proposed assignee does not possess demonstrable skills and experience essential for the ownership and operation of the Properties, or does not satisfy Lender's background review process.<br><br>If Western seeks Lender consent to assignment of its rights as lessee under the Western Leases to a buyer of substantially all of Western's assets, it shall conclusively be deemed reasonable for Lender to condition any consent to such assignment on receipt of a pledge and guaranty by the principals of the transferee in forms similar to the pledge and guarantee signed by Taraghi as the sole shareholder of Western at the inception of the loan and to consider the financial condition of each such guarantor in deciding whether to consent to such an assignment. |
| Right of First Refusal | Borrower will grant Lender a right of first refusal to purchase any one or all of the Properties if the Properties are sold in a transaction independent of the sale of |

Western.  Borrower will have the right to sell up to four (4) individual Properties, subject to such right of first refusal and prepayment fees, but shall otherwise only be permitted to sell the Properties on a portfolio basis (which sale, for the avoidance of doubt, shall also be subject to such right of first refusal and prepayment fees).

| | |
|---|---|
| Environmental | Each Borrower shall be responsible for, and Lender shall have no liability for, any contamination existing at the Property owned by each such Borrower, whether known or unknown before, on or after the commencement of the Loan whether or not caused by any Borrower, its agents, employees, successors or assigns. Borrower and Taraghi shall indemnify Lender for any such liabilities. |
| | Borrowers will maintain pollution and legal liability insurance at all times with coverages and deductibles and from an insurer reasonably acceptable to the Lender. All policies shall name the Lender as an additional insured. |
| | Lender will have a collateral interest in any environmental escrows of which any Borrower is a beneficiary of. |
| | Environmental obligations shall survive maturity or earlier termination of the Loan. |
| Default Provisions | The Loan will contain customary default provisions regarding notice and cure periods.  Any "Event of Default" (as defined in the Western Leases after any required notice and cure rights thereunder) by Western under any of the Western Leases, as well as a termination of any of the Western Leases, shall |

|  | constitute an event of default under the loan. The loan documents will provide Lender the right to access the Properties, and recover costs associated with recapturing the Properties including but not limited to legal fees, broker fees and the cost to put the Properties in good working order. |
|---|---|
| Insurance | Borrowers shall maintain the following insurance policies naming the Lender as an additional insured with coverage amounts and deductibles and from an insurer reasonably satisfactory to the Lender: pollution and legal liability, commercial general liability and property damage, flood insurance for Properties located in flood zones, business/rent interruption, dram shop for Properties selling alcoholic beverages and any other insurance policies or products reasonably requested by the Lender. |
| Financial Reporting Requirements | Each Borrower will deliver to Lender its own internally generated financials on an ongoing basis each quarter and annually at the end of Borrowers' fiscal years. The annual financial statements shall be audited in accordance with GAAP by an accounting firm reasonably acceptable to the Lender. |
|  | Western to provide to Lender each quarter site level P&Ls showing motor fuel sales in gallons and dollars, store sales in dollars and food service sales in dollars. |
|  | Quarterly reports will be delivered to the Lender no later than 45 days after the end of the quarter. Annual reports will be delivered to the Lender no later than 90 days after the end of the Borrowers' fiscal |

|  | year. |
|---|---|
| Transaction Costs | Borrowers shall be responsible for all of its and the Lender's costs associated with the transaction(s) including but not limited to legal fees, surveys, recording fees, transfer taxes, broker fees (excluding any fees due NRC which shall be paid in full by Western and/or Taraghi and shall not be considered a Transaction Cost as defined herein), title insurance (including UCC+/Eagle-9 policy), environmental site assessments, property condition reports, and appraisals ("Transaction Costs"). Borrower and Taraghi agree to reimburse the Lender for all Transaction Costs regardless of whether or not the Loan closes for any reason. Contemporaneously with the execution of this LOI, Taraghi will provide Lender with an expense deposit of $50,000.  Upon the bankruptcy court's approval of the financing described in this LOI, the amount of the expense deposit shall be increased to $125,000.  To the extent that Lender utilizes the full expense deposit, it can request additional due diligence funds from Borrower and Taraghi, which they shall pay promptly.  Lender shall notify Borrower when the aggregate amount of expenses incurred by Lender reaches $300,000. |
| Governing Law | New York |

