UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                          )
                                                )   Case No. 15-23977-TBM
WESTERN CONVENIENCE STORES, INC. )
EIN: 84-1160742                                 )   Chapter 11
                                                )
        Debtor.                                 )

## MOTION TO APPROVE AGREEMENT WITH HIGH PLAINS BANK

The Debtor, Western Convenience Stores, Inc. ("Debtor"), by and through its attorneys, Kutner Brinen, P.C., moves the court pursuant to Bankruptcy Rule 9019 to approve an Agreement between the Debtor and High Plains Bank based on the following:

1.      The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on December 28, 2015 and the Debtor has continued to operate its business as a Debtor-in-Possession.

2.      High Plains Bank ("Bank") is a creditor of the Debtor pursuant to a Promissory Note dated on or about April 18, 2014 in the original principal amount of $1,726,624.42 ("Note 1").

3.      The Note 1 is secured by certain parcels of real property owned by four specific HDT Entities known as HDT 16, 32, 33, and 37, those entities and their assets are not property of the Debtor's estate.

4.      The Bank claims to be secured by certain personal property assets that are physically located in the entities known as HDT 16, 32, 33, and 37.  The personal property located at these entities consists of various pieces of equipment which may not be fixtures as well as shelving and items associated with the operation of a convenience store including the store inventory and fuel inventory ("Personal Property Collateral").

5.      The Personal Property Collateral may be subject to senior liens held by Colony Pacific Leasing Corp., assignee of G.E. Capital Commercial.  Consequently, the Bank may not hold a first lien position with respect to the Personal Property Collateral.

6.      The Bank is also a creditor of the Debtor by virtue of a Promissory Note in the original principal amount of $125,000 ("Note 2").  Note 2 is dated April 15, 2015 however it was not funded until Cincinnati Insurance Companies ("CIC") drew on a letter of credit backing Note 2 on February 25, 2016.

7.     The Debtor's insurance coverage with CIC was terminated earlier in this case and CIC has no need for the funds since no claims were made on the policy it provided to the Debtor. As a result the Debtor is in the process of recovering the $125,000 back from CIC which will be used to pay down Note 2.

8.     The Bank's claims are also collateralized by eight trailers (the "WTO Trailers") owned by Western Truck One, LLC ("WTO"). WTO is a company owned by Hossein Taraghi who is the owner of the Debtor. WTO uses the WTO Trailers to transport fuel to the Debtor's numerous locations.

9.     The Bank's primary collateral for Note 1 and Note 2 consist of the real property owned by the four HDT entities and the WTO Trailers. Hossein Taraghi and Debra Taraghi are also co-makers of the Bank loans.

10.     The Debtor anticipates closing on a new loan following the confirmation of its Amended Plan which is set for a confirmation hearing on July 7, 2016. At the time the new loan is closed, the new lender will pay off the Bank's Note 1 and Note 2 in full, the Bank will release its liens on real and personal property, and the new lender will be granted a lien on the same four locations and the same WTO Trailers, in addition to substantial other collateral.

11.     The Debtor has entered into an Agreement with the Bank to clarify the loans, the amounts due on the loans, the collateral positions, payment on the loans, and relief for the Bank should the Debtor not close on its refinancing. The Agreement is attached hereto and incorporated herein as Exhibit A.

12.     The Agreement provides that the Debtor will continue making payments to the Bank in the amount of $11,398.96 per month with respect to use of the four locations and $3,000 per month with respect to the WTO Trailers pending the payoff of the two Notes. If the Notes are not paid by December 1, 2016 then the WTO Trailers will be promptly sold and the proceeds therefrom will be applied to the Notes.

13.     The Agreement provides that the Debtor confesses relief from stay with respect to the WTO Trailers however the stay does not apply to the WTO Trailers.

14.     The Agreement provides for releases of the Bank by the Debtor.

WHEREFORE, the Debtor prays that the Court make and enter an Order approving the Agreement between the Debtor and High Plains Bank, and for such further and additional relief as to the Court may appear proper.

DATED: June 8, 2016                    Respectfully submitted,


                                       By:___*/s/ Lee M. Kutner*_____
                                           Lee M. Kutner, #10966
                                           **KUTNER BRINEN, P.C.**
                                           1660 Lincoln Street, Suite 1850
                                           Denver, CO 80264
                                           Telephone: (303) 832-2400
                                           Facsimile: (303) 832-1510
                                           Email:  lmk@kutnerlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 8, 2016, I served by prepaid first class mail a copy of the foregoing **MOTION TO APPROVE AGREEMENT WITH HIGH PLAINS BANK AND NOTICE OF MOTION TO APPROVE AGREEMENT WITH HIGH PLAINS BANK** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

John Creighton
President and CEO
High Plains Bank
P.O. Box 329
Bennett, CO 80102-0329

High Plains Bank
3000 Youngfield
Suite 338
Lakewood, CO 80215-6553

Kubat Equipment and Service Co.
ATTN: Craig Hoyer
1070 South Galapago Street
Denver, CO 80223

PepsiCo, Inc.
ATTN: Conrad Ragan
1100 Reynolds Blvd.
Winston-Salem, NC 27105

Harpel Oil Company
ATTN: Douglas C. Harpel
5480 Brighton Blvd.
Commerce City, CO 80022

Alan K. Motes, Esq.
U.S. Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

Philip A. Pearlman, Esq.
Jamie N. Cotter, Esq.
Spencer Fane, LLP
1700 Lincoln Street
Suite 2000
Denver, CO 80203

John O'Brien, Esq.
Snell & Wilmer, LLP
1200 Seventeenth Street
Suite 1900
Denver, CO 80202-5854

Craig K. Schuenemann, Esq.
Bryan Cave, LLP
1700 Lincoln Street
Suite 4100
Denver, CO 80203-4541

Mark G. Stingley, Esq.
William J. Maloney, Esq.
Bryan Cave, LLP
1200 Main Street
Suite 3800
Kansas City, Missouri 64105

Adam L. Hirsch, Esq.
Kutak Rock, LLP
1801 California Street
Suite 3000
Denver, CO 80202-2658

Erica F. Houck Englert, Esq.
1801 California Street
Suite 3400
Denver, CO 80202

James B. Holden, Esq.
Lynda L. Atkins, Esq.
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, CO 80203

Gregory G. Hesse, Esq.
Hunton & Williams, LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75202-2799

Steven E. Abelman, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, CO 80202

Paul G. Urtz, Esq.
Miller & Urtz, LLC
1660 Lincoln Street
Suite 2850
Denver, CO 80264

Darryl S. Laddin, Esq.
Frank N. White, Esq.
Arnall Golden Gregory, LLP
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363-1031

Samuel M. Kidder, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202-4432

Robert A. Kumin, Esq.
Scott S. Kleypas, Esq.
Robert A. Kumin, P.C.
6901 Shawnee Mission Parkway
Suite 250
Overland Park, KS 66202

Scott A. Clark, Esq.
Burns, Figa & Will, P.C.
Plaza Tower One, Suite 1000
6400 South Fiddlers Green Circle
Greenwood Village, CO 80111

Neal K. Dunning, Esq.
Brown, Berardini, Dunning & Walker,
P.C.
2000 South Colorado Boulevard
Tower Two, Suite 700
Denver, CO 80222

Douglas D. Koktavy, Esq.
Douglas D. Koktavy, P.C.
Building B, Suite 120
10200 East Girard Avenue
Denver, CO 80231

Ronald E. Gold, Esq.
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45208

Peter W. Ito, Esq.
ITO Law Group, LLC
1550 Larimer Street
Suite 667
Denver, CO 80202

Jeffrey N. Pomerantz, Esq.
Jeffrey W. Dulberg, Esq.
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4100

Gregory S. Bell, Esq.
Bell, Gould, Linder & Scott, P.C.
322 East Oak Street
Fort Collins, CO 80524

NRC Realty & Capital Advisors, LLC
8601 North Scottsdale Road
Suite 310
Scottsdale, AZ 85253

Joseph D. Frank, Esq.
Jeremy C. Kleinman, Esq.
Frank Gecker, LLP
325 North LaSalle Street
Suite 625
Chicago, IL 60654

