UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                    )
                                          )        Case No. 15-23977-TBM
WESTERN CONVENIENCE STORES, INC. )
EIN: 84-1160742                           )        Chapter 11
                                          )
        Debtor.                           )

## MOTION TO ASSUME NONRESIDENTIAL REAL PROPERTY LEASE AGREEMENT WITH CABO PARTNERS, LLC

The Debtor, Western Convenience Stores, Inc. ("Debtor"), by and through its attorneys, Kutner Brinen, P.C., respectfully moves this Court for entry of an order pursuant to 11 U.S.C. §365(a) and Bankruptcy Rules 6006 and 9014 authorizing the Debtor's assumption of a nonresidential real property Lease Agreement with Cabo Partners, LLC ("Landlord"), and as grounds therefor, state as follows:

1.      The Debtor filed its voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on December 28, 2015 ("Petition Date"). The Debtor remains a debtor-in-possession.

2.      The Debtor is the operator of a chain of 44 convenience stores that sell gasoline, snack foods, and related products throughout Colorado and Nebraska.

3.      The Debtor entered into a pre-petition Lease Agreement (together with all amendments thereto, the "Lease") dated June 6, 2014 with Landlord for the premises located at 946 East Rainbow Road, Salida, Colorado ("Premises"). The Debtor leases real property and improvements consisting of a gas station and convenience store.

4.      The initial Lease term was from August 1, 2014 through August 1, 2019. A copy of the Lease is attached hereto as Exhibit A.

5.      Bankruptcy Code § 365(d)(4)(A) provides that the Debtor shall surrender any non-residential real property unless it assumes the governing lease the earlier of the date that is 120 days after the Petition Date or the date on which a plan is confirmed.

6.      On April 26, 2016, the Court entered an Order extending the time by which the Debtor was required to assume or reject its nonresidential real property leases by ninety (90) days, through and including July 25, 2016.

7.      The Debtor, in exercising its business judgment, has concluded that the Lease provides a benefit to the Debtor, the estate, and its reorganization effort, and therefore seeks to assume the Lease pursuant to section 365(a) of the Bankruptcy Code.  The terms of the Lease are fair and will provide the Debtor with the ability to maintain its operations at the same location at least through August 1, 2019.

8.      The monthly rent for the Premises is $1,500.00, and increases at a rate of 3% per year.  The Debtor can afford the rent on the Premises, and the rent is reasonable for the size and location of the Premises

9.      Assumption or rejection of executory contracts or unexpired leases by a debtor is subject to Court review under the business judgment standard.  See *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Mile High Medal Systems, Inc.*, 899 F.2d 887, 896 (10th Cir. 1990); *In re Grayhall Resources, Inc.*, 63 B.R. 382, 384 (Bankr. D. Colo. 1986).

10.     Pursuant to the business judgment test, the debtor's decision to assume or reject an executory contract or an unexpired lease should be approved when the debtor decides, in good faith, that assumption or rejection is beneficial to the estate.  *In re Chipwich, Inc.*, 54 B.R. 427, 430-431 (Bankr. S.D.N.Y. 1985) ("it is enough, if, as a matter of business judgment, rejection of the burdensome contract may benefit the estate").  Under Section 365(a), "the debtor's business judgment should not be interfered with, absent a showing of bad faith or abuse of business discretion."  *Chipwich, Inc.,* 54 B.R. 430-31.  As stated by one court, "Court approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course."  *Summit Land Co. v. Allen (In re Summit Land Co.),* 13 B.R. 310, 315 (Bankr. D. Utah 1981).

11.     Assumption of the Lease is in the best interest of the Debtor, its creditors and the estate.  The Lease provides a benefit to the estate because it will allow the Debtor to continue to operate in the Premises without the disruption that would be caused by moving its operations and inventory.  Additionally, the Premises has fixtures, including gas pumps, that are necessary for the Debtor's operations.  If the Lease terminates and the Debtor is forced to vacate the Premises, the Debtor will be forced to either permanently close that location, or expend substantial funds to find a new premises with the necessary fixtures for the Debtor's operations.

12.     The Debtor is current on all lease payments, and the Landlord does not have a pre-petition claim against the Debtor[1].   As a result, no cure is necessary at the time of assumption.

WHEREFORE, the Debtor prays that the Court enter an Order authorizing the assumption of the Lease, and for such further and additional relief as to the Court may deem proper.

Dated: June 9, 2016                         Respectfully submitted,

                                            By: s/ Keri L. Riley
                                                Lee M. Kutner, #10966
                                                Keri L. Riley, #47605
                                                **KUTNER BRINEN, P.C.**
                                                1660 Lincoln St. Suite 1850
                                                Denver, CO  80264
                                                Telephone:  (303) 832-2400
                                                Telecopy: (303) 832-1510
                                                E-Mail: klr@kutnerlaw.com

---

[1] Landlord was included on Debtor's Schedule F with a pre-petition claim in the amount of $1,500.00.  In fact, this amount was not due until January 1, 2016, and was therefore paid post-petition in the ordinary course of business.

## CERTIFICATE OF SERVICE

     The undersigned certifies that on June 9, 2016, I served by prepaid first class mail a copy of the foregoing **MOTION TO ASSUME NONRESIDENTIAL REAL PROPERTY LEASE AGREEMENT WITH CABO PARTNERS, LLC AND NOTICE OF MOTION TO ASSUME NONRESIDENTIAL REAL PROPERTY LEASE AGREEMENT WITH CABO PARTNERS, LLC** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

Cabo Partners, LLC
946 East Rainbow Blvd.
Salida, CO 81201

Terry Brown
Registered Agent
Cabo Partners, LLC
8130 Buck Run
Salida, CO 81201

Cabo Partners, LLC
385 Inverness Parkway
Suite 460
Englewood, CO 80112

Mark S. Cooley
Registered Agent
Cabo Partners, LLC
385 Inverness Parkway
Suite 460
Englewood, CO 0112

Kubat Equipment and Service Co.
ATTN: Craig Hoyer
1070 South Galapago Street
Denver, CO 80223

PepsiCo, Inc.
ATTN: Conrad Ragan
1100 Reynolds Blvd.
Winston-Salem, NC 27105

Harpel Oil Company
ATTN: Douglas C. Harpel
5480 Brighton Blvd.
Commerce City, CO 80022

Alan K. Motes, Esq.
U.S. Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

Philip A. Pearlman, Esq.
Jamie N. Cotter, Esq.
Spencer Fane, LLP
1700 Lincoln Street
Suite 2000
Denver, CO 80203

John O'Brien, Esq.
Snell & Wilmer, LLP
1200 Seventeenth Street
Suite 1900
Denver, CO 80202-5854

Craig K. Schuenemann, Esq.
Bryan Cave, LLP
1700 Lincoln Street
Suite 4100
Denver, CO 80203-4541

Mark G. Stingley, Esq.
William J. Maloney, Esq.
Bryan Cave, LLP
1200 Main Street
Suite 3800
Kansas City, Missouri 64105

Adam L. Hirsch, Esq.
Kutak Rock, LLP
1801 California Street
Suite 3000
Denver, CO 80202-2658

Erica F. Houck Englert, Esq.
1801 California Street
Suite 3400
Denver, CO 80202

James B. Holden, Esq.
Lynda L. Atkins, Esq.
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, CO 80203

Gregory G. Hesse, Esq.
Hunton & Williams, LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75202-2799

Steven E. Abelman, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, CO 80202

Paul G. Urtz, Esq.
Miller & Urtz, LLC
1660 Lincoln Street
Suite 2850
Denver, CO 80264