| | |
|---|---|
| Broker | Borrower and Taraghi represent and confirm that there has been no broker or agent for the proposed financing described herein, other than NRC. It is hereby agreed that all costs, finders' fees, commissions, concessions remuneration or similar fees or compensation relating to the financing are the sole and absolute responsibility of the Borrower. Borrower and Taraghi agree to indemnify and hold the Lender and its affiliates harmless from and against any and all compensation sought by any party who makes claim for commission or compensation related to the financing. |
| Nonbinding | This LOI is a preliminary summary of the indicative basic terms and conditions for the proposed financing. These indicative terms and conditions reflect the current perception of market conditions by Lender affiliates as they relate to the proposed financing, and are subject to change without notice. This is a preliminary summary and does not define all of the terms and conditions of the proposed financing, but is a framework upon which documentation for this transaction would be structured, and is a basis for further discussion and negotiation of such terms as may be appropriate. With the exception of the sections entitled "Exclusivity," "Transaction Costs," "Governing Law," "Broker" and "Nonbinding", under no circumstances shall the indicative terms and conditions put forth herein constitute or be deemed to constitute a legally binding obligation of Lender, Borrower, any affiliate of the foregoing, or any other party, nor shall it be construed as an undertaking by Lender to issue or arrange a commitment. The credit, if any, shall be |

subject to the due diligence review (including "KYC" review) and other matters described in the term sheet, the approval by Lender's credit authorities, and the execution and delivery of documentation satisfactory in form and substance to Lender's legal counsel. No rights, obligations or liabilities of any kind or nature whatsoever shall arise on the part of Lender or any other person as the result of the provisions of this term sheet.

| | |
|---|---|
| Exclusivity | In order for Lender to proceed with discussions regarding the proposed transaction it will be necessary for Lender to satisfactorily complete customary due diligence at significant cost and expense. In recognition of the time and cost involved with such due diligence, Borrower and Taraghi agree that they will not, for a period of 60 days from the date this LOI is executed, market or engage in discussions or negotiations regarding any financing of the Properties by a third party, and will not enter into any agreement to sell, convey or otherwise transfer to a third party, any of the Properties, or ownership of any entity owning such assets. Borrower further agrees during such time period not to modify any leases, franchise agreements, supply contracts or enter into any new agreements regarding the Properties without first discussing the same with Lender; provided, however, that the 60-day period described above shall automatically be extended for an additional 30 days (to 90 days in total) if Lender has provided Borrower with an initial draft of the loan agreement on or prior to the date that is 30 days from the date hereof and is proceeding in good faith towards the transactions described |

|  | in this LOI at the end of the 60-day period described above, and provided, further, that if Lender has not provided Borrower with an initial draft of the loan agreement on or prior to the date that is 30 days from the date hereof, the exclusivity period described above shall terminate at 5 pm EST on such 30th day. If this Exclusivity provision is violated, Taraghi and, after Bankruptcy Court approval of the Exclusivity section hereof, Western, shall, on demand, pay the Exclusivity Fee to Lender. As used herein, the term *"Exclusivity Fee"* shall mean $500,000 together with the amount of all out of pocket costs actually incurred by Lender in connection with the subject matter of this Term Sheet. Lender shall be entitled to specifically enforce these Exclusivity provisions. |
|---|---|
| Confidentiality | Borrower and Guarantor shall keep the terms of this proposal confidential until and unless Borrower executes this letter and Western files a motion to obtain Bankruptcy Court approval of the proposed transaction and its obligations; provided that Borrower and Guarantor shall be permitted to share the terms of this LOI with Suncor, the creditor's committee of the bankruptcy case to which Western is subject, the United States Trustee and other creditors. Any motion described in the preceding sentence shall be subject to Lender's approval. |
| Secondary Market Transactions | Lender will have the right to syndicate, sell, assign, or participate the Loan, in whole or in part, without the consent of Borrower, or Taraghi. Borrower and Taraghi shall cooperate with Lender in connection with any such syndication, sale, assignment or participation, including but not limited to meeting with third party investors. In the event that Lender syndicates the Loan in a transaction where Lender retains a |

portion of the Loan, Lender or its affiliate shall remain as the agent for such syndicated Loan.

| Bankruptcy Court Approval | Western's obligations under this letter, including without limitation its commitments under the sections entitled "Exclusivity," "Transaction Costs," and "Broker," its obligation to pay the Exclusivity Fee, and its commitments under the new leases to Western from the other Borrowers shall be approved by the Bankruptcy Court pursuant to an order or orders in a form satisfactory to Lender and Western shall use its best efforts to obtain such a Bankruptcy Court order promptly. |

We are excited about the opportunity to provide financing to Borrower and look forward to working with you on this project.