Soukup Bush & Associates, P.C.
2032 Caribou Drive
Suite 200
Fort Collins, CO 80525

Darryl S. Laddin, Esq.
Frank N. White, Esq.
Arnall Golden Gregory, LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363-1031

Mark Ralston, Esq.
Fishman Jackson, PLLC
13155 Noel Road
Suite 700
Dallas, Texas 75240

A Troy Ciccarelli, Esq.
Ciccarelli & Associates, P.C.
2616 West Alamo Avenue
Littleton, CO 80120

Matthew A. Gold, Esq.
Argo Partners
12 West 37th Street
9th Floor
New York, NY 10018

David J. Lisko, Esq.
633 17th Street
Suite 2300
Denver, CO 80202

Susan L. Martineau, Esq.
12151 Spruce Street
Thornton, CO 80602

Springer & Steinberg, P.C.
1600 Broadway Street
Denver, CO 80202

Vicky Martina

**AGREEMENT**

<u>I. PARTIES</u>

This Agreement is made and entered into as of the 31st day of May, 2016, by Western Truck One, LLC ("Western Truck"), Western Convenience Stores, Inc. ("Western Convenience") and High Plains Bank (the "Bank") (collectively, the "Parties" or "Each Party").

<u>II. EFFECTIVE DATE</u>

Although this Agreement is dated as of the 31st day of May, 2016, this Agreement will be effective only upon: (1) execution by all Parties and not upon execution by fewer than all Parties; and (2) approval by the United States Bankruptcy Court in the Bankruptcy Case (defined below) (the "Effective Date").

<u>III. RECITALS</u>

A.    On or about April 18, 2014, Western Convenience executed and delivered to the Bank its promissory note in the original principal amount of $1,726,624.42 (the "$1,726,624.42 Note"). A true and correct copy of the Note is attached hereto as <u>Exhibit 1</u>. As of May 31, 2016, the unpaid principal and interest balance of the Note was $1,761,087.37, calculated as follows:

| | |
|---|---|
| Unpaid Principal 5/31/16 | $ 1,640,705.65 |
| Accrued Interest through 5/31/16 | 56,101.52 |
| Attorneys' Fees through 5/31/16 | 64,280.20 |
| Total unpaid balance as of 5/31/16 | $ 1,761,087.37 |

The $1,726,624.42 Note continues to accrue interest on and after June 1, 2016 at the current default rate of 16% (per diem is $719.21). Pursuant to the terms of the $1,726,624.42 Note, the Bank is entitled to recover its ongoing reasonable costs and attorneys' fees incurred in the collection and enforcement of the Note.

B.    On or about April 15, 2015, Western Convenience executed and delivered to the Bank its promissory note in the original principal amount of $125,000 (the "$125,000 Note"). A true and correct copy of the $125,000 Note is attached hereto as <u>Exhibit 2</u>. The $125,000 Note was funded in full on February 25, 2016 by virtue of Cincinnati Insurance Companies ("Cincinnati Insurance") draw on a letter of credit backing the $125,000 Note (the "Cincinnati Insurance Draw"). As of May 31, 2016, the unpaid principal and interest balance of the $125,000 Note was $130,333.33, calculated as follows:

| | |
|---|---|
| Unpaid Principal 5/31/16 | $125,000.00 |
| Accrued Interest through 5/31/16 | 5,333.33 |
| Attorneys' Fees through 5/31/16 | Included elsewhere[1] |
| Total unpaid balance as of 5/31/16 | $130,333.33 |

---

[1]  Attorneys' fees are included in the $1,726,624.42 Note, but could also be posted to the $125,000 Note.

24155253.2

**Exhibit A**

The $125,000 Note continues to accrue interest on and after June 1, 2016 at the current default rate of 16% (per diem is $55.56). Pursuant to the terms of the $125,000 Note, the Bank is entitled to recover its reasonable costs and attorneys' fees incurred in the collection and enforcement of the Note.

C.      Hereafter the $1,726,624.42 Note and the $125,000 Note are collectively referred to as the "Notes".

D.      To secure repayment of the Notes, Western Truck executed and delivered to the Bank the following security agreements (the "Western Truck Security Agreements"):

   1.      Commercial Security Agreement dated March 29, 2012, a true and correct copy of which is attached hereto as <u>Exhibit 3</u> (the "Western Truck 2012 Security Agreement");

   2.      Commercial Security Agreement dated April 18, 2014, a true and correct copy of which is attached hereto as <u>Exhibit 4</u> (the "Western Truck 2014 Security Agreement"); and

   3.      Commercial Security Agreement dated April 15, 2015, a true and correct copy of which is attached hereto as <u>Exhibit 5</u> (the "Western Truck 2015 Security Agreement")

E.      Pursuant to the Western Truck One Security Agreements the Bank has a security interest in the following described personal property collateral (the "Western Truck Trailer Collateral"):

| Year | Make | Body | VIN |
|------|------|------|-----|
| 1994 | BEAL | TL | 1BN2M4222RB003852 |
| 2001 | TRLR | TL | 1Z9SA40201D054001 |
| 2002 | BEAL | TL | 1BN2T43262B006678 |
| 2006 | BEAL | TL | 1BN2T43296B008348 |
| 2006 | BEAL | TL | 1BN2T43206B007914 |
| 2008 | BEAL | TL | 1BN2T43208B008659 |
| 2008 | BEAL | TL | 1BN2T43208B009844 |
| 2011 | BEAL | TU | 1BN2T4324BB001544 |

In addition, all the following:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

2

24155253.2

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media;

F.    The Bank's lien on the motor vehicles constituting the Western Truck Trailer Collateral was perfected by the notation of the Bank's security interest in the Motor Vehicle Certificates of Title, a true and correct copy of which are attached hereto as <u>Exhibit 6(A) – (H)</u>.

G.    On December 28, 2015 Western Convenience filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Colorado, Case No. 15-23977-TBM (the "Bankruptcy Case").

H.    Western Truck has requested the opportunity to use the Western Truck Trailers until December 1, 2016 if Western Convenience is unable to pay the Notes in full by December 1, 2016, and the Bank has agreed to this request in accordance with the terms and provisions of this Agreement.

<u>IV.  AGREEMENTS</u>

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

A.    <u>Western Truck's and Western Convenience's Obligations.</u>

Western Truck and Western Convenience represent, warrant, covenant, and agree as follows:

3

24155253.2

1.      <u>Bankruptcy</u>.   Western Truck represents and warrants that it has no present intention to file a bankruptcy petition.   Irrespective of the filing of a petition in bankruptcy by or against Western Truck all provisions of this Agreement shall remain in full force and effect to the extent permitted by the bankruptcy Court.   If, however, the bankruptcy Court voids any portion of this Agreement, the Bank shall be entitled to assert any rights and claims it had against Western Truck prior to the Effective Date.   The Parties further agree that this Agreement is not intended to, and does not create a preference or any other kind of transfer voidable in bankruptcy.

2.      <u>Acknowledgement of Debt</u>.   Western Convenience does hereby acknowledge and reaffirm its obligations to the Bank as set forth in the Notes.   Western Truck does hereby acknowledge and affirm its obligations to the Bank as set forth in the Western Truck Security Agreements.   Western Truck and Western Convenience also acknowledge and agree that Western Convenience is in default on the Notes; that Western Convenience is liable to the Bank for all the indebtedness of the Notes; that as a result of the default, and pursuant to the terms of the Notes, the unpaid balances of the Notes are immediately due and payable in full; that in accordance with the Notes Western Convenience is obligated to reimburse the Bank for the Bank's reasonable attorneys' fees and costs incurred in enforcing the Notes as a result of the default; and that as of May 31, 2016, the unpaid balance of Western Convenience's obligations to the Bank pursuant to the Notes totals $1,864,420.70, plus continuing per diem interest accruing thereon commencing on June 1, 2016 of $774.77 plus the Bank's attorneys' fees and costs calculated as stated in <u>Recitals A and B</u> above.   Western Truck acknowledges that the Western Truck Security Agreements are in default as a result of the defaults under the Notes.   Western Truck and Western Convenience acknowledge and agree that the Notes shall continue to accrue interest and attorneys' fees and costs in accordance with the terms of the Notes until they have been repaid in full in accordance with the terms of this Agreement.