Darryl S. Laddin, Esq.
Frank N. White, Esq.
Arnall Golden Gregory, LLP
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363-1031

Samuel M. Kidder, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202-4432

Robert A. Kumin, Esq.
Scott S. Kleypas, Esq.
Robert A. Kumin, P.C.
6901 Shawnee Mission Parkway
Suite 250
Overland Park, KS 66202

Scott A. Clark, Esq.
Burns, Figa & Will, P.C.
Plaza Tower One, Suite 1000
6400 South Fiddlers Green Circle
Greenwood Village, CO 80111

Neal K. Dunning, Esq.
Brown, Berardini, Dunning & Walker,
P.C.
2000 South Colorado Boulevard
Tower Two, Suite 700
Denver, CO 80222

Douglas D. Koktavy, Esq.
Douglas D. Koktavy, P.C.
Building B, Suite 120
10200 East Girard Avenue
Denver, CO 80231

Ronald E. Gold, Esq.
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45208

Peter W. Ito, Esq.
ITO Law Group, LLC
1550 Larimer Street
Suite 667
Denver, CO 80202

Jeffrey N. Pomerantz, Esq.
Jeffrey W. Dulberg, Esq.
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4100

Gregory S. Bell, Esq.
Bell, Gould, Linder & Scott, P.C.
322 East Oak Street
Fort Collins, CO 80524

NRC Realty & Capital Advisors, LLC
8601 North Scottsdale Road
Suite 310
Scottsdale, AZ 85253

Joseph D. Frank, Esq.
Jeremy C. Kleinman, Esq.
Frank Gecker, LLP
325 North LaSalle Street
Suite 625
Chicago, IL 60654

Soukup Bush & Associates, P.C.
2032 Caribou Drive
Suite 200
Fort Collins, CO 80525

Darryl S. Laddin, Esq.
Frank N. White, Esq.
Arnall Golden Gregory, LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363-1031

Mark Ralston, Esq.
Fishman Jackson, PLLC
13155 Noel Road
Suite 700
Dallas, Texas 75240

A Troy Ciccarelli, Esq.
Ciccarelli & Associates, P.C.
2616 West Alamo Avenue
Littleton, CO 80120

Matthew A. Gold, Esq.
Argo Partners
12 West 37th Street
9th Floor
New York, NY 10018

David J. Lisko, Esq.
633 17th Street
Suite 2300
Denver, CO 80202

Susan L. Martineau, Esq.
12151 Spruce Street
Thornton, CO 80602

Springer & Steinberg, P.C.
1600 Broadway Street
Denver, CO 80202

**Vicky Martina**

#150

## LEASE AGREEMENT

1.   PARTIES.

        This lease, dated, for reference purposes only, June 6, 2014, is made by and between Cabo Partners, LLC whose address is 946 East Rainbow Boulevard, Salida, Colorado, 81201 (Landlord) and Western Convenience Stores, Inc. a Colorado Corporation, whose address is 9849 E. Easter Avenue, Centennial, CO 80112 (Tenant).

2.   PREMISES.

2.1.   LEASE.  Landlord hereby leases to Tenant and Tenant leases from Landlord real property situated in the County of Chaffee, State of Colorado, at 946 East Rainbow Boulevard, Salida, Colorado, and more particularly described as follows:
        (See exhibit A attached hereto)

Said real property includes the present parking areas servicing the improvements thereon and is hereinafter referred to as "Premises".

3.   TERM.

        3.1   Basic Term.  The Term of this lease ("Basic Term") shall be for sixty (60) months commencing on the date that Western has received certain items pertaining to the interior of the store and necessary signage for the exterior of the store.  Upon receipt and prior to installation of the aforementioned items Western shall first tender a fourteen business commencement day notice to Landlord and, thereafter, on the fifteenth day commence installation of the signage and interior items and pay the first month's rent which shall determine the ("Commencement Date") unless terminated pursuant to any provision hereof. Notwithstanding the terminology pertaining to an early Commencement Date as set forth in this paragraph, this Lease shall commence no later than August 1, 2014.

3.2   Occupancy.  If, for any reason, the Premises shall not be ready or available for occupancy on the date specified herein, this Lease shall nevertheless continue in full force and effect and Tenant shall have no right to rescind, cancel or terminate the same, and Landlord shall not be liable for damages, if any, consequential or otherwise, sustained by Tenant on account of failure to obtain possession at the date specified for the commencement of the Term herein, and in such event, the rent for the Premises shall not commence until Tenant is notified in writing that said Premises are available and ready for occupancy and the Term hereof shall be postponed for an equivalent period of time, and the date specified in the notification shall become the Commencement Date. Landlord shall expeditiously and at its expense take all necessary steps to remove any current Tenants from the Premises and make the same available for occupancy by Tenant.

1   

**Exhibit A**

4.   RENT.   Tenant shall pay to Landlord as minimum rent for the Premises ("Minimum Rent") during the Basic Term aforesaid the sum of One Thousand five hundred dollars ($1,500.00) for the first year and thereafter the Minimum Rent shall be increased by 3% per year during the Basic Term or any Renewal Term of this Lease.  Minimum Rent shall be payable commencing on the first day of the Term and continuing on the 1st day of each month thereafter for the remainder of the Term.  If the Term commences on a day other than the first day of the month, Tenant shall pay Landlord a pro-rata share of the monthly installment for the first month of the Term based upon the partial month and this amount shall be due and payable on the Commencement Date.  Minimum Rent shall be paid without any deduction, offset, or abatement in lawful money of the United States of America to Landlord at the address stated herein or to such other persons or at such other places as Landlord may designate in writing.  Attached to this Lease as Exhibit B is a rent schedule which sets forth the Lease amount payable for each of the years of the Basic Term as well as the Extension Terms available to the Tenant as set forth in Section 15 and Section 19 of this Lease.

5.   (Omitted)

6.   USE.

6.1   Use.   The Premises shall continue to be used and occupied only for a gasoline service station and convenience store, and for retail sale of related items and the rendition of such services as are usually and customarily rendered and performed in connection with such business, as permitted by law and zoning.

6.2.   Compliance with Law.   Tenant shall, at Tenant's expense, comply promptly with all applicable statutes, ordinances, rules, regulations, orders and requirements in effect during the Basic Term or any part of the Basic Term or extended Term hereof regulating the use by Tenant of the Premises, including EPA Regulations and State and Federal law governing Hazardous Substances.  Tenant shall not use or permit the use of the Premises in any manner that will tend to create waste, or a nuisance.

6.3.   Condition of Premises.  Tenant hereby accepts the Premises in their "AS IS" condition existing as of the date of possession hereunder, subject to all applicable zoning, municipal, county and state laws, ordinances and regulations governing and regulating the use of the Premises, and accepts this Lease subject thereto and to all matters disclosed thereby and by any exhibits attached hereto.    Tenant acknowledges that neither Landlord nor Tenant has made any representation or warranty as to the suitability or profitability of the Premises for the conduct of Tenant's uses.

6.4.   Insurance Cancellation.   Notwithstanding the provisions of the Article 6.1 herein above, no use shall be made or permitted to be made of the Premises nor acts done which will cause the cancellation of any insurance policy covering said Premises or any building of which the Premises may be a part, and if Tenant's use of the Premises causes an increase in said insurance rates Tenant shall pay any such increase.