Best regards,

Kevin Shea
Member
Shea Capital Group, LLC

OCH-ZIFF CAPITAL INVESTMENTS, LLC

By:

Name: Joel Frank
Title: Chief Financial Officer

Agreed and accepted by Hossein Taraghi this 16th day of February, 2016.

_____
Hossein Taraghi


Agreed and accepted by Western Convenience Stores, Inc. this 16th day of February, 2016.

By: _____
Hossein Taraghi

Its:       President

# Schedule A

| No. | Property Type | Address | City | State | Zip |
|-----|---------------|---------|------|-------|-----|
| 104 | Fee | 800 S Wilcox St | Castle Rock | CO | 80104 |
| 105 | Fee | 2301 E 88th Ave | Thornton | CO | 80229 |
| 106 | Fee | 20421 US 24 | Woodland Park | CO | 80863 |
| 109 | Fee | 3505 S Kipling Pkwy | Lakewood | CO | 80227 |
| 111 | Fee | 7603 W 13th Ave | Lakewood | CO | 80214 |
| 112 | Fee | 1351 E Bridge St | Brighton | CO | 80601 |
| 113 | Fee | 227 W Filmore St | Colorado Springs | CO | 80907 |
| 114 | Fee | 2387 W 72nd Ave | Thornton | CO | 80221 |
| 115 | Fee | 11399 US 24 | Divide | CO | 80814 |
| 117 | Fee | 416 Hwy 87 | Walsenburg | CO | 81089 |
| 118 | Fee | I-80 at Exit 164 | Hershey | NE | 69143 |
| 119 | Fee | 1331 W Eisenhower Blvd | Loveland | CO | 80537 |
| 120 | Fee | 2630 Colorado Blvd | Idaho Springs | CO | 80452 |
| 121 | Fee | 356 Bent Ave | Las Animas | CO | 81054 |
| 124 | Fee | 2525 Broadway | Grand Junction | CO | 81507 |
| 125 | Fee | 2998 North Ave | Grand Junction | CO | 81504 |
| 126 | Fee | 938 S Townsend Ave | Montrose | CO | 81401 |
| 127 | Fee | 1502 Howard St | Delta | CO | 81416 |
| 131 | Fee | 306 E 1st St | Ogallala | NE | 69153 |
| 132 | Fee | 440 E Illinois St | Sidney | NE | 69162 |
| 133 | Fee | 123 W Cranston Ave | Fowler | CO | 81039 |
| 134 | Fee | 1905 W Uintah St | Colorado Springs | CO | 80904 |
| 122 | Fee | 1228 Royal Gorge Blvd | Cañon City | CO | 81212 |
| 138 | Fee | 382 E Mountain Ave | Fort Collins | CO | 80524 |
| 139 | Fee | 816 E Mulberry St | Fort Collins | CO | 80524 |
| 143 | Fee | 2714 Thatcher Ave | Pueblo | CO | 81005 |
| 148 | Fee | 5050 N Washington St | Denver | CO | 80216 |
| 123 | Fee | 9190 Huron St | Thornton | CO | 80260 |
| 128 | Fee | 2507 E Platte Ave | Colorado Springs | CO | 80907 |
| 129 | Fee | 1500 N Main St | Longmont | CO | 80501 |
| 135 | Fee | 3201 Lake Ave | Pueblo | CO | 81004 |
| 136 | Fee | 2775 Briargate Blvd | Colorado Springs | CO | 80920 |
| 137 | Fee | 12867 US 24 & US 285 | Buena Vista | CO | 81211 |
| 141 | Fee | 11000 US 50 | Poncha Springs | CO | 81242 |
| 142 | Fee | 122 S Lincoln St | Burlington | CO | 80807 |
| 145 | Fee | 825 Main St | Fort Morgan | CO | 80701 |

| 146 | Fee | 1430 US 50 | Delta | CO | 81416 |
| 147 | Fee | 1242 S Prairie Ave | Pueblo | CO | 81005 |
| Office | Fee | 9849 E Easter Ave | Centennial | CO | 80112 |
| 116 | Leased | 11515 N Hwy 83 | Parker | CO | 80134 |
| 130 | Leased | 1113 W Drake Rd | Fort Collins | CO | 80526 |
| 140 | Leased | 12702 Lowell Blvd | Broomfield | CO | 80020 |
| 144 | Leased | 1370 S Parker Rd | Denver | CO | 80231 |
| 149 | Leased | 500 Lincoln Ave S | Steamboat Springs | CO | 80477 |
| 150 | Leased | 946 E Rainbow Blvd | Salida | CO | 81201 |