3.      <u>Acknowledgment of Enforceability of Loan Documents</u>.   Western Truck and Western Convenience do hereby acknowledge and affirm the validity and enforceability of the Notes, the Western Truck Security Agreements and any and all other documents of the Bank concerning the indebtedness to the Bank or any security therefor (the "Loan Documents"), and waive any and all defects and defenses to the Loan Documents, if any.   Western Truck and Western Convenience acknowledge and agree that the terms, provisions, and conditions of the Notes and the Western Truck Security Agreements shall remain in full force and effect until the unpaid balance of the Notes have been repaid in full in accordance with the terms of this Agreement; and that the Bank has not waived any of its rights, remedies, and liens by entering into this Agreement unless expressly waived herein.

4.      <u>Adequate Protection Payments</u>.   Commencing on the first day of June, 2016 and continuing on the first day of each month thereafter through and until November 1, 2016 Western Convenience shall make adequate protection payments to the Bank in the amount of $3,000 for application towards the unpaid balance of the $125,000 Note (the "Western Truck Adequate Protection Payments").   The Western Truck Adequate Protection Payments shall be in addition to adequate protection payments in the minimum amount of $11,398.96 per month paid

4

to the Bank as adequate protection on account of the $1,726,624.42 Note pursuant to the Cash Collateral orders entered in the Bankruptcy Case on January 15, 2016 and May 20, 2016.

5.    <u>Post-Petition Payments</u>.  All Pre-Petition and Post-Petition Payments made by Western Convenience on account of the Notes shall be unavoidable and irreversible such that it will not be necessary or allowable for Western Convenience or any successor to Western Convenience, including Chapter 7 Trustee, Chapter 11 Trustee, or examiner to assert claims in the future for any reversals of the Post-Petition Payments that the Bank has received prior to this Agreement or will receive under this Agreement, including but not limited to claims under 11 U.S.C. §§544, 547, 548, 549, 550, 553, or under the Uniform Fraudulent Transfer Act as adopted by any state or any other law governing the transfer or recovery of property.

6.    <u>Payment in Full</u>.  Western Convenience agrees that by no later than December 1, 2016 it will cause the Notes to be paid in full.

7.    <u>Western Truck and Western Convenience' Cooperation in Personal Property Collateral Sales</u>.  If the Notes are not paid in full by December 1, 2016 Western Truck and Western Convenience agrees to reasonably cooperate in the sale of the Western Truck Trailer Collateral.  Western Truck and Western Convenience waive any UCC notice of sales of the Western Truck Trailer Collateral.  In that regard, Western Truck and Western Convenience agrees as follows:

(a)    Taylor & Martin, Inc. or any successor auctioneer the Bank may designate (the "Auctioneer") may be retained by the Bank to publicly auction all of the Western Truck Trailer Collateral (the "Auction") except to the extent that the Bank shall determine in its sole discretion after consultation with the Auctioneer that selected items or all of the Western Truck Trailer Collateral would be best sold by private treaty. Nothing herein precludes Western Truck and Western Convenience from engaging in its own consultations with the Auctioneer.  Nothing herein precludes Western Truck and Western Convenience from making offers to purchase items of Western Truck Trailer Collateral by private treaty before public advertising of the auction.  The Bank may establish reserve minimum prices at the Auction, but is under no obligation to do so.  The public auction or private sales of Western Truck Trailer Collateral shall occur as soon as practical upon a Termination Event (defined below).  All of the Bank's fees and costs and the Auctioneer's fees and costs incurred in connection with the engagement shall be chargeable to, and posted as principal advances to the $125,000 Note unless previously netted from the Auction proceeds paid to the Bank.

(b)    The Auctioneer shall use its professional discretion on all aspects of the sale (including but not limited to the date of this sale as long as it is as soon as reasonably practicable), type, amount, timing, and adequacy of advertising, location, movement, and positioning of the Western Truck Trailer Collateral for sale, public inspection and exposure of Western Truck Trailer Collateral prior to sale, order in which specific items of Western Truck Trailer Collateral will be offered at sale, the lot or lots in which Western Truck Trailer Collateral will be sold, establishment of minimum bids, if any, to protect items from sale at auction, and to incur and pay for any maintenance,

5

24155253.2

improvements, repairs, or expenses for the Western Truck Trailer Collateral prior to sale, which expenses shall be chargeable to, and posted as principal advances to the $125,000 Note, and the Auctioneer's professional discretion and decisions shall be binding upon Western Truck and Western Convenience and shall be deemed to be commercially reasonable.

(c)    Western Truck and Western Convenience waive any further notice of sale of Western Truck Trailer Collateral because, among other reasons, notice is given and the sale is agreed to as stated in this Agreement.

(d)    The proceeds of the auction of the Western Truck Trailer Collateral shall be paid as stated in C.R.S. § 4-9-615. Sales proceeds of the Auction of the Western Truck Trailer Collateral net of sales expenses authorized by C.R.S. § 4-9-615 shall be paid to the Bank, and shall be applied first towards the unpaid balance (including principal, interest, late charges, attorneys' fees and costs) of the $125,000 Note and second to the unpaid balance (including principal, interest, late charges, attorneys' fees and costs) of the $1,726,624.42 Note.

(e)    All of the Western Truck Trailer Collateral will be sold even if it appears prior to the completion of the Auction that the last items of Western Truck Trailer Collateral will generate surplus proceeds. The surplus, if any, shall be accounted for pursuant to C.R.S. § 4-9-615. Western Truck and Western Convenience acknowledge that it is extremely unlikely that there will be surplus proceeds.

(f)    Western Truck and Western Convenience shall reasonably cooperate in all aspects of the sale of the Western Truck Trailer Collateral. Western Truck and Western Convenience may, if they like, attend the sale and bid on one or more items of Western Truck Trailer Collateral offered at the sale on the same terms and conditions as all other prospective bidders, including the requirement to settle in good funds at the conclusion of the sale for any items which they have purchased at the sale. In that regard, Western Truck and Western Convenience shall not make disparaging remarks against the Bank or the Auctioneer or engage in any activities which may chill the bidding.

(g)    The Bank may, in its discretion, enter into the Auctioneer's standard auction contract in the form provided by the Auctioneer and subject to such revisions as the Bank deems appropriate. All funds paid to the Auctioneer shall be deemed to be reasonable and necessary expenses and properly chargeable to, and posted as principal advances to the $125,000 Note.

(h)    Items of Western Truck Trailer Collateral not sold at any public auction shall be sold as soon as reasonably practical after the Auction by the Auctioneer in such manner as the Auctioneer may determine, which manner may include private treaty, a second auction, consigning or commingling items of Western Truck Trailer Collateral with one or more public auctions or private sales. Such additional sales shall be made without additional notice to Western Truck and Western Convenience. It is contemplated that the only basis for which an item of Western Truck Trailer Collateral will not sell at

6

24355253.2

the public auction would be for the failure to obtain a minimum bid set by the Auctioneer for specific items of Western Truck Trailer Collateral. Western Truck and Western Convenience shall have no discretion to require the Auctioneer to withhold any item from sale.

(i)      Western Truck and Western Convenience shall cooperate in providing the Auctioneer with immediate, unlimited, and complete access to the Western Truck Trailer Collateral for the purpose of inspecting, photographing, and preparing a sale bill for the Western Truck Trailer Collateral. Within 3 business days of a Termination Event (defined below) Western Truck and Western Convenience shall turnover the Western Truck Collateral to the Bank, or at the Bank's direction, to the Auctioneer at the Auctioneer's auction location at 9755 Henderson Road, Brighton, Colorado. Western Truck and Western Convenience shall make available to the Bank or Auctioneer the keys to the Western Truck Trailer Collateral and such books, records, documents, maintenance records and papers concerning the Western Truck Trailer Collateral helpful for a successful auction of the Western Truck Trailer Collateral, including all certificates of inspection and logs pertaining to the Western Truck Trailer Collateral.