2   

7.    MAINTENANCE, REPAIRS AND ALTERATIONS.

7.1    No Landlord Obligation.  Landlord shall have no obligation to maintain and repair the Premises.

7.2    Tenant's Obligations.

(a) Subject to Article 9, or negligence of the Landlord, Tenant, at Tenant's expense, shall keep in good order, condition and repair the Premises and the personal property and every part thereof including, without limiting the generality of the foregoing, foundations, exterior walls and roof of the Premises, all plumbing, heating, air conditioning, ventilating electrical and lighting facilities and equipment within the Premises, as well as fixtures, interior walls, ceilings, windows, doors, plate glass, and skylights located within the Premises. Further, the Tenant shall properly irrigate and care for all trees, shrubbery, and lawn upon or about the Premises, keep said sidewalks free from ice and snow, keep said sidewalks and yard free from all litter, dirt, debris and obstructions; keep cesspool, sand traps, grease traps and ash pits clean and in the sanitary condition required by the County of Chaffee; neither hold nor attempt to hold the Landlord liable for any injury or damage occasioned by defective wiring or by the breaking or stoppage of the plumbing or sewage upon the Premises, whether such breaking or stoppage results from freezing or otherwise.

(b) If Tenant fails to performs Tenant's obligations under this Article 7.2, Landlord may at Landlord's option enter upon the Premises after ten (10) days' prior written notice to Tenant, and put the same in good order, condition and repair, and the cost thereof together with interest thereon at the rate eight (8%) percent per annum shall be due and payable as additional rent to Landlord together with Tenant's next rental installment.

(c) On the last day of the Term hereof, or on any sooner termination, Tenant shall surrender the Premises to Landlord in good condition, broom clean, ordinary wear and tear excepted. Tenant shall repair any damage to the Premises occasioned by its use thereof or by the removal of its trade fixtures, furnishings and equipment pursuant to Article 7.3 (c), which repair shall include but not be limited to the patching and filling of holes and repairs of structural damage.

7.3    Alterations and Additions.

(a) Tenant shall not without Landlord's prior consent make any alterations, improvements or additions in, on, or about the Premises, except for non-structural alterations not exceeding $10,000.00 in cost. As a condition to giving such consent, Landlord may require that Tenant agree to remove any such alterations, improvement, additions or utility installations at the expiration of the Term, and to restore the Premises to their prior condition.

3 

(b)    Before commencing any work relating to alterations, additions and improvements affecting the Premises, Tenant shall notify Landlord in writing of the expected date of commencement thereof. Landlord shall then have the right at any time and from time to time to post and maintain on the Premises such notices as Landlord reasonably deems necessary to protect the Premises and Landlord from Mechanics' liens, materialmen's liens or any other liens. Tenant shall pay, when due, all claims for labor or materials furnished to or for Tenant at or for use in the Premises. Tenant shall not permit any mechanics' or materialmen's liens to be levied against the Premises for any labor or material furnished to Tenant or claimed to have been furnished to Tenant or to Tenant's agents or contractors in connection with work of any character performed or claimed to have been performed on the Premises by or at the direction of Tenant.

(c)    Unless Landlord requires their removal, as set forth in this Article, all alterations, improvements, or additions which may be made on the Premises shall become the property of Landlord and remain upon and be surrendered with the Premises at the expiration of the Term.    Notwithstanding the provisions of this Article 7.3 (c), Tenant's machinery, equipment, and trade fixtures, other than that which is affixed to the Premises so that it cannot be removed without material damage to the Premises, shall remain the property of Tenant and may be removed by Tenant subject to the provisions of Article 7.2 (a).

## 8.   INSURANCE, INDEMNITY AND EXEMPTION OF LANDLORD FROM LIABILITY.

8.1.   Liability and Business Insurance.   Tenant shall, at Tenant's expense, obtain and keep in force during the Term of this Lease Agreement a policy of comprehensive public liability insurance insuring Landlord and Tenant against any liability arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto.   Such insurance shall be in an amount of not less than $1,000,000 for injury to or death of one person in any one accident or occurrence and in an amount of not less than $2,000,000 for injury to or death of more than one person in any one accident or occurrence.   Such insurance shall further insure Landlord and Tenant against liability for property damage of at least $500,000.00.  The limits of said insurance shall not, however, limit the liability of Tenant hereunder.   Tenant shall also, at Tenant's expense obtain and keep in force during the Term of this Lease Agreement, a policy of insurance insuring Landlord and Tenant against any liability arising out of the operation of its business being conducted in the Premises.   Such insurance shall be in an amount not less than $1,000,000.  In the event that the Premises constitute a part of a larger property said insurance shall have a Landlord's Protective Liability endorsement attached thereto.  If Tenant shall fail to procure and maintain said insurance Landlord may, but shall not be required to. procure and maintain the same, but at the expense of Tenant.    Tenant shall be responsible for any deductible amount under such policy.

8.2.   Property Insurance.   Excluding negligent acts pertaining to the Landlord causing damage to the Premises, Tenant shall obtain and keep in force, at their own expense during the Term of this Lease. a policy or policies of insurance covering loss or damage to the Premises, in the amount of the full replacement value thereof, providing protection against all perils included

4



within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils (all risk). Tenant shall pay during the Term hereof, in addition to rent, the cost of such insurance. The proceeds of any such insurance shall be paid to Landlord. Tenant shall be responsible for any deductible amount under such policy.

8.3.   Insurance Policies.  Insurance required hereunder shall be in companies rated A+ AAA or better in "Best's Insurance Guide." Tenant shall deliver to Landlord, prior to possession, copies of policies of liability insurance required under Paragraph 8.1 or certificates evidencing the existence and amounts of such insurance with loss payable clauses satisfactory to Landlord. No such policy shall be cancelable or subject to reduction of coverage or other modification except after ten (10) days prior to written notice to Landlord.   Tenant shall, within thirty (30) days prior to' the expiration of such policies, furnish Landlord with renewals thereof, or Landlord may order such insurance and charge the cost thereof to Tenant, which amount shall be payable by Tenant upon demand.  Tenant shall not do or permit to be done anything which shall invalidate the insurance policies referred to in Article 8.2

8.4.   Waiver and Subrogation.  Tenant and Landlord each waives any and all rights of recovery against the other, or against the officers, employees, agents and representatives of the other, for loss of or damage to such waiving party of its property or the property of others under its control, where such loss or damage is insured against under any insurance policy in force at the time of such loss or damage.  Tenant and Landlord shall, upon obtaining the policies of insurance required hereunder, give notice to the insurance carriers that the foregoing mutual waiver of subrogation is contained in this Lease Agreement.

8.5.   Hold Harmless.  Tenant shall indemnify, defend and hold Landlord harmless from any and all claims arising from Tenant's use of the Premises or from the conduct of its business or from any activity, work or things which may be permitted or suffered by Tenant in or about the Premises and shall further indemnify, defend and hold Landlord harmless from and against any and all claims arising from any breach or default in the performance of any obligation on Tenant's part to be performed under the provisions of this Lease or arising from any negligence of Tenant or any of its agents, contractors, employees or invitees and from any and all costs, attorneys' fees, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon.  Tenant hereby assumes all risk of damage to property or injury to persons in or about the Premises from any cause, and Tenant hereby waives all claims in respect thereof against Landlord, excepting where said damage arises out of negligence of Landlord.

8.6.   Exemption of Landlord from Liability.  Tenant hereby agrees that Landlord shall not be liable for injury to Tenant's business or any loss of income there from or for damage to the goods, wares, merchandise  or other property of Tenant, Tenant's employees, invitees, customers, or any other person in or about the premises; nor, unless through his negligence, shall Landlord be liable for injury to the person of Tenant, Tenant's employees, agents or contractors and invitees, whether such damage or injury is, caused by or results from fire, steam, electricity, gas, water or rain, or from the breakage, leakage. obstruction or other defects of pipes, sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures, or from any other cause, whether

5

the said damage or injury results from conditions arising upon the Premises or upon other portions of the building of which the Premises, area part, or from other sources or places, and regardless of whether the cause of such damage or injury or the means of repairing the same is inaccessible to Landlord or Tenant.