8.    Bankruptcy Court Approval. Within five business days of the execution and delivery of this Agreement, Western Convenience shall cause his counsel to file with the Bankruptcy Court in the Bankruptcy Case the B.R. 9019 Motion, notice and proposed order in the form of Exhibit 7 attached hereto (collectively, the "B.R. 9019 Motion") and shall serve a copy of the B.R. 9019 Motion with this Agreement attached thereto upon all creditors and interested parties entitled to Notice under the Bankruptcy Code and Bankruptcy Rules. This Agreement shall be void if not approved by the Bankruptcy Court in the Bankruptcy Case by July 15, 2016 (the "Approval Deadline") unless the Bank agrees to extend the Approval Deadline.

9.    Cincinnati Insurance Payment. In the event Cincinnati Insurance refunds to Western Convenience or the Bank some or all of the Cincinnati Insurance Draw, such refund shall be paid to the Bank for application towards the unpaid balance of the $125,000 Note and the surplus, if any, shall be applied towards the unpaid balance of the $1,726,624.42 Note.

10.    Further Action. Western Truck and Western Convenience agrees to take such further action, including and without limitation, the execution and delivery of additional documents, as may be reasonably necessary to carry out the terms of this Agreement and to permit the Bank to obtain, maintain, or perfect the liens contemplated by this Agreement.

11.    Notes and Loan Documents Remain in Default. Western Convenience and Western Truck acknowledge and agree that this Agreement does not cure the continuing default under the Notes and Western Truck Security Agreements, which defaults will continue unless or until Western Convenience pays the Notes in full.

12.    Inspection. Western Truck and Western Convenience agree that the Bank may inspect the Western Truck Trailer Collateral at reasonable times and upon reasonable notice. In this regard, Western Truck shall upon the Bank's request inform the Bank of the current location of the Western Truck Trailer Collateral.

7

24155253.2

13.    Relief From Stay.  Western Convenience confesses the entry of an order granting the Motion for Relief from Stay for the Western Truck Trailer Collateral contemporaneously with the Effective Date of this Agreement.  In this regard, upon the Effective Date, the Bank shall have relief from stay for all of the Western Truck Trailer Collateral.

14.    Release.  Western Truck and Western Convenience and their officers, directors, agents, employees, representatives, members, managers, successors, and assigns do hereby completely and unconditionally release and forever discharge the Bank and their successors and assigns, and their officers, directors, agents, employees, and representatives from any and all claims, demands, actions, causes of action, costs, expenses, damages, or liabilities of whatever kind or nature, direct, indirect, third-party, or derivative, known or unknown, absolute or contingent, now existing or hereafter arising, which are based directly or indirectly upon facts, events, transactions, or occurrences directly or indirectly involving or relating to any and all matters by, between, and among the Bank and Western Truck and Western Convenience which transpired prior to the later of: (1) the Effective Date; or (2) the date that the last Party has executed this Agreement.

15.    No Commitment for New Loans.  Western Truck and Western Convenience acknowledge and agree that the Bank has not committed to, and has no obligation whatsoever to lend any additional money to Western Truck and Western Convenience after the Effective Date. Nothing in this Agreement shall be considered either an express or implied commitment, and nothing contained in this Agreement obligates the Bank to enter into any loan agreement or financing agreement with Western Truck and Western Convenience other than that described in this Agreement.  Western Truck and Western Convenience acknowledge and agree that the Bank has encouraged Western Truck and Western Convenience to locate and obtain other sources of financing because, in part, the Bank has expressed no desire to lend any additional money to Western Truck and Western Convenience.

16.    New Event of Default and Remedies.  Western Truck and Western Convenience acknowledge and agree that a default under any of the terms and provisions of this Agreement, and any new default under the Western Truck Security Agreements not existing as of the Effective Date of this Agreement shall constitute a default under this Agreement (a "New Event of Default").  A New Event of Default shall constitute a Termination Event (defined below). Upon such New Event of Default the Bank may immediately exercise all of its rights and remedies available pursuant to the terms and provisions of the Western Truck Security Agreements to include the immediate repossession and sale of the Western Truck Trailer Collateral.

17.    Termination Event.  Each of the following shall be defined as a "Termination Event," and upon a Termination Event the Forbearance Period (defined below) shall immediately terminate:

(a)     Western Truck or Western Convenience shall fail to timely perform, observe, or comply with any covenants, agreement, or term contained in this Agreement including, but not limited to the failure to make the Western Truck Adequate Protection Payments;

8

24155253.2

(b)    Western Truck shall fail to perform, observe, or comply with any non-monetary covenant contained in any of the Western Truck Security Agreements after the Effective Date;

(c)    A New Event of Default;

(d)    Western Convenience fails to satisfy its obligations to Suncor Energy (U.S.A.) Inc ("Suncor") which Western Convenience is required to perform within the Restructuring Support Period and within the Sale Transaction Deadline as those terms are defined in the Restructuring Support And Settlement Agreement dated January 29, 2016 between Western Convenience and Suncor (the "RSSA");

(e)    Any of Suncor's rights are triggered under section 2(h)(ii) or (iii) or (vi) of the RSSA; or

(f)    The arrival of December 1, 2016 without full payment of the Notes.

18.    <u>Rights and Remedies Upon Expiration or Termination of the Forbearance Period.</u> Upon expiration of the Forbearance Period or upon a Termination Event or by passage of time or otherwise, the Bank shall have a right to immediately cease or terminate the Forbearance Period and the forbearance described herein without an further notice or demand upon the Western Truck and Western Convenience, and the Bank shall be entitled to immediately exercise any and all rights and remedies available to the Bank under the Western Truck Security Agreements at law, in equity, or otherwise, which rights and remedies include, without limitation, institution of foreclosure proceedings against the Western Truck Trailer Collateral without further notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to foreclose, protest, or other formalities of any kind, all of which are expressly waived by Western Truck and Western Convenience.

B.    <u>The Bank's Obligations.</u>

High Plains Bank represents, warrants, covenants, and agrees as follows:

19.    <u>Forbearance.</u>  Provided that a New Event of Default has not occurred the Bank will forbear until no later than December 1, 2016 from exercising its foreclosure and enforcement rights against the Western Truck Trailer Collateral as a result of the continuing default under the Western Truck Security Agreements (the "Forbearance Period"). Notwithstanding the foregoing, (i) any forbearance granted by the Bank shall not constitute and shall not be construed or interpreted to constitute a waiver of any default which may now or hereafter existing under the Loan Documents; and (ii) this Agreement and the Forbearance Period granted by the Bank hereunder shall not constitute an amendment or modification of any of the Loan Documents, except as expressly stated herein. All other rights of the Bank contained in the Loan Documents as modified by this Agreement shall remain in full force and effect. Upon the expiration or termination of the Forbearance Period or upon the occurrence of a Termination Event, the Bank shall be entitled to exercise all rights and remedies, including foreclosure rights and remedies available to the Bank under the Western Truck Security Agreements or at law, in equity, or otherwise including, without limitation, institution of

9

foreclosure proceedings against the Western Truck Trailer Collateral or institution of a proceeding with other remedies such as those provided for in the Western Truck Security Agreements. All periods of limitations specified by statute and all defenses of laches or waiver as to any default existing on the Effective Date or arising during the Forbearance Period will be tolled and otherwise suspended during the Forbearance Period.

     20.   <u>Western Truck Trailer Collateral Sales.</u>  Upon a Termination Event, Bank agrees to sell the Western Truck Trailer Collateral in accordance with <u>Section 7</u> hereof.

C.    <u>All the Parties' Obligations.</u>

     All the Parties hereto represent, warrant, covenant, and agree as follows:

     21.   <u>Recitals.</u>  The Recitals of this Agreement are incorporated into the terms of this Agreement by this reference.

     22.   <u>Complete Agreement and Merger Clause.</u>  This Agreement represents the complete agreement of the Parties hereto with reference to the subject matter hereof, and supersedes all prior agreements and understandings, oral or written, of the Parties hereto with reference to the subject matter hereof.  The Parties agree that there have been no oral understandings between the Parties, and that all the Parties' rights and obligations are embodied in this Agreement.  This writing constitutes the final expression of the Parties' agreement, and it is a complete and exclusive statement of the terms of that agreement.