8.7.  Lease Waiver.  The Landlord and Tenant waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance with such waiver to be effective so long as each is empowered to grant such waiver under the terms of the insurance policy involved.  The above waiver also extends to loss of rents of the Landlord.

9.  DAMAGE OR DESTRUCTION.

9.1.  Partial Damage - Insured.  Subject to the provisions of Article 9.4, if the Premises are damaged and such damage was caused by a casualty covered under an insurance policy required to be maintained pursuant to Article 8.2, Landlord shall, at Landlord's expense, repair such damage as soon as reasonably possible and this Lease Agreement shall continue in full force and effect.

9.2.  Damage - Uninsured.  In the event the Premises be damaged or destroyed by a casualty which is not covered by fire and extended coverage insurance carried by Tenant or Landlord, then Landlord shall restore same, provided that if the damage or destruction is to an extent greater than forty (40%) percent of the then replacement cost of improvements on the Premises (exclusive of Tenant's trade fixtures and equipment and exclusive of foundation) then Landlord may elect not to restore and to terminate this Lease Agreement.  Landlord must give Tenant written notice of its election not to restore within sixty (60) days from the date of damage and, if not given, Landlord shall be deemed to have elected to restore and in such event shall repair any damage as soon as reasonably possible.  In the event Landlord elects to give such notice of Landlord's intention to cancel and terminate this Lease, Tenant shall have the right within fifteen (15) days after the receipt of such notice to give written notice to Landlord of Tenant's intention to repair such damage at Tenant's expense, without reimbursement from Landlord, in which event this Lease Agreement shall continue in full force & effect & Tenant shall proceed to make such repairs as soon as reasonably possible.  If Tenant does not give such notice within such fifteen (15) day period, this Lease shall be cancelled & terminated as of the date of the occurrence of such damage.

9.3.  Total Destruction.  If at any time during the Term hereof the Premises are totally destroyed from any cause whether or not covered by the insurance required to be maintained by Tenant pursuant to Article 8.2 including any total destruction required by any authorized public authority this Lease Agreement shall automatically terminate as of the date of such total destruction.

9.4.  Damage Near End of Term.  If the Premises are partially destroyed or damaged during the last six (6) months of the Term of this Lease Agreement, Landlord may, at Landlord's option, cancel and terminate this Lease as of the date of occurrence of such damage by giving written

6

notice to Tenant of Landlord's election to do so within thirty (30) days after the date of occurrence of such damage.

9.5.  Abatement of Rent.

(a)    If the Premises are partially destroyed or damaged and Landlord or Tenant repairs or restores them pursuant to the provisions of this Article 9, the rent payable hereunder for the period during which such damage, repair or restoration continues shall be abated in proportion to the degree to which Tenant's reasonable use of the Premises is impaired. Except for abatement of rent, if any, Tenant shall have no claim against Landlord for any damage suffered by reason of any such damage, destruction, repair or restoration.

(b)    If Landlord shall be obligated to repair or restore the Premises under the provisions of this Article 9 and shall not commence such repair or restoration within thirty (30) days after such obligations shall accrue, Tenant may at Tenant's option cancel and terminate this Lease Agreement by giving Landlord written notice of Tenant's election to do so at any time prior to commencement of such repair or restoration. In such event this Lease Agreement shall terminate as of the date of such notice. Any abatement in rent shall be computed as provided in Article 9.5 (a).

9.6.    Restoration.    Landlord's obligation to restore shall not include the restoration or replacement of Tenant's trade fixtures, equipment, merchandise or any improvements or alterations made by Tenant to the Premises.

9.7.  Prorations.  Upon termination of this Lease pursuant to this Article 9, an equitable prorate adjustment of rent based upon the number of days in that month shall be made.

9.8.  Tenant's Negligence.  In the event damage or destruction occurs within the Premises or within the building of which the Premises are a part due to the negligence of the Tenant, its officers, agents, employees, customers or invitees, then Tenant shall be obligated to repair such damage or destruction pursuant to the provision of this Section 9 provided that during this time period the Tenant shall continue to pay the Minimum Rent without any abatement or offset.

10.  UTILITIES.  Tenant shall pay for all water, gas, heat, light, and power and other utilities and services supplied to the Premises, together with any taxes thereon.  Tenant shall pay for any telephone expense together with any taxes thereon.

11.  REAL PROPERTY TAXES.

11.1.  Payment of Tax Increase.  Tenant shall pay prior to delinquency all real property taxes applicable to the Premises (2100 square feet) during the Term of this Lease and all renewals and extensions thereof.

11.2.  Definition of "Real Property" Taxes.  As used herein, the Term "real property tax" shall include  any form of assessment, license fee, rent tax , levy, penalty, or tax (other than

7



inheritance or estate taxes), imposed by any authority having the direct or indirect power to tax, including any city, county, state or federal government, or any school, agricultural, lighting, drainage or other improvement district thereof, as against any legal or equitable interest of Landlord in the Premises or in the real property of which the Premises are a part, as against Landlord's right to rent or other income therefrom, or as against Landlord's business of leasing the Premises, and Tenant shall pay any and all charges and fees which may be imposed by the EPA or other similar government regulations or authorities unless caused by the negligence of Landlord.

11.3.   Personal Property Taxes.

(a) Tenant shall pay prior to delinquency all taxes assessed against and levied upon trade fixtures, furnishings, equipment and all other personal property of Tenant contained in the Premises or elsewhere. Tenant shall cause said trade fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the real property of Landlord.

(b) If any said personal property shall be assessed with Landlord's real property, Tenant shall pay the taxes attributable to Tenant within thirty (30) days after receipt of a written statement setting forth the taxes applicable to Tenant's property.

11.4.   Notwithstanding any other provisions of this Lease Agreement, Tenant shall pay any increase in "real property taxes" resulting from any and all improvements of any kind whatsoever placed on or in the Premises for the benefit of or at the request of Tenant regardless of whether said improvements were installed or constructed either by Landlord or Tenant, except those items included with the original Premises.

11.5.   Rent Tax.   If applicable in the jurisdiction where the leased premises are situated, Tenant shall pay and be liable for all rental, sales and use taxes or other similar taxes, if any, levied or imposed by any City, State, County or other governmental body having authority, such payments to be in addition to all other payments required to be paid to Landlord by Tenant under the terms of this Lease Agreement. Any such payments shall be paid concurrently with the payment of the rent upon which the tax is based as set forth above.

11.6   Right to contest Taxes.   The Tenant shall have the right in the name of the Landlord, to protest any such real property tax and personal property tax assessments and prosecute such appeal, provided that the Tenant shall pay all sums as may be fully adjudged to be due for any calendar year during the lease Basic Term, or any extension thereof.

12.   ASSIGNMENT AND SUBLETTING.

12.1.   Landlord's Consent Required. Tenant shall not voluntarily or by operation of law assign, transfer, mortgage, sublet, or otherwise transfer or encumber all or any part of Tenant's interest in this Lease or in the Premises without Landlord's prior written consent, which Landlord may unreasonably withhold.   Any attempted assignment, transfer, mortgage, encumbrance, or

8



subletting without such consent shall be void and shall constitute a breach of the Lease. Any transfer of Tenant's interest in this Lease Agreement shall be deemed a prohibited assignment of this Article 12

12.2. No Release of Tenant. Regardless of Landlord's consent, no subletting or assignment shall release Tenant of Tenant's obligation to pay the rent and to perform all other obligations to be performed by Tenant hereunder for the Term of this Lease. The acceptance of rent by Landlord from any other person shall not be deemed to be a waiver by Landlord or any provision hereof. Consent to one assignment or subletting shall not be deemed consent to any subsequent assignment or subletting.