     23.   <u>Captions.</u>  The captions and headings as used throughout this Agreement are for ease of reference only, and do not expand, limit, or modify the scope, interpretation, or meaning of any paragraph of this Agreement.

     24.   <u>Binding Effect.</u>  This Agreement, and the rights and obligations of the Parties, shall be binding upon and inure to the benefit of the Parties and their respective successors, assigns, heirs, and personal representatives, and no rescission or modification or release of the undersigned from the terms of this Agreement will be made for any mistakes whatsoever.

     25.   <u>Uncertainty.</u>  The Parties each fully realize that it or he may have sustained unknown and unforeseen losses, costs, expenses, damages, liabilities, claims, business losses, and the consequences thereof, which may at this time be heretofore and hereafter unknown, unrecognized and not contemplated by it or them which resulted or may or will result from issues set forth in this Agreement.  By executing this Agreement, the Parties, their attorneys, successors, assigns and any and all past, present and future employees, successors, insurance carriers, bonding companies, reinsurers, firms and corporations are released from any and all liability for any and all such known and unknown and unforeseen losses, expenses, damages, costs, liabilities, business losses, punitive damages, and the consequences thereof, now known, recognized or contemplated at any time by either Party resulting from the financing arrangements between the Bank and Western Truck and Western Convenience as well as from any and all matters incident and related thereto.

24155253.2

26.    No Transfers.  Each Party hereto covenants that it or he has not assigned or caused to be transferred to any person or entity not a party to this Agreement any claims or rights affected by this Agreement.

27.    Amendments.  This Agreement constitutes the entire understanding of the Parties with respect to the subject matter hereof, and it may not be amended, modified or changed, nor shall any waiver of any provision of this Agreement be effective, except by an instrument in writing signed by all the Parties.

28.    Execution.  This Agreement may be executed in counterparts each of which shall be deemed an original, and all of which together shall constitute one and the same instrument representing the agreement of the Parties.

29.    Governing Law.  This Agreement shall be interpreted in accordance with the laws of the State of Colorado, and any litigation arising from breach of this Agreement or as a result of this Agreement shall be brought in courts located in the state of Colorado.

30.    Exhibits.  All the exhibits attached to this Agreement are incorporated into this Agreement by reference.

31.    Drafting.  The Parties acknowledge that this Agreement has been jointly drafted by all the Parties, and that Each Party has had equal input in the drafting of each of its terms.

32.    Authority to Enter into Agreement.  All Parties represent that they have requisite authority to enter into this Agreement.  Further, the Parties represent that they have entered into this Agreement voluntarily and after advice of counsel of their choosing.

33.    No Third-Party Beneficiaries.  This Agreement is not intended to benefit, and does not benefit, any person or entity other than the Parties hereto, and nothing herein is intended to create a partnership by, among, or between any of the Parties hereto.

HIGH PLAINS BANK

By: _____
    John Creighton
Its:  President and CEO

WESTERN TRUCK ONE, LLC

By: _____
    Hossein Taraghi
Its:  Manager

WESTERN CONVENIENCE STORES, INC.

By: _____
    Hossein Taraghi
Its:  Manager

11

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,726,624.42 | 04-18-2014 | 04-18-2034 | 23241055 | 11-7 / DT | | BY | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Western Convenience Stores, Inc.; Hossein Taraghi; and Debra Taraghi
9849 E. Easter Ave.
Centennial, CO 80112-2723

**Lender:** High Plains Bank
235 S. Ash
P. O. Box 329
Bennett, CO 80102
(303) 644-4900

**Principal Amount: $1,726,624.42** **Initial Rate: 5.000%** **Date of Note: April 18, 2014**

**PROMISE TO PAY.** Western Convenience Stores, Inc.; Hossein Taraghi; and Debra Taraghi ("Borrower") jointly and severally promise to pay to High Plains Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Seven Hundred Twenty-six Thousand Six Hundred Twenty-four & 42/100 Dollars ($1,726,624.42), together with interest on the unpaid principal balance from April 18, 2014, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 240 payments of $11,396.56 each payment. Borrower's first payment is due May 18, 2014, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 18, 2034, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each Three Years. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.000% per annum. NOTICE: Under no circumstances will the interest rate on this Note be less than 5.000% per annum or more than (except for any higher default rate shown below) the lesser of 20.000% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $50.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: High Plains Bank, 235 S. Ash, P. O. Box 329, Bennett, CO 80102.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged $100.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 16.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the reasonable costs of such collection. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of

<center>PROMISSORY NOTE<br>(Continued)</center>

**Loan No: 23241055**        Page 2

the State of Colorado without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Colorado.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated April 18, 2014, to the Public Trustee for the benefit of Lender on real property described as "Real Property located at 316 E Mulberry St, Fort Collins, CO 80524" and located in Larimer County, State of Colorado.

(B) a Deed of Trust dated April 18, 2014, to the Public Trustee for the benefit of Lender on real property described as "Real Property located at 2714 Thatcher Ave, Pueblo, CO 81004" and located in Fremont County, State of Colorado.

(C) a Deed of Trust dated April 18, 2014, to the Public Trustee for the benefit of Lender on real property described as "Real Property located at 382 E. Mountain Ave, Fort Collins, CO 80524" and located in Larimer County, State of Colorado.

(D) a Deed of Trust dated April 18, 2014, to the Public Trustee for the benefit of Lender on real property described as "Real Property located at 1228 Royal Gorge Blvd, Canon City, CO 81212" and located in Fremont County, State of Colorado.

(E) motor vehicles described in a Commercial Security Agreement dated April 18, 2014.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**WESTERN CONVENIENCE STORES, INC.**

By: _____  By: _____
Hossein Taraghi, President of Western Convenience Stores, Inc.    Debra Taraghi, Vice President of Western Convenience Stores, Inc.

X _____  X _____
Hossein Taraghi, Individually    Debra Taraghi, Individually

<center>EXHIBIT 1            Page 2 of 2</center>

# PROMISSORY NOTE

| Principal<br>$125,000.00 | Loan Date<br>04-15-2015 | Maturity<br>04-16-2016 | Loan No<br>24251035 | Call / Coll<br>16-7.7.01 | Account | Officer<br>KC | Initials |
|---|---|---|---|---|---|---|---|
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.<br>Any item above containing "* * * *" has been omitted due to text length limitations. |

**Borrower:** Western Convenience Stores, Inc.; Hossein<br>Taraghi and Debra Taraghi<br>9849 E. Easter Ave.<br>Centennial, CO  80112-2723

**Lender:** High Plains Bank<br>235 S. Ash<br>P. O. Box 329<br>Bennett, CO  80102<br>(303) 644-4900

---

**Principal Amount:  $125,000.00**                                      **Date of Note: April 15, 2015**

**PROMISE TO PAY.** Western Convenience Stores, Inc.; Hossein Taraghi and Debra Taraghi ("Borrower") jointly and severally promise to pay to High Plains Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twenty-five Thousand & 00/100 Dollars ($125,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.250% per annum based on a year of 360 days. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 16, 2016. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $50.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: High Plains Bank, 235 S. Ash, P. O. Box 329, Bennett, CO 80102.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged $100.00.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the reasonable costs of such collection. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of laws provisions. This Note has been accepted by Lender in the State of Colorado.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by Security Agreement dated 4-9-16. DOT dated 4/18/14 on 1228 Royal Gorge Blvd Canon City, CO.  DOT dated 4/18/14 on 362 E Mountain Ave., Fort Collins CO.  816 E Mulberry St., Fort Collins CO.  DOT dated on 4/18/14 on 2714 Thatcher Ave., Pueblo CO.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled

---

<div align="center">EXHIBIT 2</div>                                                         Page 1 of 3

<center>PROMISSORY NOTE<br>(Continued)</center>

| Loan No: 24251035 | | Page 2 |
|---|---|---|

to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Hossein Taraghi, President of Western Convenience Stores, Inc.; Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**FINANCIAL REPORTS.** Borrower agrees to furnish financial reports consisting of financial statement dated December 31 of each year and profit and loss statement or income tax for each year.