12.3. Assignment Fee. In the event that Landlord shall consent to a sublease or assignment under Article 12.1, Tenant shall pay Landlord reasonable fees not to exceed One Thousand ($1,000.00) Dollars incurred in connection with giving such consent.

13. DEFAULTS: REMEDIES.

13.1. Defaults. The occurrence of any one or more of the following events shall constitute a default and breach of this Lease by Tenant:

(a) The vacating or abandonment of the Premises by Tenant.

(b) The failure by Tenant to make any payment of Minimum Rent or any other payment required to be made by Tenant hereunder, as and when due, where such failure shall continue for a period of ten (10) days after written notice thereof from Landlord to Tenant; provided, however, Tenant shall not be entitled to more than two (2) notices of delinquency in a monetary default during any lease year and if thereafter any rent or other amounts owing hereunder are not paid when due, a default shall be considered to have occurred even though no notice thereof is given.

(c) The failure by Tenant to observe or perform any of the covenants, conditions or provisions of this Lease to be observed or performed by Tenant, other than described in paragraph (a) above, where such failure shall continue for a period of thirty (30) days after written notice thereof from Landlord to Tenant; provided, however, that if the nature of Tenant's default shall not be deemed to be in default if Tenant commenced such cure within said thirty (30) day period and thereafter diligently prosecutes such cure to completion.

(d) The making by either Tenant of any general assignment, or general arrangement for the benefit of creditor; (i) the filing by or against either Tenant of a petition to have Tenant adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Tenant, the same is dismissed within ninety (90) days; (ii) the appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located at the Premises or of

9



Tenant's interest in this Lease, where possession is not restored to Tenant within ninety (90) days; or (iii) the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where such seizure is not discharges within ninety (90) days.

13.2. <u>Remedies in Default</u>. In the event of any such default or breach by Tenant, Landlord may at any time thereafter, with or without notice or demand and without limiting Landlord in the exercise of any right or remedy which Landlord may have by reason of such default or breach:

  A. Terminate this Lease, or
  B. Terminate Tenant's right to possession only without terminating this Lease.

  In the event Landlord gives Tenant notice of Tenant's default and/or delivers to Tenant a Notice of Demand for Payment, or Possession pursuant to the applicable statute (either of which shall hereinafter be referred to as a "Notice of Default"), the Notice of Default will not constitute an election to terminate the Lease unless Landlord expressly states in the Notice of Default that it is exercising its right to terminate the lease.

13.3 <u>Termination</u>

A. <u>Deficient Rent</u>. For the purposes of this Section 13.3, the Term "Tenant's Rent Deficiency" shall mean an amount equal to the average rents, whether denominated Minimum Rent or otherwise, paid by Tenant hereunder for each year (or, as appropriate, the monthly or other periodic installment thereof) from the Commencement Date to the time of default, or during the three (3) full calendar years preceding the time of default, whichever period is shorter.

B. <u>Termination of Right to Possession Only</u>.

(1)   In the event Landlord serves upon Tenant a written notice, which notice does not state that Landlord has elected to terminate the Lease, Landlord, upon the expiration of three (3) days following the service of such notice, may at Landlord's option re-enter the Premises and take and hold possession thereof, without such re-entry into possession terminating the Lease or releasing Tenant in whole or in part from Tenant's obligation to pay the rents hereunder for the full stated Term.   Upon and after re-entry into possession without termination of the Lease, Landlord, may, but need not, re-let the Premises, or any part thereof, for the account of Tenant, to any person, firm or corporation, other than Tenant, for such rent, for such time and upon such terms as Landlord, in Landlord's sole discretion, shall determine, and Landlord shall not be required to accept any Tenant offered by Tenant or to observe any instruction given by Tenant about such reletting.   In any such case, Landlord may make repairs and redecorate the Premises to the extent deemed by Landlord necessary or desirable, and Tenant shall, upon demand, pay the cost thereof, together with Landlord's expenses of reletting (which Term shall include all expenses incident thereto, including brokerage fees and commissions and reasonable legal fees and expenses).   If the consideration collected by Landlord upon any such reletting for Tenant's account for any period of the Lease Term remaining hereunder, after deducting Landlord's expenses of reletting, is

10

less than Tenant's Rent Deficiency, Tenant shall pay to Landlord, upon demand, the difference between such collected consideration and Tenant's Rent Deficiency.

(2)   At any time after Landlord has elected to terminate Tenant's right to possession, Landlord shall have the right to terminate this Lease by serving five (5) days written notice on Tenant of such further election.

C.   Termination of Lease.  In the event Landlord serves upon Tenant written notice which states that Landlord has elected to terminate the Lease, Landlord may re-enter the Premises and take and hold possession thereof, and, in addition thereto, Landlord shall be entitled to exercise any and all remedies provided for herein or in law or in equity for accrued amounts hereunder remaining unpaid by Tenant and to recover from Tenant liquidated damages in an amount equal to the Tenants Rent Deficiency for the years and months of the Lease Term as would have remained on and after the date of service of such notice but for such Lease termination, discounted to present value at the rate of ten (10%) percent per annum.  Landlord and Tenant acknowledge that the damages resulting to Landlord for such remainder of the Lease Term would be difficult to ascertain and that the Tenants Rent Deficiency for such remainder of the Lease Term is a fair and reasonable estimate of Landlord's damages and thus does not constitute a penalty.

13.4  Re-Entry.

A.   Re-Entry, Generally.  Whenever hereunder Landlord exercises a right of re-entry of the Premises,  such re-entry may be made using such force as may be necessary, and; in connection therewith,  Landlord  may expel Tenant and any person or persons claiming by, through, or under Tenant, without being liable for prosecution therefore.

B.   Re-entry and Change of Locks.  In the event of Tenants default hereunder, Landlord may, in addition to all other rights and remedies, re-enter the premises, and change any and all of the locks on doors or other barriers.

C.   Re-entry and Tenant's Property.  If Tenant shall fail to remove any of Tentant's personal property and removable trade fixtures from the Premises within three (3) days of the date of service of a written notice which contains a demand that such property be so removed, or upon the termination of this Lease for any cause whatsoever, the Landlord, at its option, may remove the same in any manner that it shall choose and store it without liability to the Tenant for loss thereof in any public or private warehouse, and the Tenant agrees to pay Landlord, on demand, any and all expenses  incurred  in such removal, including court costs, reasonable attorney's fees and storage charges on such property for any length of time it shall be in storage;   and the Landlord, at its option, may sell such property, or any of it pursuant to Section 13.5.

D.   Effect of Exercising Rights.  Tenant hereby agrees that any act of and following re-entry by

11  

Landlord under subsections A, B or C of this Section or under Section 13.3.1(2) shall not constitute an eviction, constructive or otherwise, shall not terminate the Lease, and shall not render the Landlord liable for trespass, forcible entry and detainer, conversion, or in any other way, whatsoever, and that Tenant, upon demand, shall pay all costs and expenses incurred by the Landlord in doing such acts.