**LOAN PRINCIPAL AND INTEREST PAYMENTS.** All payments applied to principal or interest reduction must be in immediately available funds. Any payments applied toward the reduction of principal and interest that are not immediately available funds will be charged interest at the note rate for the period of unavailability of funds. This amount will be added to accrued and unpaid interest.

**PRIOR NOTE.** High Plains Bank Loan #24121004.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

WESTERN CONVENIENCE STORES, INC.

By: _____
    Hossein Taraghi, President of Western Convenience
    Stores, Inc.

X _____        X _____
  Hossein Taraghi, Individually                    Debra Taraghi, Individually

<center>**EXHIBIT 2**</center>

**PROMISSORY NOTE**
**(Continued)**

Loan No: 24251035                                                                                           Page 2

---

to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Hossein Tareghi, President of Western Convenience Stores, Inc.. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**FINANCIAL REPORTS.** Borrower agrees to furnish financial reports consisting of financial statement dated December 31 of each year and profit and loss statement or income tax for each year.

**LOAN PRINCIPAL AND INTEREST PAYMENTS.** All payments applied toward principal or interest reduction must be in immediately available funds. Any payments applied toward the reduction of principal and interest that are not immediately available funds will be charged interest at the note rate for the period of unavailability of funds. This amount will be added to accrued and unpaid interest.

**PRIOR NOTE.** High Plains Bank Loan #24121004.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**WESTERN CONVENIENCE STORES, INC.**

By: _____
   Hossein Tareghi, President of Western Convenience
   Stores, Inc.

X _____          X _____
   Hossein Tareghi, Individually                 Debra Tareghi, Individually

---

EXHIBIT 2                                                                      Page 3 of 3

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $127,781.00 | 03-29-2012 | 03-29-2013 | 24121004 | 16-7 / DT |  | GR |  |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Western Convenience Stores, Inc. (TIN: [redacted]: Western Truck One, LLC (TIN: [redacted]) Hossein Taraghi (SSN: [redacted]: and Debra Taraghi (SSN: [redacted])
9849 E. Easter Ave.
Centennial, CO 80112-2723

**Lender:** High Plains Bank
235 S. Ash
P. O. Box 329
Bennett, CO 80102
(303) 644-4900

**Grantor:** Western Truck One, LLC (TIN: 68-0502669)
9849 E. Easter Ave.
Centennial, CO 80112-2723

---

THIS COMMERCIAL SECURITY AGREEMENT dated March 29, 2012, is made and executed among Western Truck One, LLC ("Grantor"); Western Convenience Stores, Inc.; Western Truck One, LLC; Hossein Taraghi; and Debra Taraghi ("Borrower"); and High Plains Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2002 Beall TR (VIN 1BN2T43262B006678)

2006 Beall TR (VIN 1BN2T43206B007914)

2001 Onnen TR (VIN 1Z9SA40221D054002)

2001 Onnen TL (VIN 1Z9SA40201D054001)

2006 Beall TL (VIN 1BN2T43296B008348)

2007 Beall TL (VIN 1BN2T42267B009671)

2008 Beall TL (VIN 1BN2T43208B008659)

2008 Beall TL (VIN 1BN2T43208B009B44)

1994 Beall TL (VIN 1BN2M4222RB003952)

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No: 24121004                                                                 Page 2

interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement that have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Colorado, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.

EXHIBIT 3                                                       Page 2 of 6

# COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 24121004                                                                 Page 3

All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

Insurance Reserves. Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

Insurance Reports. Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

Financing Statements. Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

GRANTOR'S RIGHT TO POSSESSION. Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

DEFAULT. Each of the following shall constitute an Event of Default under this Agreement:

Payment Default. Borrower fails to make any payment when due under the Indebtedness.

Other Defaults. Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Defective Collateralization. This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Death or Insolvency. The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

Adverse Change. A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

RIGHTS AND REMEDIES ON DEFAULT. If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Colorado Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more

EXHIBIT 3                                                   Page 3 of 6

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 24121004                            Page 4

of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, chooses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's reasonable costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the reasonable costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of laws provisions. This Agreement has been accepted by Lender in the State of Colorado.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

EXHIBIT 3                                  Page 4 of 6

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 24121004

Page 5

Power of Attorney. Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

Severability. If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

Successors and Assigns. Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

Time is of the Essence. Time is of the essence in the performance of this Agreement.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

Agreement. The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

Borrower. The word "Borrower" means Western Convenience Stores, Inc.; Western Truck One, LLC; Hossein Taraghi and Debra Taraghi and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Collateral. The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

Default. The word "Default" means the Default set forth in this Agreement in the section titled "Default".

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

Grantor. The word "Grantor" means Western Truck One, LLC.

Guaranty. The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

Lender. The word "Lender" means High Plains Bank, its successors and assigns.

Note. The word "Note" means the Note executed by Western Convenience Stores, Inc.; Western Truck One, LLC; Hossein Taraghi and Debra Taraghi in the principal amount of $127,761.00 dated March 29, 2012, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 29, 2012.

GRANTOR:

WESTERN TRUCK ONE, LLC

By: _____
Hossein Taraghi, Manager of Western Truck One, LLC

EXHIBIT 3

Page 5 of 6

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 24121004                                                                  Page 6

BORROWER:

WESTERN CONVENIENCE STORES, INC.

By:
    Hossein Taraghi, President of Western Convenience Stores, Inc.

By:
    Debra Taraghi, Vice President of Western Convenience Stores, Inc.


WESTERN TRUCK ONE, LLC

By:
    Hossein Taraghi, Manager of Western Truck One, LLC

X
    Hossein Taraghi, Individually


X
    Debra Taraghi, Individually

EXHIBIT 3                                                                Page 6 of 6

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,726,624.42 | 04-18-2014 | 04-18-2034 | 23241055 | 11-7 / 07 | | BY | HJ |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Western Convenience Stores, Inc.; Hossein Taraghi; and Debra Taraghi
9849 E. Easter Ave.
Centennial, CO 80112-2723

**Lender:** High Plains Bank
235 S. Ash
P. O. Box 329
Bennett, CO 80102
(303) 644-4900

**Grantor:** Western Truck One, LLC
9849 E. Easter Ave.
Centennial, CO 80112-2723

---

**THIS COMMERCIAL SECURITY AGREEMENT** dated April 18, 2014, is made and executed among Western Truck One, LLC ("Grantor"); Western Convenience Stores, Inc.; Hossein Taraghi; and Debra Taraghi ("Borrower"); and High Plains Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2011 BEAL TU (VIN 1BN2T4324BB001644)

2006 BEAL BAS TL (VIN 1BN2T43296B008348)

2001 TRLR TL (VIN 1Z9SA40221D054002) — Released to Borrower 10/21/14 — Totalled — Waiting for insurance settlement HJ

2002 BEAL TL (VIN 1BN2T43262B006678)

2008 BEAL TL (VIN 1BN2T43208B008659)

2008 BEAL TL (VIN 1BN2T43208B009844)

2006 BEAL TL (VIN 1BN2T43206B007914)

2001 TRLR TL (VIN 1Z9SA40201D054001)

1994 BEAL TL (VIN 1BN2M4222RB003852)

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

| Loan No: 23241055 | Page 2 |
| --- | --- |

by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Colorado, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay

EXHIBIT 4                    Page 2 of 6

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Colorado Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

EXHIBIT 4                                                                          Page 3 of 6

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

| Loan No: 23241055 | Page 4 |
|---|---|

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Collect Revenue, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's reasonable costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the reasonable costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of laws provisions. This Agreement has been accepted by Lender in the State of Colorado.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the

EXHIBIT 4                                    Page 4 of 6

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 23241055             Page 5

perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Western Convenience Stores, Inc.; Hossein Taraghi and Debra Taraghi and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Western Truck One, LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means High Plains Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated April 16, 2014 and executed by Western Convenience Stores, Inc.; Hossein Taraghi and Debra Taraghi in the principal amount of $1,726,624.42, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED APRIL 16, 2014.**

GRANTOR:

WESTERN TRUCK ONE, LLC

By: _____
     Hossein Taraghi, Manager of Western Truck One, LLC

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 23241055                                                                      Page 6

BORROWER:

WESTERN CONVENIENCE STORES, INC.