13.5   Lien.  In addition to any other security interest or lien provided by law for the benefit of a Landlord,    Landlord is hereby given a first lien and security interest in and upon all equipment, furnishings, furniture, goods, inventory and trade fixtures of Tenant or in which Tenant has rights (subject and subordinate only to a perfected purchase money security interest therein of a third party), including proceeds therefrom and replacements thereof, which shall come in or be placed upon the Premises and whether acquired by Tenant before or after the date hereof, to secure the payment of rents and the performance of each and every other covenant herein contained to be performed by Tenant. Tenant acknowledges and represents that none of such property will be for Tenant's personal, family or household use. Upon default by Tenant, or upon failure to cure, Landlord, without notice or demand, may take possession of and sell such property without legal process of any kind, at public or private sale, and whether or not such property is present at the place of sale, after one publication of a notice thereof in a daily newspaper published in the county where the Premises are situated not less than ten (10) days before such sale, or by following such alternative procedures and giving such minimum notices as may be required by law. Landlord may purchase at any such sale. The proceeds of any such sale shall be applied first to the payment of expenses thereof, second, to the discharge of the rents or other liability of Tenant hereunder remaining unpaid, and the balance, if any, shall be held for the account of the Tenant. Tenant agrees to execute and pay to Landlord the filing or recording fees for any financing statements or other documents necessary to perfect or record the lien and security interest herein granted, and this Lease for all purposes of this Section shall constitute a security agreement with Tenant being the debtor and Landlord being the secured party.

13.6   Waiver of Redemption Rights.   Tenant hereby expressly waives, to the full extent waivable, any and all right of redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Landlord obtaining possession of the Premises, by reason of the violation by Tenant of any of the covenants or conditions of this Lease, or otherwise.

13.7   Cure by Landlord.   In the event of Tenant's default hereunder, Landlord may immediately or at any time thereafter, without notice, cure such breach for the account and at the expense of Tenant.  If Landlord at any time by reason of such default is compelled to pay or elects to pay any sum of money or do any act which will require the payment of any sum of money, or is compelled or elects to incur any expense, including reasonable attorney's fees, the sum or sums so paid by Landlord shall be deemed to be due from Tenant and payable to Landlord on the first day of the month following the payment of such respective sums or expenses.

12

15.8.   Default by Landlord.  Landlord shall not be in default unless Landlord fails to perform obligations required of Landlord within a reasonable time, but in no event later than thirty (30) days after written notice by Tenant to Landlord, specifying wherein Landlord has failed to perform such obligation; provided, however, that if the nature of Landlord's obligation is such that more than thirty (30) days are required for performance then Landlord shall not be default if Landlord commences performance within such thirty (30) day period and thereafter diligently prosecutes the same to completion.

14.   SURRENDER OF POSSESSION

14.1   Condition at End of Term.  At the expiration of the Lease Term whether by lapse of time or otherwise, Tenant shall surrender the Premises broom clean and in good condition and repair, reasonable wear and tear and loss by fire or unavoidable casualty excepted.  If the Premises be not surrendered at the end of the Term or the sooner termination thereof, Tenant shall indemnify Landlord against loss or liability resulting from delay by Tenant in so surrendering the Premises.   Tenant shall promptly surrender all keys for the Premises to Landlord at the place then fixed for payment of rent.

14.2   Holding Over.  In the event Tenant remains in possession of the Premises after the expiration of the tenancy created hereunder with the consent of Landlord and without execution of a new lease, it shall be deemed to be occupying the premises as a Tenant from month to month, at 110% the current MINIMUM RENT, subject to all the other conditions, provisions and obligations of this Lease insofar as the same are applicable to the holdover period.

14.3   Removal of Property.  Upon the expiration of the tenancy hereby created the moval right and obligations of Tenant are as set forth in Section 7.3 above

15.   RIGHT OF FIRST REFUSAL

15.1   If Landlord, at any time during the Term of this Lease, receives any bona fide offer from a third party to purchase the Premises, which offer Landlord in good faith intends to accept, Landlord shall notify Tenant in writing, of such offer prior to accepting the same.  In such event the Tenant (within two business days) may extend the Basic Term of the Lease for an additional period beyond the extension periods set forth in paragraph 19 of this Lease.  This additional Term shall be for a period of fifteen years pursuant to the terms and conditions set forth in paragraph 19.

15.2   If Landlord sells the Premises to the third party making such offer, then the purchaser shall take the Premises subject to and burdened with all the terms, provisions and conditions of this Lease and the rights of Tenant under this Lease as against the new owner shall not be lessened or diminished by reason of change of ownership.

16.   RIGHT OF TERMINATION

13

If, at any time during the Term of this Lease Tenant is informed by the City, County or State (as applicable) that Tenant shall not have at least 24 feet of usable frontage property from the exterior of its fuel pumps to the curb stripe of Highway 50 or any other street, then in such event, Tenant may at its sole discretion terminate this Lease upon written Notice to the Landlord after a period of six months has expired from the date of reduction. The Notice of Termination must be sent within 30 days of expiration of the six month period.    If not sent within the 30 day time period the right to terminate shall expire.

17.    NOTICES.    Whenever under this Lease provision is made for any demand, notice or declaration of any kind, or where it is deemed desirable or necessary by either party to give or serve any such notice. demand or declaration to the other party, it shall be in writing and served either personally or sent by United States mail, postage prepaid, addressed at the addresses set forth herein below:

To Landlord at:    Cabo Partners, LLC
946 East Rainbow Boulevard
Salida, Colorado 81201.

To Tenant at:    Western convenience Stores, Inc.
9840 E. Easter Ave.
· Centennial, CO 80112

18.    SIGNS.    Any and all signs used by Tenant shall be supplied by Tenant at its sole cost and expense, and shall conform to local laws and ordinances. At this time Tenant shall be allotted the signage allowance that Conoco is using pursuant to the current sign code provisions. In the future if the sign code provisions are changed (expanded or lessened) Tenant will conform to such amendment of the code.

19.    TERM EXTENSION.    Tenant shall have the right and option to extend the Basic Term of this Lease, upon the same terms and conditions otherwise stated herein except for Minimum Rent, for three (3) separate and successive periods of five (5) years, such option to be exercised by Tenant giving written notice to Landlord of its election to exercise each such option, not more than 120 days and no less than 90 days prior to the expiration of the Basic Term of the Lease or the immediately prior extended Term, as the case may be; provided, that Tenant may not exercise each or any such option, or commence occupancy for any extended Term. if Tenant shall have been in default of any Term or condition of this Lease at any time during the Basic Term. or the then present or any prior extended Term, as the case may be. The Minimum Rent for each year of an extended Term shall be calculated and paid pursuant to 19.1 below.

19.1    Minimum Rent For Extended Terms. The MINIMUM RENT for each year of an extended Term shall be calculated and paid as follows:

14    

(A) 1st Renewal Term - 3% increase in rent for each year of the renewal Term.
(B) 2nd Renewal Term - 3% increase in rent for each year of the renewal Term.
(C) 3rd Renewal Term - 3% increase in rent for each year of the renewal Term.

20.   GENERAL PROVISIONS

20.1.   Severability.  The invalidity of any provision of this Lease, as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

20.2.   Time of Essence.  Time is of the essence.

20.3.   Captions.  Article and paragraph captions are not a part hereof.

20.4.   Incorporation of Prior Agreement; Amendments:  This Lease contains all agreements of the parties with respect to any matter mentioned herein.  No prior agreement or understanding pertaining to any such matter shall be effective.  This Lease may be modified in writing only, signed by the parties in interest at the time of the modification.