By: _____
Hossein Taraghi, President of Western Convenience Stores, Inc.

By: _____
Debra Taraghi, Vice President of Western Convenience Stores, Inc.

X _____
Hossein Taraghi, Individually

X _____
Debra Taraghi, Individually

EXHIBIT 4                                                    Page 6 of 6

## COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $125,000.00 | 04-15-2015 | 04-16-2016 | 24261035 | 162 / 07 | | KC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:  Western Convenience Stores, Inc.; Hossain          Lender:  High Plains Bank
Taraghi and Debra Taraghi                                               235 S. Ash
9849 E. Easter Ave.                                                     P.O. Box 329
Centennial, CO 80112-2723                                               Bennett, CO 80102
                                                                        (303) 644-4600

Grantor:  Western Truck One, LLC
9849 E. Easter Ave.
Centennial, CO 80112-2723

THIS COMMERCIAL SECURITY AGREEMENT dated April 15, 2015, is made and executed among Western Truck One, LLC ("Grantor"); Western Convenience Stores, Inc.; Hossain Taraghi and Debra Taraghi ("Borrower"); and High Plains Bank ("Lender").

GRANT OF SECURITY INTEREST.  For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION.  The word "Collateral" as used in this Agreement means the following described property, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2002 Beall TR (VIN 1BN2T432828006679)

2006 Beall TR (VIN 1BN2T432068007914)

2001 Onnen TL (VIN 129SA402010054001)

2006 Beall TL (VIN 1BN2T432968006348)

2007 Beall TL (VIN 1BN2T422878009671)

2008 Beall TL (VIN 1BN2T432088008659)

2008 Beall TL (VIN 1BN2T432088009644)

1994 Beall TL (VIN 1BN2M4222R8003952)

In addition, the word "Collateral" also includes all the following:

(A)  All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

CROSS-COLLATERALIZATION.  In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

BORROWER'S WAIVERS AND RESPONSIBILITIES.  Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

GRANTOR'S REPRESENTATIONS AND WARRANTIES.  Grantor warrants that:  (A)  this Agreement is executed at Borrower's request and not at the request of Lender;  (B)  Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender;  (C)  Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and  (D)  Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

GRANTOR'S WAIVERS.  Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral.  Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor:  (A)  grant any extension of time for any payment,  (B)  grant any renewal,  (C)  permit any modification of payment terms or other terms, or  (D)  exchange or release any Collateral or other security.  No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

RIGHT OF SETOFF.  To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.  With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest.  Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral.  Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.  This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.

EXHIBIT 5                                                        Page 1 of 7

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 24251035                                                     Page 2

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above for such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact genuine and they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certification of title for the vehicles outside the State of Colorado, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No: 24251035

Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Colorado Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more

EXHIBIT 5                    Page 3 of 7

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

| Loan No: 24251035 | | Page 4 |
|---|---|---|

of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver. Receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's reasonable costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the reasonable costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Colorado.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**EXHIBIT 5**

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No: 24251035 — Page 5

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Western Convenience Stores, Inc.; Hossein Taraghi; and Debra Taraghi and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Western Truck One, LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means High Plains Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated April 15, 2015 and executed by Western Convenience Stores, Inc.; Hossein Taraghi and Debra Taraghi in the principal amount of $125,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED APRIL 15, 2015.

GRANTOR:

WESTERN TRUCK ONE, LLC

By: _____
Hossein Taraghi, Manager of Western Truck One, LLC

EXHIBIT 5 — Page 5 of 7

04/22/2015 WED 10:57  FAX 9704837302 High Plains Bank Wiggins                    ☒002/002

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 24251035                                                                Page 6

---

BORROWER:

WESTERN CONVENIENCE STORES, INC.

By: _____
    Hossein Taraghi, President of Western Convenience Stores, Inc.

x _____
   Hossein Taraghi, Individually

x _____
   Debra Taraghi, Individually

---

EXHIBIT 5                                                    Page 6 of 7

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No: 24251035                                                                                   Page 6

BORROWER:

WESTERN CONVENIENCE STORES, INC.

By: _____
     Hossein Taraghi, President of Western Convenience Stores, Inc.

X _____
   Hossein Taraghi, Individually

X _____
   Debra Taraghi, Individually

EXHIBIT 5                                    Page 7 of 7

DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK IN PAPER

CERTIFICATE OF TITLE

TRAILER
TITLE NUMBER
10B225489

VIN
1BN2M4222RB003852

YEAR 1994
MAKE BEAL
MODEL
BODY TL

ODOMETER 0

ODOMETER LEGEND
A - Actual Mileage
E - Exceeds Mechanical limits
Not the actual mileage. WARNING
ODOMETER DISCREPANCY

MAIL TO

HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0329

CWT 103
PREVIOUS TITLE
10B110847
FULL

OWNER
WESTERN TRUCK ONE LLC

DATE PURCHASED
04/16/2008
DATE ASSIGNED
05/16/2011
DATE ISSUED
05/27/2014

FIRST LIENHOLDER
HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0000

FILE NUMBER
201410247

LIEN EXTENDED TO COUNTY
ARAPAHOE

DATE RCD
05/14/2014

MATURITY DATE
05/14/2024

AMOUNT OF LIEN
1,236624.42

DATE RCD

Signature below certifies under penalty of
perjury to the record degree the release of the
first lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

SECOND LIENHOLDER

AMOUNT OF LIEN

LIEN EXTENDED TO COUNTY

FILE NUMBER

MATURITY DATE

DATE RCD

Signature below certifies under penalty of
perjury to the second degree the release of the
second lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

THIRD LIENHOLDER

AMOUNT OF LIEN

LIEN EXTENDED TO COUNTY

FILE NUMBER

MATURITY DATE

DATE RCD

Signature below certifies under penalty of
perjury to the third degree the release of the
third lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

FOURTH LIENHOLDER

AMOUNT OF LIEN

LIEN EXTENDED TO COUNTY

FILE NUMBER

MATURITY DATE

DATE RCD

Signature below certifies under penalty of
perjury to the fourth degree the release of the
fourth lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED,
SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE   DATE TITLE WAS ISSUED

BARBARA BROHL

J4008310

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

VOID IF ALTERED

EXHIBIT 6A

DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK IN PAPER

STATE OF COLORADO
**CERTIFICATE OF TITLE**
****TRAILER****

TITLE NUMBER
10B225487
ODOMETER
0

| VIN | YEAR | MAKE | MODEL | BODY |
|---|---|---|---|---|
| 1Z9SA40201D054001 | 2001 | TRLR | | TL |

MAIL TO

HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0329

CWT MODEL
CWT-83
PREVIOUS TITLE
10B110818

DATE PURCHASED
10/14/2005
DATE ACCEPTED
05/16/2014
DATE ISSUED
05/27/2014

OWNER
WESTERN TRUCK ONE LLC

FIRST LIENHOLDER
HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0000

DATE RCD
05/14/2014

FILE NUMBER
201410247

AMOUNT OF LIEN
1726624.12

LIEN EXTENDED TO COUNTY
ARAPAHOE

MATURITY DATE
05/14/2024

SECOND LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN        LIEN EXTENDED TO COUNTY        MATURITY DATE

THIRD LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN        LIEN EXTENDED TO COUNTY        MATURITY DATE

FOURTH LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN        LIEN EXTENDED TO COUNTY        MATURITY DATE

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED, SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE        DATE DUPLICATE ISSUED