20.5.   Waivers.  No waiver by Landlord or any provision hereof shall be deemed a waiver of any other provision hereof or of any subsequent breach by Tenant of the same or any other provision.  Landlord's consent to or approval of any act shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act by Tenant; the acceptance of rent hereunder by Landlord shall not be a waiver of any preceding breach by Tenant of any provision hereof, other than the failure of Tenant to pay the particular rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rent.

20.6.   Recording.  Tenant shall not record this Lease.  Any such recordation shall be a breach under this Lease.  However, a written memorandum of this Lease in a form acceptable to both parties may be recorded in the Clerk and Recorder's office of the County of Douglas, State of Colorado.

20.7.   Cumulative Remedies.  No remedy or election hereunder shall be deemed exclusive, but shall wherever possible, be cumulative with all other remedies at law or in equity.

20.8.   Covenants and Conditions.  Each provision of this Lease performable by Tenant shall be deemed both a covenant and a condition.

20.9.   Binding Effect; Choice of Law.  Subject to any provisions hereof restricting assignment or subletting by Tenant and subject to the provisions of Article 12.2 this Lease shall bind the parties, their personal representative, successors and assigns.  This Lease shall be governed by the laws of the state where the Premises are located.

20.10.  Attorneys Fees and Trial By Jury.  If either party named herein brings an action to enforce the terms hereof or declare rights hereunder, the prevailing party in any such action, or

15  

and or appeal, shall be entitled to his reasonable attorneys fees to be paid by the losing party as fixed by the court. Should Landlord, without fault on its part, be made a party to any litigation instituted by or against Tenant, Tenant covenants to pay to Landlord all costs and expenses, including reasonable attorney's fees, incurred by Landlord in or in connection with such litigation. The parties hereby expressly waive trial by jury in any action, proceeding or counterclaim brought by either party against the other and any statute, rule of law or public policy to the contrary on any matter whatsoever arising out of or in any way connected with this Lease and further covenant and agree that they shall confirm such waivers in writing at the time of commencement of any such action, proceeding or counterclaim.

20.11. <u>Landlord's Access</u>.   Landlord and Landlord's agents shall have the right to enter the Premises at reasonable times for the purpose of inspecting the same, showing the same to prospective Tenants, purchasers, or lenders, and making such alterations, repairs, improvements or additions to the Premises or to the building of which they are a part as Landlord may deem necessary or desirable. Landlord may at any time place on or about the Premises any ordinary "For Sale" signs and Landlord may at any time place on or about the Premises any ordinary "For Sale or Lease" signs, all without rebate of rent or liability to Tenant.

20.12.   <u>Merger</u>.   The voluntary or other surrender of this Lease by Tenant, or a mutual cancellation thereof, shall not work a merger, and shall, at the option of Landlord, terminate all or any existing subtenancies or may, at the option of Landlord, operate as an assignment to Landlord of any or all of such subtenancies.

20.13.   <u>Offset Statement</u>.

(a) Tenant shall at any time upon not less than ten (10) days' prior written notice from Landlord execute, acknowledge and deliver to Landlord a statement in writing (i) certifying that this Lease Agreement is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease Agreement, as so modified, is in full force and effect) and the date to which the rent, security deposit, and other charges are paid in advance, if any, and (ii) acknowledging that there are not, to Tenant's knowledge, any uncured defaults on the part of Landlord hereunder, or specifying such defaults, if any, which are claimed. Any such statement may be conclusively relied upon by any prospective purchaser or encumbrancer of the Premises.

(b) Tenant's failure to deliver such statement within such time shall be conclusive upon Tenant (i) that this Lease is in full force and effect, without modification except as may be represented by Landlord, (ii) that there are no uncured defaults in Landlord's performance, and (ii) that not more than one (1) month's rent has been paid in advance.

(c) If Landlord desired to finance or refinance the Premises, or any part thereof, Tenant hereby agrees to deliver to any lender designated by Landlord such financial statements of Tenant as may be reasonably required by such financial statements of Tenant. All such financial statements shall be received by Landlord in confidence and shall be used only

16

for the purpose herein set forth

20.14. Landlord's Interests.  The Term "Landlord" as used herein shall mean only the owner or owners at the time in question of the fee title or a Tenant's interest in a ground Lease of the Premises.  The merger of the fee simple title and the ground lessee's interest whether as a result of Landlord's default thereunder  ore by agreement between Landlord and the ground lessor shall not release Tenant from the obligations of this Lease Agreement, and the surviving owner, whether fee owner or Landlord herein, shall be considered a successor to the Landlord's interests hereunder.  In the event of any transfer of such title or interest Landlord herein names (and in case of any subsequent transfers the then grantor) shall be relieved from and after the date of such transfer of all liability as respects Landlord's obligations thereafter to be performed, provided that any funds in the hands of Landlord or the then grantor at the time of such transfer, in which Tenant has an interest, shall be delivered to grantee.  The obligations contained in this Lease Agreement to be performed by Landlord shall, subject as aforesaid, be binding on Landlord's successors and assigns, only during their respective periods of ownership.

20.15.  Interest on Past-Due Obligations.  Except as expressly provided herein, any amount due to Landlord not paid when due shall bear interest at eight (8%) percent per annum from the date due.  Payment of such interest shall not excuse any default by Tenant under this Lease Agreement.

20.16.  Subordination.

(a)  This Lease is subject and subordinate to any present or future First Mortgage and/or First Deed of Trust which now or hereafter may be placed upon the real property of which the Premises are a part and to any and all advances made on the security thereof and to all renewals, modifications, consolidations, replacements and extensions thereof.  If any such Mortgagee or Trustee shall elect to have this Lease rendered superior to the lien of its Mortgage or Deed of Trust, and shall give written notice thereof to Tenant, this Lease shall be deemed to be superior to such Mortgage or Deed of Trust, whether this Lease is dated prior or subsequent to the date of such Mortgage or Deed of Trust, or the date of the recording thereof.  In the event of foreclosure or the exercise of the power of sale under such Mortgage or Deed of Trust, the Tenant shall attorn to the Purchaser upon any such foreclosure or sale and recognize such Purchaser as the Landlord under this Lease.

(b) Tenant agrees to execute any documents required to effectuate such subordination or to make this Lease prior to the lien of any mortgage, Deed of Trust or ground Lease, as the case may be, and failing to do so within ten (1)) days after written demand, does hereby make, constitute and irrevocably appoint Landlord as Tenant's attorney in fact and in Tenant's name, place and stead, to do to.

20.17.  Condemnation.  If the Premises or any portion thereof are taken under the power of eminent domain, or sold by Landlord under the threat of the exercise of said power (all of which is herein referred to as "condemnation"). this Lease shall terminate as to the part so taken

17

as of the date the condemning authority takes title or possession, whichever occurs first. If more than twenty-five (25%) percent of the floor area of any building on the Premises, or more than twenty-five (25%) percent of the land area of the Premises not covered with buildings, is taken by condemnation, either Landlord or Tenant may terminate this Lease as of the date the condemning authority takes possession by notice in writing of such election within thirty (30) days after Landlord shall have notified Tenant of the taking or, in the absence of such notice, then within twenty (20) days after the condemning authority shall have taken possession.

If this Lease is not terminated by either Landlord or Tenant then it shall remain in full force and effect as to the portion of the Premises remaining, provided the rental shall be reduced in proportion to the floor area of the buildings taken within the Premises as bears to the total floor area of all building located on the Premises. In the event this Lease is not so terminated then Landlord agrees, at Landlord's sole cost, to as soon as reasonably possible restore the Premises to a complete unit of like quality and character as existed prior to the condemnation.