BARBARA BROHL

J4016168

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

VOID IF ALTERED

EXHIBIT 6B



**EXHIBIT 6C**

DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK IN PAPER

STATE OF COLORADO
CERTIFICATE OF TITLE
*** TRAILER ***

| | |
|---|---|
| TITLE NUMBER | 10B225475 |
| ODOMETER | 0 |

VIN 1BN2T43296B008348   YEAR 2006   MAKE BEAL   MODEL   BODY TL

MAIL TO

HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0329

CWT JOO
PREVIOUS TITLE
10B110810

DATE PURCHASED 06/07/2006
DATE ACCEPTED 05/16/2014
DATE ISSUED 05/27/2014

OWNER
WESTERN TRUCK ONE LLC

FIRST LIENHOLDER
HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0000
AMOUNT OF LIEN
1726624.12

FILE NUMBER 201410247

LIEN EXTENDED TO   COUNTY
ARAPAHOE

DATE RCD 05/14/2014

MATURITY DATE 05/14/2024

SECOND LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN   LIEN EXTENDED TO   COUNTY

MATURITY DATE

THIRD LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN   LIEN EXTENDED TO   COUNTY

MATURITY DATE

FOURTH LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN   LIEN EXTENDED TO   COUNTY

MATURITY DATE

Signature below certifies under penalty of perjury to the second degree the release of the first lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

Signature below certifies under penalty of perjury to the second degree the release of the second lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

Signature below certifies under penalty of perjury to the second degree the release of the third lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

Signature below certifies under penalty of perjury to the second degree the release of the fourth lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE   DATE DUPLICATE ISSUED

BARBARA BROHL

J4016162

KEEP IN SAFE PLACE · ANY ALTERATION OR ERASURE VOIDS THIS TITLE   DR-2001 (8/11)

VOID IF ALTERED

EXHIBIT 6D



**EXHIBIT 6E**

DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK IN PAPER

**CERTIFICATE OF TITLE**
**\*\*TRAILER\*\***

TITLE NUMBER
10B225481

VIN
1BN2T43208B008659

YEAR
2008

MAKE
BEAL

MODEL

BODY
TL

ODOMETER
0

ODOMETER CODE
A — Actual Mileage
E — Exceeds mechanical limits
N — Not actual mileage. WARNING
   ODOMETER DISCREPANCY

MAIL TO

HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0329

CWT
CWT: 100
PREVIOUS TITLE
10B110812

DATE PURCHASED
08/28/2007

DATE APPLIED
05/16/2014

DATE ISSUED
05/27/2014

OWNER
WESTERN TRUCK ONE LLC

FIRST LIENHOLDER
HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0000

DATE REC'D
05/14/2014

AMOUNT OF LIEN
1726624.42

FILE NUMBER
201410247

LIEN EXTENDED TO COUNTY
ARAPAHOE

MATURITY DATE
05/14/2024

SECOND LIENHOLDER

DATE REC'D

AMOUNT OF LIEN

FILE NUMBER

LIEN EXTENDED TO COUNTY

MATURITY DATE

THIRD LIENHOLDER

DATE REC'D

AMOUNT OF LIEN

FILE NUMBER

LIEN EXTENDED TO COUNTY

MATURITY DATE

FOURTH LIENHOLDER

DATE REC'D

AMOUNT OF LIEN

FILE NUMBER

LIEN EXTENDED TO COUNTY

MATURITY DATE

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED, SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR COLORADO DEPARTMENT OF REVENUE    DATE DUPLICATE ISSUED

BARBARA BROHL

J4016165

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

DR 2001 (5-11)

VOID IF ALTERED

**EXHIBIT 6F**

DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK IN PAPER

STATE OF COLORADO
CERTIFICATE OF TITLE
***TRAILER***

TITLE NUMBER
10B225483

ODOMETER
0

| VIN | YEAR | MAKE | MODEL | BODY |
|---|---|---|---|---|
| 1BN2T43208B009844 | 2008 | BEAL | | TL |

ODOMETER LEGEND:
A ~ Actual Mileage
E ~ Exceeds mechanical limits
N ~ Not actual mileage; WARNING
ODOMETER DISCREPANCY

MAIL TO

HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0329

GVW/CAP/SIZE
CWT 100
PREVIOUS TITLE
10B110816
FUEL

OWNER
WESTERN TRUCK ONE LLC

DATE PURCHASED
04/15/2008
DATE ACCEPTED
05/16/2014
DATE ISSUED
05/27/2014

| FIRST LIENHOLDER | | DATE RCD |
|---|---|---|
| HIGH PLAINS BANK | | 05/14/2014 |
| PO BOX 329 | FILE NUMBER | |
| BENNETT, CO 80102-0000 | 201410247 | |
| AMOUNT OF LIEN | LIEN EXTENDED TO COUNTY | MATURITY DATE |
| 1726624.42 | ARAPAHOE | 05/14/2024 |

Signature below certifies under penalty of perjury in the second degree the release of the first lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

| SECOND LIENHOLDER | | DATE RCD |
|---|---|---|
| | FILE NUMBER | |
| AMOUNT OF LIEN | LIEN EXTENDED TO COUNTY | MATURITY DATE |

Signature below certifies under penalty of perjury in the second degree the release of the second lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

| THIRD LIENHOLDER | | DATE RCD |
|---|---|---|
| | FILE NUMBER | |
| AMOUNT OF LIEN | LIEN EXTENDED TO COUNTY | MATURITY DATE |

Signature below certifies under penalty of perjury in the second degree the release of the third lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

| FOURTH LIENHOLDER | | DATE RCD |
|---|---|---|
| | FILE NUMBER | |
| AMOUNT OF LIEN | LIEN EXTENDED TO COUNTY | MATURITY DATE |

Signature below certifies under penalty of perjury in the second degree the release of the fourth lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature   Date

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED, SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE   DATE DUPLICATE ISSUED

BARBARA BROHL

J4016166

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE   DR-2001 (8-11)

VOID IF ALTERED

EXHIBIT 6G

DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK IN PAPER

**STATE OF COLORADO**
**CERTIFICATE OF TITLE**
**\*\*\*TRAILER\*\*\***

TITLE NUMBER
10B225474

ODOMETER
0

VIN
1BN2T4324BB001544

YEAR
2011

MAKE
BEAL

MODEL

BODY
TU

ODOMETER LEGEND:
A = Actual Mileage
E = Exceeds mechanical limits
N = Not actual mileage WARNING
ODOMETER DISCREPANCY

MAIL TO

CWT/CAP/SIZE
CWT 104

HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0329

PREVIOUS TITLE
10B110782

FUEL

DATE PURCHASED
10/18/2011

OWNER
WESTERN TRUCK ONE LLC

DATE ACCEPTED
05/16/2014

DATE ISSUED
05/27/2014

FIRST LIENHOLDER
HIGH PLAINS BANK
PO BOX 329
BENNETT, CO 80102-0000

DATE RCD
05/14/2014

Signature below certifies under penalty of perjury in the second degree the release of the first lienholder's interest in the vehicle.

FILE NUMBER
201410247

Lienholder's Name

AMOUNT OF LIEN
1726624.42

LIEN EXTENDED TO  COUNTY
ARAPAHOE

MATURITY DATE
05/14/2024

Authorized Agent's Signature   Date

SECOND LIENHOLDER

DATE RCD

Signature below certifies under penalty of perjury in the second degree the release of the second lienholder's interest in the vehicle.

FILE NUMBER

Lienholder's Name

AMOUNT OF LIEN

LIEN EXTENDED TO  COUNTY

MATURITY DATE

Authorized Agent's Signature   Date

THIRD LIENHOLDER

DATE RCD

Signature below certifies under penalty of perjury in the second degree the release of the third lienholder's interest in the vehicle.

FILE NUMBER

Lienholder's Name

AMOUNT OF LIEN

LIEN EXTENDED TO  COUNTY

MATURITY DATE

Authorized Agent's Signature   Date

FOURTH LIENHOLDER

DATE RCD

Signature below certifies under penalty of perjury in the second degree the release of the fourth lienholder's interest in the vehicle.

FILE NUMBER

Lienholder's Name

AMOUNT OF LIEN

LIEN EXTENDED TO  COUNTY

MATURITY DATE

Authorized Agent's Signature   Date

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED, SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE    DATE DUPLICATE ISSUED

BARBARA BROHL

J4016161

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

DR-2001 (8-11)

VOID IF ALTERED

EXHIBIT 6H