20.18  Corporate or Limited Liability Company Authority.  If Tenant is a corporation or a limited liability company. Tenant warrants that it has legal authority to operate and is authorized to do business in the state of Colorado. Tenant also warrants that the person or persons executing this Lease on behalf of Tenant have the authority to do so and fully obligate Tenant to all terms and provisions of this Lease. A corporate Tenant shall, upon request from Landlord, furnish Landlord with a certified copy of resolutions of Tenant's Board of Directors authorizing this Lease and granting authority to execute it to the person or persons who have executed it on Tenants behalf.

20.19  No Other Rights.  Neither this Lease nor any provision hereof shall be construed as giving Tenant any right or option (i) to purchase the Premises, or any property owned by Landlord or (ii) to lease or rent other space or other buildings owned or controlled by Landlord. Tenant shall have no rights in the Premises, or to any property owned or controlled by Landlord except as expressly stated herein.

20.20  Grammatical Changes.  Whenever the words "Landlord" and 'Tenant' are used in this Lease, they shall include "Landlords" and "Tenants" and shall apply to persons, both men and women, companies, partnerships and corporations. Any work or Term stated in the singular shall be deemed to include the plural if the context in which it is used so requires or permits.

20.21  Joint and Several Liability.  In the event that two or more individuals, corporations, partnerships or other entities (or any combination of two or more thereof) shall sign this Lease as Tenant, the liability of each such individual, corporation, partnership or other entity to perform all obligations hereunder shall be deemed to be joint and several. In like manner, in the event that Tenant named in this Lease shall be a partnership or other business association, the members of which, by virtue of stature or general law, are subject to personal liability, then and in that event the liability of each such member shall be deemed joint and several.

18

20.22   No Set-Off.   Tenant waives and disclaims any present or future right to withhold any rent payment (whether denominated Minimum Rent or otherwise) or other payment due under this Lease, or to set-off any such rent or amount, in any action by Landlord or against any obligation of Landlord, however incurred, and agrees that it will not claim or assert any right to so withhold or set-off. Nothing in this Section shall be construed as prohibiting Tenant from commencing an independent action in which the question of Landlord's right to such rents or other payments are at issue.

20.23   Recourse by Tenant.   Anything herein to the contrary notwithstanding, whether Landlord, or any successor or assign, is a corporation, a trust, an individual, a joint venture, limited liability company, a tenancy-in-common, a firm or partnership, general or limited, or any combination thereof, it is specifically understood and agreed that there shall be absolutely no personal liability on the part of such Landlord or the constituent owners, trustees, or members of such Landlord with respect to any of the terms, covenants, conditions and provisions of this Lease, and Tenant shall look solely to the equity of the Landlord, its successors and assigns in the property of which the Premises are a part for the satisfaction of each and every remedy of Tenant in the event of any breach of Landlord, its successors and assigns of any of the terms, covenants, conditions and provisions of this Lease to be performed by Landlord, and such exculpation of personal liability is absolute and without any exception whatsoever.

20.24   Partial Payment and Satisfaction.   No payment by Tenant or receipt by Landlord of a lesser amount than the amount then due under this Lease shall be deemed to be other than on account of the earliest portion thereof due, nor shall any qualified, special or restrictive endorsement language placed on a check by the drawer or statement in any letter or writing accompanying or referring to any check or payment be deemed to create an accord and satisfaction, or a receipt of or payment in full, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance due or pursue any other remedy in this Lease provided.

20.25   Force Majeure.   Whenever a period of time is herein provided for either party to do or perform any act or thing, there shall be excluded from the computation of such period of time any delays due to strikes, riots, acts of God, shortages of labor or any cause or causes, whether or not similar to those enumerated, beyond the parties' reasonable control or the reasonable control of their agents, servants, employees and contractor engaged by them to perform work in connection with this Lease.

20.26   Required Lease Modifications.   Until Delivery of possession to Tenant, but not thereafter, if Landlord's construction or permanent loan lender requires any modification of the terms and conditions of this Lease, the Landlord shall have the right to cancel this Lease if the Tenant refuses to approve in writing any such modification within ten (10) days after the Landlord's request therefore.

19

20.27    Reasonable Consents and Approvals.    Whenever in this Lease the consent or approval of either party is required to be requested by the other, the parties agree that such consent or approval will not be unreasonably denied or delayed.

21.    Equipment.    Tenant may utilize some of Landlord's equipment.  A detailed written list will be agreed upon by both parties upon notification of takeover date, and this equipment usage will not require additional rent.   Whatever equipment Tenant utilizes will be the responsibility of the Tenant to maintain during the life of this Lease and any extensions.   Further, Tenant agrees to not dispose or sell any of this equipment.  Further, there is some equipment that is in the Premises that the Landlord does not own.  If Tenant decides to use this equipment, they understand they will be bound by whatever lease/rental/use agreement is for that equipment, including the fact that they may be required to release that equipment to the original owners upon demand.

22.    Remodel Restrictions.    Tenant hereby understands and agrees to NOT begin any changes of the Premises until Commencement Date.

Date:  June 6, 2014

LANDLORD:

Cabo Partners, LLC

By: _____
       Terry Brown, Managing Member

Date: _____

TENANT:

Western Convenience Stores, Inc.

By: _____
       President

20

| Initial lease | | Monthly Base rent | Annual Base Rent |
|---|---|---|---|
| | Year 1 | $ 5,000.00 | $ 60,000.00 |
| | Year 2 | $ 5,150.00 | $ 61,800.00 |
| | Year 3 | $ 5,304.50 | $ 63,654.00 |
| | Year 4 | $ 5,463.64 | $ 65,563.62 |
| | Year 5 | $ 5,627.54 | $ 67,530.53 |
| | Year 6 | $ 5,796.37 | $ 69,556.44 |
| | Year 7 | $ 5,970.26 | $ 71,643.14 |
| | Year 8 | $ 6,149.37 | $ 73,792.43 |
| | Year 9 | $ 6,333.85 | $ 76,006.20 |
| | Year 10 | $ 6,523.87 | $ 78,286.39 |
| Ext 1 | | | $ |
| | Year 11 | $ 6,719.58 | $ 80,634.98 |
| | Year 12 | $ 6,921.17 | $ 83,054.03 |
| | Year 13 | $ 7,128.80 | $ 85,545.65 |
| | Year 14 | $ 7,342.67 | $ 88,112.02 |
| | Year 15 | $ 7,562.95 | $ 90,755.38 |
| Ext 2 | | | |
| | Year 16 | $ 7,789.84 | $ 93,478.04 |
| | Year 17 | $ 8,023.53 | $ 96,282.39 |
| | Year 18 | $ 8,264.24 | $ 99,170.86 |
| | Year 19 | $ 8,512.17 | $ 102,145.98 |
| | Year 20 | $ 8,767.53 | $ 105,210.36 |
| Ext 3 | | | |
| | Year 21 | $ 9,030.56 | $ 108,366.67 |
| | Year 22 | $ 9,301.47 | $ 111,617.67 |
| | Year 23 | $ 9,580.52 | $ 114,966.20 |
| | Year 24 | $ 9,867.93 | $ 118,415.19 |
| | Year 25 | $ 10,163.97 | $ 121,967.65 |
| Ext 4 | | | |
| | Year 26 | $ 10,468.89 | $ 125,626.68 |
| | Year 27 | $ 10,782.96 | $ 129,395.48 |
| | Year 28 | $ 11,106.45 | $ 133,277.34 |
| | Year 29 | $ 11,439.64 | $ 137,275.66 |
| | Year 30 | $ 11,782.83 | $ 141,393.93 |