## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 15-23977-TBM |
| WESTERN CONVENIENCE STORES, INC. | ) | |
| EIN: 84-1160742 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

## MOTION TO ASSUME NONRESIDENTIAL REAL PROPERTY LEASE AGREEMENT WITH S/G ASSOCIATES, INC.

The Debtor, Western Convenience Stores, Inc. ("Debtor"), by and through its attorneys, Kutner Brinen, P.C., respectfully moves this Court for entry of an order pursuant to 11 U.S.C. §365(a) and Bankruptcy Rules 6006 and 9014 authorizing the Debtor's assumption of a nonresidential real property Lease Agreement with S/G Associates, Inc. ("Landlord"), and as grounds therefor, state as follows:

1.     The Debtor filed its voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on December 28, 2015 ("Petition Date"). The Debtor remains a debtor-in-possession.

2.     The Debtor is the operator of a chain of 44 convenience stores that sell gasoline, snack foods, and related products throughout Colorado and Nebraska.

3.     The Debtor entered into a pre-petition Lease Agreement (together with all attachments thereto, the "Lease") dated May 4, 2009 with Landlord for the premises located at 1370 South Parker Road, Unit B, Parker, Colorado ("Premises"). The Debtor leases approximately 3,753 square feet of real property and improvements consisting of a gas station, convenience store, and a designated parking area.

4.     The initial Lease term was from May 1, 2009 through April 30, 2019. The Debtor has the right to extend the Lease for two (2) additional five (5) year terms. A copy of the Lease is attached hereto as Exhibit A.

5.     Bankruptcy Code § 365(d)(4)(A) provides that the Debtor shall surrender any non-residential real property unless it assumes the governing lease the earlier of the date that is 120 days after the Petition Date or the date on which a plan is confirmed.

6. On April 26, 2016, the Court entered an Order extending the time by which the Debtor was required to assume or reject its nonresidential real property leases by ninety (90) days, through and including July 25, 2016.

7. The Debtor, in exercising its business judgment, has concluded that the Lease provides a benefit to the Debtor, the estate, and its reorganization effort, and therefore seeks to assume the Lease pursuant to section 365(a) of the Bankruptcy Code. The terms of the Lease are fair and will provide the Debtor with the ability to maintain its operations at the same location at least through April 30, 2019.

8. The monthly rent for the Premises is $2,355.00. The Debtor can afford the rent on the Premises, and the rent is reasonable for the size and location of the Premises

9. Assumption or rejection of executory contracts or unexpired leases by a debtor is subject to Court review under the business judgment standard. See *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Mile High Medal Systems, Inc.*, 899 F.2d 887, 896 (10th Cir. 1990); *In re Grayhall Resources, Inc.*, 63 B.R. 382, 384 (Bankr. D. Colo. 1986).

10. Pursuant to the business judgment test, the debtor's decision to assume or reject an executory contract or an unexpired lease should be approved when the debtor decides, in good faith, that assumption or rejection is beneficial to the estate. *In re Chipwich, Inc.*, 54 B.R. 427, 430-431 (Bankr. S.D.N.Y. 1985) ("it is enough, if, as a matter of business judgment, rejection of the burdensome contract may benefit the estate"). Under Section 365(a), "the debtor's business judgment should not be interfered with, absent a showing of bad faith or abuse of business discretion." *Chipwich, Inc.,* 54 B.R. 430-31. As stated by one court, "Court approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course." *Summit Land Co. v. Allen (In re Summit Land Co.),* 13 B.R. 310, 315 (Bankr. D. Utah 1981).

11. Assumption of the Lease is in the best interest of the Debtor, its creditors and the estate. The Lease provides a benefit to the estate because it will allow the Debtor to continue to operate in the Premises without the disruption that would be caused by moving its operations and inventory. Additionally, the Premises has fixtures, including gas pumps, that are necessary for the Debtor's operations. If the Lease terminates and the Debtor is forced to vacate the Premises, the Debtor will be forced to either permanently close that location, or expend substantial funds to find a new premises with the necessary fixtures for the Debtor's operations.

12.     The Debtor is current on all lease payments, and the Landlord does not have a pre-petition claim against the Debtor. As a result, no cure is necessary at the time of assumption.

WHEREFORE, the Debtor prays that the Court enter an Order authorizing the assumption of the Lease, and for such further and additional relief as to the Court may deem proper.

Dated: June 9, 2016                     Respectfully submitted,

                                        By: _s/ Keri L. Riley_____
                                            Lee M. Kutner, #10966
                                            Keri L. Riley, #47605
                                            **KUTNER BRINEN, P.C.**
                                            1660 Lincoln St. Suite 1850
                                            Denver, CO 80264
                                            Telephone: (303) 832-2400
                                            Telecopy: (303) 832-1510
                                            E-Mail: klr@kutnerlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 9, 2016, I served by prepaid first class mail a copy of the foregoing **MOTION TO ASSUME NONRESIDENTIAL REAL PROPERTY LEASE AGREEMENT WITH S/G ASSOCIATES, INC. AND NOTICE OF MOTION TO ASSUME NONRESIDENTIAL REAL PROPERTY LEASE AGREEMENT WITH S/G ASSOCIATES, INC.** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

Donald Orendorff, President
S/G Associates, Inc.
7840 Vallagio Lane
Englewood, CO 80112

Kubat Equipment and Service Co.
ATTN: Craig Hoyer
1070 South Galapago Street
Denver, CO 80223

PepsiCo, Inc.
ATTN: Conrad Ragan
1100 Reynolds Blvd.
Winston-Salem, NC 27105

Harpel Oil Company
ATTN: Douglas C. Harpel
5480 Brighton Blvd.
Commerce City, CO 80022

Alan K. Motes, Esq.
U.S. Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

Philip A. Pearlman, Esq.
Jamie N. Cotter, Esq.
Spencer Fane, LLP
1700 Lincoln Street
Suite 2000
Denver, CO 80203

John O'Brien, Esq.
Snell & Wilmer, LLP
1200 Seventeenth Street
Suite 1900
Denver, CO 80202-5854

Craig K. Schuenemann, Esq.
Bryan Cave, LLP
1700 Lincoln Street
Suite 4100
Denver, CO 80203-4541

Mark G. Stingley, Esq.
William J. Maloney, Esq.
Bryan Cave, LLP
1200 Main Street
Suite 3800
Kansas City, Missouri 64105

Adam L. Hirsch, Esq.
Kutak Rock, LLP
1801 California Street
Suite 3000
Denver, CO 80202-2658

Erica F. Houck Englert, Esq.
1801 California Street
Suite 3400
Denver, CO 80202

James B. Holden, Esq.
Lynda L. Atkins, Esq.
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, CO 80203

Gregory G. Hesse, Esq.
Hunton & Williams, LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75202-2799

Steven E. Abelman, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, CO 80202

Paul G. Urtz, Esq.
Miller & Urtz, LLC
1660 Lincoln Street
Suite 2850
Denver, CO 80264

Darryl S. Laddin, Esq.
Frank N. White, Esq.
Arnall Golden Gregory, LLP
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363-1031

Samuel M. Kidder, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202-4432

Robert A. Kumin, Esq.
Scott S. Kleypas, Esq.
Robert A. Kumin, P.C.
6901 Shawnee Mission Parkway
Suite 250
Overland Park, KS 66202

Scott A. Clark, Esq.
Burns, Figa & Will, P.C.
Plaza Tower One, Suite 1000
6400 South Fiddlers Green Circle
Greenwood Village, CO 80111

Neal K. Dunning, Esq.
Brown, Berardini, Dunning & Walker,
P.C.
2000 South Colorado Boulevard
Tower Two, Suite 700
Denver, CO 80222

Douglas D. Koktavy, Esq.
Douglas D. Koktavy, P.C.
Building B, Suite 120
10200 East Girard Avenue
Denver, CO 80231

Ronald E. Gold, Esq.
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45208

Peter W. Ito, Esq.
ITO Law Group, LLC
1550 Larimer Street
Suite 667
Denver, CO 80202

Jeffrey N. Pomerantz, Esq.
Jeffrey W. Dulberg, Esq.
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4100

Gregory S. Bell, Esq.
Bell, Gould, Linder & Scott, P.C.
322 East Oak Street
Fort Collins, CO 80524

NRC Realty & Capital Advisors, LLC
8601 North Scottsdale Road
Suite 310
Scottsdale, AZ 85253

Joseph D. Frank, Esq.
Jeremy C. Kleinman, Esq.
Frank Gecker, LLP
325 North LaSalle Street
Suite 625
Chicago, IL 60654

Soukup Bush & Associates, P.C.
2032 Caribou Drive
Suite 200
Fort Collins, CO 80525

Darryl S. Laddin, Esq.
Frank N. White, Esq.
Arnall Golden Gregory, LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363-1031

Mark Ralston, Esq.
Fishman Jackson, PLLC
13155 Noel Road
Suite 700
Dallas, Texas 75240

A Troy Ciccarelli, Esq.
Ciccarelli & Associates, P.C.
2616 West Alamo Avenue
Littleton, CO 80120

Matthew A. Gold, Esq.
Argo Partners
12 West 37th Street
9th Floor
New York, NY 10018

David J. Lisko, Esq.
633 17th Street
Suite 2300
Denver, CO 80202

Susan L. Martineau, Esq.
12151 Spruce Street
Thornton, CO 80602

Springer & Steinberg, P.C.
1600 Broadway Street
Denver, CO 80202

Vicky Martina

#124

L E A S E

for premises at

PARKER ROAD CAR CARE CENTER

Arapahoe County, Colorado

DATE: May 4, 2009

S/G ASSOCIATES, INC., a Colorado corporation

"LANDLORD"

AND

WESTERN CONVENIENCE STORES, INC., a Colorado corporation

"TENANT"

wcsi.sig
5/4/09

TENANT    LANDLORD

**Exhibit A**

L E A S E covering premises at the Parker Road Car Care Center
located at South Parker Road and Valentia Street
Arapahoe County, State of Colorado

## ARTICLE I - PARTIES

THIS LEASE is made and entered into this 4th day of May, 2009, to be effective as of May 1, 2009, by and between S/G ASSOCIATES, INC., a Colorado corporation, hereinafter called "Landlord"; and WESTERN CONVENIENCE STORES, INC., a Colorado corporation, hereinafter called "Tenant".

## ARTICLE II - PREMISES

2.01. **Description of the Demised Premises.**   Landlord hereby demises and leases unto Tenant, and Tenant hereby hires from Landlord, the premises situate in the County of Arapahoe and State of Colorado, known and described as follows:

Parcel One:

Approximately 2,457 square feet of Floor Area in the Parker Road Car Care Center at South Parker Road and Valentia Streets, being Suite numbers   B   in Building   D  , which Suite is known and numbered as 1370 South Parker Road, No.   B   Denver, Colorado, 80231;

Parcel Two:

Approximately 1,296 square feet of Land described as follows:

That part of the West one-half (W 1/2) of the Northeast one Quarter (NE 1/4) of Section 21, Township 4 South, Range 67 West of the Sixth Principal Meridian, lying North and East of County Road as described in Book 393 at Page 270, County of Arapahoe, State of Colorado, described as follows:

Beginning at the Northeast corner of the Northeast One Quarter (NE 1/4) of said Section 21; thence South along the West line of the Northeast Quarter (NE 1/4) of Section 21 to its intersection with the Northeasterly Right-of-Way of County Road as described in Book 393 at Page 270; thence Southeasterly along the Northeasterly Right-of-Way line of said County Road a distance of 204.94 feet to a point; thence North 47 degrees, 14 minutes, 50 seconds East, a distance of 10.00 feet to a point on the Right-of-Way as conveyed in Book 5189 at Page 39; thence Southeasterly along the County Road Right-of-Way a distance of 299.68 feet to a point; thence at right angles to the Northeasterly Right-of-Way a distance of 114.09 feet to the true point of beginning;

thence South 89 degrees, 59 minutes, 50 seconds East a distance of 24.00 feet;
thence South 00 degrees, 00 minutes, 10 seconds West a distance of 54.00 feet;
thence North 89 degrees, 59 minutes, 50 seconds West a distance of 24.00 feet;
thence North 00 degrees, 00 minutes, 10 seconds East a distance of 54.00 feet to the true point of beginning;

hereinafter collectively referred to as the "Demised Premises".  For purposes of this Lease the Floor Area of the Demised Premises shall be deemed to be 2,457 square feet.  The approximate location of the Demised Premises within the Parker Road Broadway Car Care Center is shaded in yellow on Exhibit A.  The term "Floor Area" as used in this Lease means all areas designated for the exclusive use and occupancy by

wcsi.sig
5/4/09

TENANT         LANDLORD

2

individual tenants measured from the exterior surface of exterior walls (and from extensions thereof, in the case of openings) and from the center of interior demising walls.

## ARTICLE III - TERM

**3.01. Term.** TO HAVE AND TO HOLD unto the Tenant for an initial Term of ten     (10)     years commencing on May 1, 2009, hereinafter the "Commencement Date", and ending on April 30, 2019.

**3.02. First Extension of Term.** Tenant shall have the right to extend the Term of this Lease for two  2  additional terms of five  5  years each upon expiration of the initial Term or any extended term thereafter upon the following terms and conditions:

A.    The Tenant shall not be in default hereunder at the time either Extension of Term is exercised or thereafter, until commencement of the extended period. This condition may be waived by Landlord in its sole discretion and may not be used by Tenant as a means to negate the effectiveness of Tenant's exercise of this option; and

B.    The Extension of Term shall be exercised by Tenant giving and Landlord receiving written notice of Tenant's intention to extend the Term of the Lease on or before six (6) months prior to expiration of the initial Term of the Lease, or such right shall immediately cease to exist and Landlord shall suffer no liability for making other lease arrangements. Such notice shall be delivered by certified mailed, return receipt requested.

C.    Any extension hereof shall be on the same terms, covenants, conditions, provisions and agreements as set forth in this Lease, except that:

1. the Base Rent shall be adjusted as set forth in Sections 4.01.F and 4.01.G at the commencement of the applicable Extended term; and

2.    Tenant, at Landlord's request, shall execute a new lease for the Extended Term on Landlord's standard lease form for the Center currently in use at such time; provided, however, that such new lease form shall not in any way change the amount of Base Rent or Center Operating Cost provided for in this Lease.

## ARTICLE IV - RENT

**4.01. Base Rent.** Landlord reserves and Tenant hereby agrees to pay Base Rent as follows:

A.      Tenant shall be excused from pay Base Rent (and Additional Rent) for the period from the Commencement Date until the date on which Tenant opens for business (the "Opening Date"); PROVIDED, HOWEVER, that if Tenant does not open for business by July 1, 2009, either party may terminate this Lease by giving written notice via certified mail, return receipt requested, to the other party of its intent to so terminate. The termination shall be effective and Tenant shall surrender possession of the Demised Premises within three (3) days of the either party's receipt of such notice to terminate. Any such notice shall be deemed received two (2) days after the date of mailing.

B.    Beginning on the Opening Date, and on the first day of each calendar month thereafter for the remainder of the first and second lease year, Tenant shall pay Base Rent at an annual rate of NINETEEN THOUSAND SIX HUNDRED FIFTY SIX AND NO/100 ($19,656.00) DOLLARS in monthly installments of ONE THOUSAND SIX HUNDRED THIRTY EIGHT AND NO/100 (1,638.00) DOLLARS;

wcsi.sig
5/4/09

TENANT     LANDLORD

3

C.   Beginning on April 1, 2011 and on the first day of each calendar month thereafter for the remainder of the third lease year, Tenant shall Base Rent at an annual rate of TWENTY TWO THOUSAND ONE HUNDRED FOUR AND NO/100 ($22,104.00) DOLLARS in monthly installments of ONE THOUSAND EIGHT HUNDRED FORTY TWO AND NO/100 (1,842.00) DOLLARS;

D.   Beginning on April 1, 2012 and on the first day of each calendar month thereafter for the remainder of the fourth and fifth lease year, Tenant shall Base Rent at an annual rate of TWENTY FOUR THOUSAND FIVE HUNDRED SEVENTY SIX AND NO/100 ($24,576.00) DOLLARS in monthly installments of TWO THOUSAND FORTY EIGHT AND NO/100 (2,048.00) DOLLARS;

E.   Beginning on April 1, 2014 and on the first day of each calendar month thereafter for the remainder of the initial Term of this Lease, Tenant shall Base Rent at an annual rate of TWENTY EIGHT THOUSAND TWO HUNDRED SIXTY AND NO/100 ($28,260.00) DOLLARS in monthly installments of TWO THOUSAND THREE HUNDRED FIFTY FIVE AND NO/100 (2,355.00) DOLLARS;

F. If applicable, beginning on April 1, 2019 and in each and every lease year thereafter during the first five (5) year extension of Term, as set forth in Article III, Tenant shall pay Base Rent at an annual rate of THIRTY THREE THOUSAND NINE HUNDRED TWELVE AND NO/100 ($33,912.00) DOLLARS in monthly installments of TWO THOUSAND EIGHT HUNDRED TWENTY SIX AND NO/100 (2,826.00) DOLLARS;

G.   If applicable, beginning on April 1, 2024 and in each and every lease year thereafter during the second five (5, year extension of Term, as set forth in Article III, Tenant shall pay Base Rent at an annual rate of FORTY ONE THOUSAND SEVEN HUNDRED SEVENTY TWO AND NO/100 ($41,772.00) DOLLARS in monthly installments of THREE THOUSAND FOUR HUNDRED EIGHTY ONE AND NO/100 (3,481.00) DOLLARS;

All Base Rent shall be paid in advance on the first day of each calendar month of the Term hereof, without demand, notice, setoff, counterclaim or deduction whatsoever and in legal tender of the United States of America. References to "lease year" shall mean consecutive twelve-month periods, the first of which begins on the first day of the calendar month coinciding with or following the Commencement Date of the Term of this Lease.   Any pro-rations of Rent or any other amount due hereunder shall be calculated based on a thirty (30) day month.

4.02. **Additional Rent**.   In addition to the Base Rent, the Tenant shall pay, as Additional Rent, all other sums of money or charges required to be paid by Tenant to Landlord under this Lease ("Additional Rent"), whether or not designated Additional Rent.   By way of illustration only, Additional Rent shall include, but not be limited to Late Fees, Returned Check Fees, Center Operating Costs, and costs and expenses incurred or advanced by Landlord as a result of a breach by Tenant of any provision of this Lease.

If such amounts or charges are not paid at the time provided in this Lease, they shall nevertheless be collectible as Additional Rent with the next installment of Base Rent thereafter falling due.   The term "Rent", as used in this Lease, shall include all amounts of Base Rent, Additional Rent and all other sums due hereunder.

4.03. **Late Fee**.  If any installment of Base Rent, Additional Rent or any other sum due hereunder is received by Landlord later than ten (10) calendar days after it is due, a late fee of five (5%) percent of the installment due shall be due and payable by Tenant as Additional Rent. The parties agree that calculation of the exact costs Landlord will incur if Tenant makes late payments would be difficult to determine, but will include processing and accounting charges and late charges

wcsi.sig
5/4/09

TENANT        LANDLORD

4

which may be imposed upon Landlord under the terms of any mortgage or deed of trust encumbering the Demised Premises. The parties agree that the Late Fee provided herein is a fair and reasonable estimate of the costs Landlord will incur if Tenant makes late payments.

4.04. **Returned Check Fee**. For each Tenant payment check to Landlord that is returned by a bank for any reason, Tenant shall pay both a Late Fee (if applicable) and a Returned Check Fee of $29.00. All Late Fees and any Returned Check Fees shall then become Additional Rent and shall be due and payable immediately along with such other Rent then in arrears.

4.05. **Application**. Money paid by Tenant to Landlord shall be applied to Tenant's account in the following order: (1) to any unpaid Additional Rent, including, without limitation, Late Fees, Returned Check Fees, legal fees, and Center Operating Costs; and then (2) to unpaid Base Rent.

4.06. **No Waiver**. Nothing contained herein shall be construed so as to compel Landlord to accept any payment of Rent in arrears should Landlord elect to apply its rights and remedies available under this Lease or at law or in equity in the event of default hereunder by Tenant. Landlord acceptance of Rent pursuant to this Article IV shall not constitute a waiver of Landlord's rights and remedies available under this Lease or at law or in equity.

4.07. **Address for Payment**. All Rent shall be paid to Landlord at the address for Landlord listed in Article XXIV.

### ARTICLE V - SECURITY DEPOSIT

Concurrently with the execution of this Lease, Tenant shall deposit with Landlord the sum of FOUR THOUSAND TWO HUNDRED AND NO/100 (4,200.00) DOLLARS as security for the payment of Rent reserved herein and the faithful performance by Tenant of all other terms and conditions of this Lease to be performed by Tenant.

A. Landlord may commingle the Security Deposit with its other funds. Tenant shall not mortgage, assign, transfer or encumber said Deposit without the written consent of Landlord and any attempt by Tenant to do so shall not be binding upon Landlord. In the event of bankruptcy or other debtor-creditor proceedings against Tenant, such Security Deposit shall be applied first to the payment of Rent due Landlord for all periods prior to filing of such proceedings.

B. If Tenant shall fail to make any payment of Rent or any other sum payable by Tenant hereunder when due or shall fail to perform in accordance with the covenants and conditions of this Lease, said Deposit shall be retained by Landlord and applied towards Landlord's damages as a result of Tenant's default. Tenant shall forthwith replenish any amounts so applied by Landlord. Said Deposit shall not be considered as liquidated damages and if claims of Landlord exceed said Deposit Tenant shall remain liable for the balance of such claims. If Tenant shall make all payments herein required and fully perform in accordance with the terms and covenants of this Lease, said sum shall be returned to Tenant WITHOUT interest at the expiration of the Term of this Lease.

C. In the event of termination of Landlord's interest in this Lease, Landlord shall transfer said Deposit, or any balance thereof, to Landlord's successor in interest whereupon Tenant agrees that Landlord shall be released from liability for the return of or accounting for such Deposit.

wcsi.sig
5/4/09

TENANT          LANDLORD

## ARTICLE VI - CENTER OPERATING COST

**6.01.** **Tenant's Proportionate Share of Center Operating Cost**.  Tenant hereby agrees to pay Landlord as Additional Rent, Tenant's proportionate share of the annual Center Operating Cost, as hereinafter defined.  Tenant's proportionate share of Center Operating Cost shall begin to accrue on the Commencement Date and shall be that fraction of the annual Center Operating Cost equal to that proportion which the number of square feet of Floor Area of the Demised Premises bears to the total number of square feet of leasable Floor Area in the Parker Road Car Care Center, with appropriate adjustment to exclude costs paid directly by any tenant or tenants of the Parker Road Car Care Center and with respect to such costs to exclude the premises leased to such tenant or tenants.  Landlord may, either prior to the beginning of or during any calendar year, compute a bona fide estimate of Center Operating Cost for such calendar year.  Upon receipt of written notice thereof, Tenant shall pay to Landlord, in monthly installments on the first day of each calendar month, one-twelfth (1/12) of the amount which, on the basis of such estimate, is payable to Landlord for such calendar year under this Section 6.01.  Landlord may, at its option, adjust the estimated monthly charge at the end of any calendar quarter on the basis of Landlord's experience and reasonably anticipated costs.  An annual adjustment shall be made between the parties within thirty (30) days after Landlord's determination of actual Center Operating Cost for the preceding calendar year.  If Tenant's proportionate share of Center Operating Cost exceeds Tenant's payments made pursuant to this Section 6.01, Tenant shall pay the deficiency to Landlord within ten (10) calendar days after Tenant's receipt of Landlord's statement therefore.  Any amounts of excess estimated Center Operating Cost shall be credited on amounts payable by Tenant to Landlord under this Lease.  If the Term of this Lease ends before the end of a calendar year, any amount payable by Tenant or Landlord with respect to that year pursuant to this Section 6.01 shall be adjusted proportionately on a daily basis utilizing Landlord's current estimate of Center Operating Cost, and the obligation to pay such amount shall survive the expiration or earlier termination of this Lease.

**6.02.** **Definition of "Center Operating Cost"**.  Center Operating Cost hall be determined by Landlord and shall include all costs of any nature whatsoever incurred or payable by Landlord and which are attributable to the ownership, operation, maintenance, repair and renewal of the Parker Road Car Care Center, and all improvements therein (hereinafter sometimes referred to as the "Center").  By way of illustration only and not in limitation, Center Operating Cost includes:

A.   Taxes and Assessments.  All general and special real estate taxes, personal property taxes, special assessments, assessments for improvements, special district or improvement district assessments, all charges for water, sanitary sewer, waste water and storm sewer service, and all fees for permits and licenses in connection with such services; all vault charges, all fees for licenses and excise payments and other ad valorem taxes, rates, levies, assessments and surcharges payable in respect of such year by Landlord upon or in respect of the Center, or any portion thereof, to any governmental or quasi- governmental authority and all taxes specifically imposed in lieu of any such taxes.  If due to a future change in the method of taxation, any franchise or other tax shall be levied against Landlord in whole or in part in lieu of any tax which would otherwise constitute one of the foregoing taxes or charges or if there shall be levied against Landlord a tax or license fee measured by gross rents, such franchise or other tax or license fee shall be deemed to be a real estate tax for the purposes hereof.  The taxes described in this Subsection 6.02(A) shall also include all expenses, including, but not limited to reasonable fees, incurred by Landlord in any effort to minimize such taxes, whether by contesting proposed increases

wcsi.sig
5/4/09

TENANT        LANDLORD

6

in assessments or by any other means or procedures appropriate in the circumstances;

B.  Insurance.  All costs and expenses of public liability and property damage insurance in such amounts as deemed by Landlord to be adequate to insure Landlord against any and all liability arising out of Landlord's ownership, use, occupancy, or maintenance of the Center and all areas appurtenant thereto; and all costs and expenses of fire and other hazard insurance with extended coverage endorsement as maintained by Landlord pursuant to Section 15.06 of this Lease; and

C.  General Operating Expenses of the Center, including, but not limited to, all sums expended by Landlord for:

1.  maintenance, repair, renewal and replacement of the Common Areas;

2.  removal of snow and ice and rubbish from the Common Areas;

3.  painting, cleaning, sweeping, and window cleaning services and supplies;

4.  maintenance, repair, resurfacing, re-striping and replacement of the parking lot and roadways and directional signs, markers and bumpers;

5.  maintenance, repair and replacement of sprinkler systems, landscaping, sidewalks, curbs, roofs, roof drain systems, fire protection systems, lighting systems, storm drainage systems and other utility systems;

6.  electricity, gas and other utilities used in the operation of the Center, but not including charges for utilities which are separately billed to Tenant or other tenants of the Center;

7.  all costs and expenses incurred in the acquisition, installation, maintenance and repair of a signage system for the tenants of the Center, including the purchase price and finance charges or rental fees as applicable;

8.  management fees, either as charged to Landlord by independent management companies or an amount not exceeding the amount typically charged by independent management companies if Landlord manages the Center itself, but excluding in any case leasing commissions and costs of painting or decorating any other tenant's space;

9.  all other necessary (in Landlord's sole discretion) fees and expenses in connection with Landlord's operation of the Center

Landlord may cause any or all of the above described services to be provided by an independent Contractor or Contractors.

## ARTICLE VII - UTILITIES AND TRASH PICK-UP

7.01. Utilities.  Tenant shall pay all charges for telephone service and installation, and gas and electricity used in the Demised Premises during the Term of this Lease, and shall not permit any such utilities to be discontinued or disconnected without the prior written consent of Landlord.  Landlord shall pay all charges for water usage in the Demised Premises and in the Center, and the cost thereof shall be included as a part of Center Operating Cost as defined in Article VI hereof.  If Landlord determines that the operation of Tenant's business

wcsi.sig
5/4/09

TENANT        LANDLORD

7

in the Demised Premises involves or may involve excess usage of water, Landlord, at its election, shall have the right to install individual meters to measure the water usage in the Demised Premises. If said meter or meters shall disclose that Tenant's per square foot water usage is in excess of the average per square foot water usage of tenants in the Center, Tenant shall pay to Landlord within ten (10) days after Landlord's demand, Landlord's actual out-of-pocket costs for: 1) such excess usage, which payment shall offset the charges for such water usage included in Center Operating Cost as set forth in Article VI hereof; and 2) Landlord's actual costs for such meters and their installation.

7.02. Trash Pick-Up. All trash shall be contained within the Demised Premises or in a container(s) acceptable to Landlord in a location within the Common Areas designated by Landlord. Landlord shall arrange for and pay all charges for trash removal and disposal service for the Center, and the cost thereof shall be included as a part of Center Operating Cost as defined in Article VI hereof. Tenant shall keep all trash contained within its containers and shall keep storage gates and all trash container lids closed at all times. Tenant shall keep all areas surrounding Tenant's trash containers free from filth, danger of fire or any nuisance and shall comply with all ordinances, laws and regulations pertaining thereto.

### ARTICLE VIII - POSSESSION AND USE

Tenant covenants to use the Demised Premises solely for the operation of a convenience store and gas station, and shall not use or permit the Demised Premises to be used for any other purpose without the prior written consent of Landlord, which may be withheld in Landlord's sole and subjective discretion. Tenant expressly agrees that Tenant shall not permit the Demised Premises to be used for any of the following uses or purposes:

A.   landscape/outdoor equipment sales or service.

B.   automobile collision repair, painting or paintless dent repair.

C.   automobile glass repair or replacement.

D.   automobile sales, rental or leasing.

E.   automobile brake repair specialist.

F.   automobile transmission and drive train repair.

G.   Toyota products repair specialist.

H.   automobile tire sales.

### ARTICLE IX - REPAIRS AND MAINTENANCE

9.01. Obligations of Tenant. Tenant shall at its expense repair, replace and maintain in good order and condition all parts of the Demised Premises and fixtures and equipment therein or serving the Demised Premises including but not limited to:

A.   the air conditioning and heating systems; plumbing, wiring, utility meters, pipes and conduits. Tenant shall arrange for and contract with a service company for the reasonable maintenance of the heating, ventilation, and air-conditioning equipment serving the Demised Premises;

B.   all glass, interior and exterior, all of which shall be promptly replaced upon breakage with glass of the same kind, size and quality;

wcsi.sig
5/4/09

TENANT      LANDLORD

8

C.   all floor covering and interior walls and ceilings;

D.   Tenant's store front, locks, closing devices, and all window sash, casement or frames, doors and door frames, overhead doors, security grills and similar enclosures;

E.   any damage in connection with burglary or forced entry into the Demised Premises; and

F.   any repair, maintenance, improvement or reconstruction as may be required by any governmental agency.

9.02. <u>Failure to Maintain</u>.  In the event Tenant fails to maintain the Demised Premises in good order, condition and repair; Landlord shall give Tenant written notice to do such acts as are required to so maintain the Demised Premises.  In the event Tenant fails to promptly commence such work and diligently prosecute it to completion, then Landlord shall have the right to do such acts and expend such funds at the expense of Tenant as are reasonably required to perform such work. Any amount so expended by Landlord shall be considered Additional Rent and shall be paid by Tenant within ten (10) calendar days after Tenant's receipt of Landlord's statement therefor.  Landlord shall have no liability to Tenant for any damage, inconvenience or interference with the use of the Demised Premises by Tenant as a result of performing any such work.

9.03. <u>Obligations of Landlord</u>.  Landlord shall maintain and repair the roof, exterior walls and structural parts of the Building containing the Demised Premises, and the cost thereof (excluding the cost of maintenance and repair of the structural parts of the Building containing the Demised Premises) shall be included as a part of Center Operating Cost as defined in <u>Article VI</u> hereof; provided, however, that Landlord shall not be required to make repairs necessitated by the negligence or misconduct of Tenant or anyone claiming under Tenant, or by reason of Tenant's failure to comply with all covenants and agreements of this Lease or by alterations, additions or improvements made by Tenant or at its direction.  Landlord shall not in any way be liable to the Tenant for failure to make repairs as herein specifically required of it unless Tenant has previously notified Landlord, in writing, of the need for such repairs and Landlord has failed to commence and complete said repairs within a reasonable time following receipt of Tenant's written notification.

It is understood and agreed that the Landlord shall be under no obligation to make any repairs, alterations, renewals, replacements or improvements to and upon the Demised Premises or the mechanical equipment serving the Demised Premises at any time except as in this Lease expressly provided.  The Base Rent shall be an absolutely net Rent payment to the Landlord.  All costs of upkeep, maintenance, repairs, utilities, taxes and insurance, and any and all other expenses needed or necessary in connection with the operation and maintenance of the Demised Premises, shall be paid for and borne by the Tenant exclusively during the Term of this Lease.

<u>ARTICLE X - COMMON AREAS</u>

10.01.   <u>Definition</u>.  As used herein, "Common Areas" shall mean all areas within the exterior boundaries of the Center which are now or hereafter shall be made available for the general use, convenience and benefit of Landlord and tenants of the Center, and their invitees. Common Areas shall include, but shall not be limited to, roadways, walkways, ingress and egress and motor vehicle parking areas, and landscaped and planted areas.  Tenant and its invitees shall have the right, together with other tenants of the Center and their invitees, to the use of the Common Areas of the Center, and, in addition to the provisions set forth in this <u>Article X</u>, shall comply with such reasonable rules as Landlord may adopt from time to time for the

wcsi.sig
5/4/09

TENANT     LANDLORD

9

regulation of the Common Areas, provided that such additional rules are applicable to all similar areas of the Center and that Tenant is delivered a copy of such additional rules.

10.02.    <u>General Provisions Regarding Common Areas.</u>

A.    Landlord shall operate and maintain the Common Areas of the Center, and shall keep or cause such Common Areas to be kept in a clean, neat and orderly condition, and shall repair any damage to the facilities thereof; PROVIDED, HOWEVER, that all expenses therefor shall be included as part of the Center Operating Cost as set forth in <u>Article VI</u> hereof.

B.    Landlord shall at all times have the right and privilege of determining the nature and extent of the Common Areas and of making such changes therein and thereto from time to time which in its opinion are deemed to be desirable, including the location and relocation of driveways, entrances, exits, automobile parking spaces, the direction and flow of traffic, installation of prohibited areas, landscaped areas, and all other facilities thereof.    Landlord shall have the right to close all or any portion of the Common Areas for such periods and to such extent as may, in Landlord's sole opinion, be necessary to prevent a dedication thereof.    Notwithstanding the above, in the event any change by the Landlord pertaining to the location or relocation of driveways, entrances, and exits that unreasonably adversely alters Tenant's use of the Demised Premises, Tenant may in its sole discretion terminate this Lease effective sixty (60) days after notice to Landlord of Tenant's intent to so terminate.

C.    Nothing contained herein shall be deemed to create any liability upon Landlord for any damage to motor vehicles of customers or employees or for loss of property from within such motor vehicles, unless caused by the negligence of the Landlord, its agents, servants or employees.

D.    Landlord shall at all times during the Term of this Lease have the sole and exclusive control of the Common Areas, and may at any time and from time to time exclude and restrain any person from use or occupancy thereof, excepting, however, bona fide customers, patrons and service-suppliers of the Tenant, and other tenants of Landlord who make use of said areas in accordance with the rules and regulations established by the Landlord from time to time.    It shall be the duty of the Tenant to keep all of the Common Areas free and clear of any obstructions created or permitted by Tenant or resulting from Tenant's operation and to permit the use of any of said areas only for normal parking and ingress and egress by Tenant's customers, patrons and service-suppliers.

E.    If in the opinion of the Landlord unauthorized persons are using any of the said areas by reason of the presence of the Tenant in the Demised Premises, Tenant, upon demand of Landlord, shall take all measures necessary to terminate such unauthorized use.    Nothing herein shall affect the rights of the Landlord at any time to remove any such unauthorized persons from said areas or to restrain the use of any of said areas by unauthorized persons.

F.    Landlord shall have the right to relocate and change any of the proposed or presently existing buildings and other improvements as shown in the Site Plan, <u>Exhibit A</u>, provided that such change will not materially alter the location or Floor Area of the Demised Premises.    Landlord may construct additional buildings and improvements in the Center, the occupants of which shall be entitled to use all portions of the Common Areas.

wcsi.sig
5/4/09

TENANT      LANDLORD

10

10.03.   **Special Covenants Relating to Common Areas.**

A.   Tenant shall not allow any items of any nature whatsoever to be stored or remain in any portion of the Common Areas, except as in this Lease expressly provided. Landlord shall verbally notify Tenant, or its authorized representative, to remove any such items from the Common Areas, and if Tenant fails to so remove any such items within twenty-four (24) hours of said notice, Landlord shall have the right to remove such items without further notice and without liability for damage or loss. All reasonable costs incurred by Landlord for the removal and/or storage of such items shall be considered Additional Rent and shall be paid by Tenant within ten (10) calendar days after Tenant's receipt of Landlord's statement therefor.

B.   Tenant shall not allow any vehicle service or "test-driving" of vehicles to be performed in any portion of the Common Areas.

C.   Tenant shall not allow any fluids or liquids of any nature to be leaked or washed into any portion of the Common Areas.

D.   Tenant shall not solicit in any manner or display or sell merchandise in any portion of the Common Areas.

### ARTICLE XI - PARKING IN COMMON AREAS

11.01.   **General Statement of Materiality.** The majority of tenants leasing space at the Center are engaged in the business of renting, repairing, maintaining, or otherwise servicing motor vehicles. Consequently, at most times there are a large number of motor vehicles located in the Common Areas. Tenant acknowledges that it is in its best interests, and the best interests of all other tenants within the Center, for Landlord to strictly regulate the parking of motor vehicles within the Common Areas. Tenant further acknowledges that its agreement to comply with the "Parking Rules and Regulations" set forth in <u>Section 11.02</u> below is a material consideration for Landlord's agreement to enter into this Lease, and that Tenant's repeated or habitual violation of any of the provisions of <u>Section 11.02</u>, as they may be amended from time to time, shall be considered a material default of this Lease.

11.02.   **"Parking Rules and Regulations".** Tenant covenants and agrees to comply with the following Parking Rules and Regulations and such additional reasonable rules as Landlord may adopt from time to time for the regulation of parking within Common Areas, provided that Tenant is delivered a copy of such additional rules:

A.   Parking is permitted <u>only</u> in striped or otherwise marked parking spaces (the "Parking Spaces"). Parking is not permitted beside curbs, between or beside buildings, on sidewalks, in drive lanes, driveways, or in any other portion of the Common Areas other than in Parking Spaces.

B.   Each individual Parking Space within the Center is assigned to a specific tenant of the Center for its exclusive use and the use of its respective employees, customers, and invitees subject to the provisions of this <u>Section 11.02</u>. The <u>seven(7)</u> Parking Spaces marked with "X"'s (overnight parking prohibited)on <u>Exhibit A</u> are hereby assigned to Tenant for its exclusive use and the use of its employees, customers, and invitees. Tenant shall not allow any vehicle to be parked in any other Parking Space other than those assigned to Tenant. Landlord reserves the right, after notice to Tenant, to change the location of Tenant's assigned Parking Spaces; provided, however, that the total number of Parking Spaces assigned to Tenant does not decrease and any such change does not unreasonably interfere with Tenant's effective use of the Demised Premises.

wcsi.sig
5/4/09

TENANT    LANDLORD

C. Parking Spaces are for the use of passenger cars and trucks only. Parking of any other type of vehicle, including without limitation, trailers, boats or other watercraft, recreational vehicles, or any other vehicles larger than full-sized pick-up trucks in the Parking Spaces or any other portion of the Common Areas is not permitted.

D. Overnight parking of vehicles is not permitted.

E. Employee parking is restricted to one vehicle per employee during working hours only. Overnight parking of employee vehicles is not permitted. Tenant shall furnish Landlord with employees' license numbers within fifteen (15) days after taking possession of the Demised Premises and Tenant shall thereafter notify Landlord of any changes within ten (10) days after such change occurs.

11.03. **Responsibility For Employees, Customers and Invitees**. Because of the constant turnover of employees', customers', and invitees' vehicles, it will be impossible for Landlord to inform all vehicle owners of the Parking Rules and Regulations. Consequently, it is the responsibility of Tenant to advise its employees, customers, and invitees of the Parking Rules and Regulations, and to see that they do not violate the same. Tenant shall indemnify and hold Landlord harmless from any and all claims made by one of its employees, customers or invitees arising from Landlord's reasonable enforcement of the Parking Rules and Regulations.

11.04. **Enforcement and Remedies**. In addition to the remedies set forth in Article XVIII and any other remedies provided for hereunder or under the law, Landlord reserves the following rights and remedies to encourage and ensure compliance with the Parking Rules and Regulations:

A. If a vehicle is parked in violation of the Parking Rules and Regulations during normal business hours, Landlord shall post a warning ticket on the violating vehicle, and if such vehicle is determined to belong to Tenant or its employees, customers or invitees, then Landlord shall also deliver written notice specifying the vehicle and the violation to Tenant's authorized representative at the Demised Premises. Landlord shall charge Tenant a fine of Twenty Five Dollars ($25.00) for each such notice delivered.

Warning tickets and notices will also specify that the violation must be discontinued either:

1. Immediately, in the case of violations that impede traffic flow, create a potential hazard, infringe without permission on any other tenant's assigned Parking Spaces, or interfere with maintenance operations within the Center; or

2. Before the end of business on the day said notice is delivered in the case of all other violations.

If such violation is not discontinued within the time frame prescribed in the notice, Landlord may; without further notice, cause a tow truck to be dispatched to the Center to tow away the violating vehicle in which event Landlord may charge Tenant an additional Twenty Five Dollar ($25.00) fine. If Tenant moves the violating vehicle after a tow truck has been dispatched to the Center, but before such vehicle is actually towed, Tenant shall also reimburse Landlord for any reasonable fee charged by the towing company for dispatching the tow truck.

Tenant acknowledges that the fines provided for in this Subsection 11.04(A) are not punitive but are to reimburse Landlord for the personnel time spent on enforcing this provisions of this

wcsi.sig
5/4/09

TENANT    LANDLORD

12

_Article XI_.  All such fines shall be considered Additional Rent and shall be due and payable by Tenant with the next installment of Base Rent falling due after receipt of Landlord's statement therefor.

B.  If a vehicle is parked in violation of the Parking Rules and Regulations after normal business hours, Landlord may cause the violating vehicle to be towed away immediately and without notice if such vehicle is parked in violation of any posted regulation, or in a way that would impede traffic flow, create a potential hazard, or interfere with maintenance operations.  In the case of all other after hours violations, Landlord shall have the same remedies as provided above in _Subsection 11.04(A)_.

C.  Landlord shall not be liable for loss or damage to any vehicle towed away in accordance with this _Section 11.04_, nor for any costs or fees that may be charged by the towing company with respect to any such vehicle.

## ARTICLE XII - TENANT'S GENERAL COVENANTS

During the Term of this Lease, Tenant covenants and agrees as follows:

12.01.  _Active Operation_.  Tenant shall keep the Demised Premises open for business and in active operation during reasonable business hours.

12.02.  _Compliance With Laws_.  Tenant shall at its sole cost and expense comply with all laws and orders of any duly constituted authority which affect the carrying on of the Tenant's business.

12.03.  _Tenant's Taxes_.  Tenant agrees to pay, prior to delinquency, all taxes payable by Tenant in connection with use of the Demised Premises, including but not limited to, personal property taxes, payroll withholding taxes, sales taxes, and income taxes.

12.04.  _Condition of the Demised Premises_.  Tenant shall keep the Demised Premises in a neat, clean and orderly condition.

12.05.  _Landlord Access_.  Tenant shall permit Landlord at any time to enter the Demised Premises to examine and inspect the same or make such repairs, additions or alterations as Landlord may deem necessary or proper for the safety, improvement or preservation thereof, and it is expressly understood that Landlord shall at all times have the right at its election to make such alterations or changes in other portions of the Building containing the Demised Premises or in the Center as it may from time to time deem necessary and desirable.  Landlord, its agents, contractors and employees, may enter the Demised Premises for the purpose of providing access to other premises in the Building containing the Demised Premises to enable Landlord to effect repairs, maintenance and alterations.  For one hundred twenty (120) days prior to the termination of this Lease, Tenant shall permit Landlord reasonable access to the Demised Premises for exhibiting the same to prospective tenants.

12.06.  _Liens_.  Tenant shall keep the Demised Premises and the improvements thereon at all times during the Term hereof free of mechanic's and materialmen's liens and other liens of like nature, other than liens created and claimed by reason of any work done by or at the instance of Landlord, and at all times shall fully protect and indemnify Landlord against all such liens or claims and against all attorneys' fees and other costs and expenses growing out of or incurred by reason of any such liens or claims.  Should Tenant fail fully to promptly discharge any such lien or claim, Landlord, at its option, and after notice to Tenant, may pay the same or any part thereof.  All amounts so paid by the Landlord, together with interest thereon at the

wcsi.sig
5/4/09

TENANT   LANDLORD

13

rate of eighteen (18%) percent per annum from the time of payment by Landlord until repayment by Tenant, shall be Additional Rent and shall be paid by Tenant upon demand.

12.07.   **Distress Sales**.   Tenant shall not conduct in the Demised Premises, or any portion thereof, and shall not permit or suffer any person to conduct any auction, distress sale, fire sale, bankruptcy sale or going-out-of business sale.

12.08.   **Nuisance**.   Tenant shall not use or permit the Demised Premises to be used in such manner as to cause annoying noises or vibrations or offensive odors, or any other condition which is or is claimed to be a nuisance; nor shall Tenant use or permit the Demised Premises or any portion of the Center to be used for any purpose or in any manner which interferes with other tenants' business operations, or which Landlord deems is injurious to the reputation of the Demised Premises or the Center, or which is in any way illegal or disreputable.

12.09.   **Tenant's Use Shall Not Increase Insurance**.   Tenant shall not use the Demised Premises for any purpose which would increase the cost of any insurance carried by Landlord.   If any act or omission arising out of or resulting from Tenant's use and occupancy of the Demised Premises shall cause the rate of fire or other insurance on the Demised Premises or other property of Landlord to be increased beyond the minimum rate from time to time applicable to the Demised Premises for use for the purposes permitted under this Lease, Tenant will pay the amount of such increase promptly upon Landlord's written demand.   In determining whether increased premiums are the result of Tenant's use of Demised Premises, a schedule issued by the organization making the insurance rate on the Demised Premises and showing the various components of such rate, shall be conclusive evidence of the several items and charges which make up the fire insurance rate on the Demised Premises.

12.10.   **Tenant Shall Not Enter Upon the Roof**.   In no event shall Tenant or anyone acting on behalf of Tenant enter upon or take any action which shall in any way affect the roof, exterior walls or structural portions of the Demised Premises or any building or installation in the Center.   If any such action shall be necessary for Tenant to comply with the obligations imposed by Article IX, Tenant shall so advise Landlord.   Landlord may then take such action as it deems necessary or advisable and Tenant shall pay to Landlord promptly all costs and expenses in connection with said action.

12.11.   **Alteration of the Demised Premises**.   Tenant shall not make any alterations or changes in the Demised Premises or the improvements therein except with the Landlord's written consent.   All such alterations and changes which have been approved by Landlord shall be at Tenant's sole cost and expense.   All such alterations and improvements shall be the property of Landlord and shall remain upon and be surrendered with the Demised Premises at the termination of this Lease.

### ARTICLE XIII - HAZARDOUS WASTE

During the Term of this Lease, Tenant covenants and agrees as follows:

13.01.   **Equipment**.   Tenant is and shall remain and be the owner and operator of all Petroleum Equipment (as defined below) on and in adjacent areas to the Demised Premises, and accordingly, is further deemed to be such for purposes of compliance with all Environmental Laws (as hereinafter defined).   At any time during the Term of this Lease, Tenant shall have the right to install or cause to be installed and to maintain, replace, relocate, repair, upgrade and operate petroleum marketing equipment, including but not limited to, underground connected piping, and related lines, pumps, dispensers,

wcsi.sig
5/4/09

TENANT        LANDLORD

14

mechanical, control and detectional equipment, environmental assessment and remediation equipment related thereto. Tenant acknowledges that currently much of the underground Petroleum equipment serving the Demised Premises is located in the Common Areas outside the defined boundaries of the Demised Premises. Tenant covenants that it will not take any of the actions contemplated in this Section 26.01. in the Common Areas without the prior written consent of Landlord, which consent shall not be unreasonably withheld(the "Petroleum Equipment").

13.02.   **Compliance**.    Tenant shall comply with all laws, including Environmental Laws, relating to the use, storage, transportation, dispensing, sale or release of Hazardous Material (as hereinafter defined) at the Demised Premises. Tenant shall obtain and maintain all necessary permits, approvals, registrations, certificates, and authorizations ("Permits") required under Environmental Laws for the Demised Premises and the Petroleum Equipment, and Tenant shall be responsible for all related costs, fees, and charges. Tenant shall not be in violation of this paragraph in connection with the use, storage, transportation, dispensing or sale of petroleum products or natural gas so long as such use, storage, transportation, dispensing or sale complies with applicable Environmental Laws and governmental authorities having jurisdiction. Except as provided in a corrective action or similar plan approved by the appropriate governmental authority, Tenant shall not treat or dispose of Hazardous Material on the Demised Premises.

13.03.   **Reporting**.    Except as otherwise provided in Article XIII hereof, as between Landlord and Tenant, all reporting, investigation and/or remediation requirements under any applicable Environmental Law with respect to any release of Hazardous Material on the Demised Premises during the Term, regardless of the date of discovery, are the responsibility of Tenant, and Tenant shall be solely responsible for all costs incurred in connection with any investigation, monitoring or any cleanup, remediation, removal, or restoration work required by applicable law and any federal, state, or local governmental agency or political subdivision having jurisdiction over the Demised Premises because of Hazardous Material present in the soil or ground water on, under or emanating from the Demised Premises caused or permitted by Tenant or otherwise relating to Tenant's operations.

13.04.   **Exclusions**.    Tenant shall not be responsible for (A) Hazardous Material migrating onto the Demised Premises from off the Demised Premises through no act, omission or fault of Tenant ("Off-Premise Third Party Contamination"), (B) the exacerbation of any existing Hazardous Material contamination on the Demised Premises by Landlord, it's agents, employees, contractors or lenders, (C) Hazardous material brought onto the Demised Premises by Landlord, its agents, employees, contractors, or lenders in violation of Environmental Law or (D) contamination existing on the Demised Premises as of the date of this Lease (the "Exclusions"). Relative to the Exclusions, Landlord agrees to perform or cause to be performed any and all necessary reporting, investigation and remediation on the Demised Premises to the extent required by applicable Environmental Law and governmental authorities having jurisdiction. Upon execution of a mutually acceptable access agreement, Tenant agrees to cooperate in permitting reasonable access to the Demised Premises by any party who is responsible for assessment or remediation of contamination on the Demised Premises.

13.05.   **Equipment Removal**.  Upon    the    expiration    or    earlier termination of this Lease, Tenant shall remove all Petroleum Equipment, complete at Tenant's expense an investigation of the soil and groundwater conditions beneath the Premises (the "Closeout Investigation") and restore the Demised Premises to its condition immediately prior to installation of the Petroleum Equipment. The Closeout Investigation (i) shall include collection of soil groundwater samples in a manner reasonably expected to identify any

releases from Petroleum Equipment and analysis of samples for Hazardous Material, and (ii) shall be performed by a competent environmental professional, in accordance with any applicable ASTM standards no more than ninety (90) days following expiration of the Term of this Lease the Term of this Lease. The results of the Closeout Investigation shall be provided to Landlord in a written report prepared by the environmental professional.

13.06.   **Remediation Access.** In the event this Lease expires or is terminated, and any further investigation, remediation or monitoring is required that is the responsibility of Tenant hereunder, Landlord and its lessees, successors, and assigns, pursuant to execution of a mutually acceptable access agreement: (i) shall permit, without charge, cost, fee or assessment, Tenant and its agents and representatives reasonable access to the Demised Premises for completing such investigation, remediation, and monitoring and (ii) shall not materially damage, disturb or remove or otherwise unreasonably impede or interfere with such investigation, remediation or monitoring or the associated equipment, installations or facilities. Tenant shall not unreasonably interfere with use of the Demised Premises or any business operation thereon. Tenant shall not be liable or responsible for any disruption of business or other liabilities, costs or expenses incurred by Landlord or its lessees, successors or assigns that may be caused by Tenant's investigation, remediation or monitoring activities provided that Tenant has acted reasonably in conducting such activities.

13.07.   **Indemnification.** Tenant shall indemnify, defend, and hold Landlord harmless from any and all claims, judgments, damages, penalties, fines, costs, liabilities, liens or losses which arise during or after the Term of this Lease as a result of Tenant's noncompliance with Environmental Law or any releases of Hazardous Material at the Premises during the Term of the Lease, but solely with respect to Tenant's operation of Tenant's business in and about the Demised Premises. Tenant shall have no obligation to indemnify Landlord for any of the preceding matters if caused by Landlord, its previous tenants, agents, employees, contractors, lenders, or any business invitee of Landlord, nor shall Tenant be liable to indemnify Landlord for any claim, judgment, damage, penalty, fine, costs, liability, or loss attributable to such person's negligence or intentional misconduct.

13.08.   **Hazardous Material.** The term "Hazardous Material" means any substance, material, or waste which is toxic, ignitable, reactive, or corrosive and which is or becomes regulated by local or state governmental authority or by the United States Government. The term "Hazardous material" includes without limitation, any material or substance which is (i) defined as a "hazardous waste", "extremely hazardous waste", "restricted hazardous waste", "hazardous substance", or "hazardous material" by any local or state law, (ii) oil and petroleum products and their by-products, (iii) asbestos-containing materials, (iv) designated as a "hazardous substance" pursuant to the Federal Water Pollution Control Act, (v) defined as a "hazardous waste" pursuant to the Federal Resource Conservation and Recovery Act, or (vi) defined as a "hazardous substance" pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act.

13.09.   **Environmental Laws.** The term "Environmental Law" shall mean any law, statute, regulation, order, or rule now or hereafter promulgated by any governmental entity, whether local, state, or federal, relating to air pollution, water pollution, and/or transporting, storing, handling, discharge of a disposal of Hazardous Material, including, without limitation, the following: the Clean Air Act' the Resource Conservation and Recovery Act, as amended by the hazardous and Solid Waste Amendments of 1984; the Comprehensive Environmental Response, Compensation, and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986' the Toxic

wcsi.sig
5/4/09

TENANT        LANDLORD

Substances Control' Act' the Federal Insecticide and Rodenticide Act, as amended' the Safe Drinking Water Act' the Occupational Safety and health Act; the Hazardous Materials Transportation Act' and the National Environmental Policy Act, all as the same may be amended from time to time.

13.10.   **Special Remedies**.  In addition to the remedies set forth in Article XVIII, if Tenant breaches any covenant in this Article XIII, Landlord may cause the Demised Premises to be freed from any such Hazardous Material or otherwise brought into conformance with Environmental Laws and any cost of same shall be paid by Tenant as Additional Rent hereunder within ten (10) days after Landlord's demand.

If Tenant shall fail to make such payment, any amounts payable pursuant to this Section 13.04 shall bear interest at the rate of eighteen (18%) percent per annum.  Tenant hereby agrees to indemnify Landlord and hold Landlord harmless from and against any and all expenses, damages and costs (including, without limitation, attorneys' fees and consequential damages) incurred by Landlord as a result of any Hazardous Substances in the Demised Premises and failure of the Demised Premises to comply with Environmental Laws.

## ARTICLE XIV - SIGNS AND ADVERTISING

14.01.   **General Requirements**.  Tenant shall not affix or maintain upon the glass panes and supports of the show windows (and within twelve inches of any window), doors and the exterior walls of the Demised Premises, any signs, advertising placards, names, insignia, trademarks, or other descriptive material except such as shall have first received the written approval of the Landlord.  Tenant shall not affix any sign to the roof of the Demised Premises.  In addition, no advertising medium shall be utilized by Tenant which can be heard or experienced outside Tenant's Demised Premises, including without limiting the generality of the foregoing, flashing lights, search lights, loudspeakers, phonographs, radios or television.

14.02.   **Tenant's Sign**.  Tenant shall be permitted to install Two (2) signs on Parcel One of the Demised Premises, and Two (2) signs on the gas canopy installed on Parcel Two of the Demised Premises.  In addition Tenant shall have the right to install One (1) double-sided free standing sign at the Southern side of the Parker Road entrance to the Center; provided, however, that the size, location, materials and installation of all such signs shall comply with all requirements of Exhibit B and shall be approved by Landlord and all governmental agencies having jurisdiction in accordance with the procedures set forth in Exhibit B.

## ARTICLE XV - INSURANCE AND INDEMNIFICATION OF LANDLORD

15.01.   **Indemnification of Landlord**.  Tenant covenants to indemnify and save harmless Landlord from all claims against and of Landlord (including all costs and expenses and Landlord's reasonable attorneys' fees) for or on account of: (a) any occurrence in or about the Demised Premises; (b) Tenant's use or occupancy of the Demised Premises; (c) the failure of Tenant to perform any of its obligations under this Lease; or (d) on account of injuries to the person or property of any other tenant or any other person in the Center for any purpose whatsoever, where the injuries are caused by any act, omission, negligence or misconduct of the Tenant, its agents, servants or employees, or any other person entering upon the Demised Premises under express or implied invitation of Tenant or their violation of laws or ordinances, governmental orders of any kind, or any of the rules and regulations provided for in this Lease.

15.02.   **Indemnification of Tenant**.  Landlord covenants to indemnify and save harmless Tenant from all claims against and of Tenant (including all costs and expenses and Tenant's reasonable attorneys' fees) for or

on account of: (a) any occurrence in or about the Center (b) the failure of Landlord to perform any of it's obligations under this Lease; or (c) on account of injuries to the person or property of any other tenant or any other person in the Center for any purpose whatsoever, where the injuries are caused by any act, omission, negligence or misconduct of the Landlord, it's agents, servants, or employees, or any other person entering upon the Center under the express or implied invitation of Landlord or their violation of laws or ordinances, governmental orders of any

15.03.   **Waiver of Subrogation**.   To the extent that it may be done without jeopardizing insurance or increasing premiums, each party to this Lease waives all rights of subrogation against the other.

15.04.   **Tenant's Public Liability and Property Damage Insurance**. Tenant shall at all times maintain in force commercial general liability insurance with combined single limits for bodily injury and property damage of not less than ONE MILLION AND NO/100 ($1,000,000.00) DOLLARS for each occurrence, insuring against any and all liability of the insured with respect to the Demised Premises or arising out of the maintenance, use or occupancy thereof.

15.05.   **Tenant's Fire Insurance**.   Tenant shall at its expense maintain in force and effect fire insurance with extended coverage endorsement together with sprinkler damage, vandalism and malicious mischief coverage in an amount adequate to cover in the event of loss the full cost of replacement from time to time during the Term of this Lease of:   all of the alterations and additions permitted under this Lease; and all fixtures, trade fixtures, merchandise and personal property within the Demised Premises.   All policy proceeds shall be used for the repair or replacement of the property damaged or destroyed unless this Lease shall terminate pursuant to Section 19.02.

15.06.   **General Requirements of Tenant's Insurance Policies**.

A.   All policies of insurance carried by Tenant shall be issued by insurance companies qualified to do business in the State of Colorado and satisfactory to Landlord and its mortgagees and beneficiaries.   All such policies shall list as additional insureds Landlord, Tenant, and Landlord's mortgagees or beneficiaries; all policies shall be for the mutual and joint benefit and protection of Landlord, Tenant and Landlord's mortgagees and beneficiaries.

B.   All public liability and property damage policies shall contain a provision that the Landlord, although named as an additional insured, shall nevertheless be entitled to recovery under said policies for any loss occasioned to it, its servants, agents and employees by reason of the negligence of the Tenant. All public liability, property damage and other casualty policies shall be written as primary policies not contributing with and not in excess of coverage which the Landlord may carry.

C.   Tenant shall deliver to Landlord original policies of insurance or certificates thereof prior to taking possession of the Demised Premises.   Thereafter executed copies of renewal policies or certificates thereof shall be delivered to Landlord at least thirty (30) days prior to the expiration of the term of each such policy.

D.   All policies of insurance carried by Tenant shall provide that the insurance shall not be cancelled without thirty (30) days' prior notice in writing to Landlord and its named mortgagees and beneficiaries of any cancellation or lapse or the effective date of   any   reduction   in   the   amounts   of   insurance.

wcsi.sig
5/4/09



TENANT      LANDLORD

15.07.   _Landlord's Fire Insurance_.  Landlord shall maintain in force and effect fire insurance with extended coverage endorsement insuring the Parker Road Car Care Center structures of which the Demised Premises are a part against loss or damage by fire in the amount of at least eighty (80%) percent of the replacement cost thereof.  Only Landlord and any of Landlord's mortgagees and beneficiaries requiring designation shall be named as insureds and the insurance proceeds shall be payable only to Landlord and any such mortgagees or beneficiaries. The cost of such insurance shall be included in Center Operating Cost as provided in _Article VI_ of this Lease.

15.08.   _Limitation of Landlord's Responsibility_.  Tenant, on behalf of itself and all those claiming by, through or under Tenant, covenants neither to hold nor to attempt to hold Landlord liable for:

A.   any injury or damage, either proximate or remote, occurring through or caused by any repairs, alterations, injury or accident to the Demised Premises, to adjacent premises or other parts of the Building containing the Demised Premises or the Center, whether by reason of the negligence or default of the tenants or occupants thereof, or any other person, or otherwise, unless as a result of the negligence of Landlord or its agents;

B.   any injury or damage occasioned by gas, smoke, rain, snow, water, however occasioned; or by defective electric wiring or the breaking or stoppage of the plumbing or sewage upon or in the Demised Premises, or adjacent premises, or the Building containing the Demised Premises, or the Center, whether said breaking or stoppage results from freezing or otherwise, unless as a result of the negligence of Landlord or its agents;

C.   any damage, injury or theft to furniture, furnishings, equipment, machines or other personal property located on the Demised Premises;

D.   any direct or indirect injury or alleged injury to Tenant, or anyone claiming by, through or under Tenant caused or alleged to be caused by the failure of any other tenant in the Center to comply with all of the terms or provisions of such tenant's Lease, unless as a result of the negligence of Landlord or its agents.

## ARTICLE XVI - ASSIGNING AND SUBLETTING

This Lease is personal to Tenant.  Tenant's particular characteristics and qualifications are a part of the consideration for Landlord's lease of the Demised Premises to Tenant.  Tenant covenants that except with the prior written consent of Landlord, which consent shall not be unreasonably withheld, Tenant will not:

A.   assign, convey, mortgage, pledge, encumber or otherwise transfer (whether voluntarily or otherwise) this Lease or any interest under it;

B.   allow any transfer thereof or any lien upon Tenant's interest by operation of law;
C.   sublet the Demised Premises or any part thereof; or

D.   grant any license or concession within the Demised Premises or permit the use or occupancy of the Demised Premises or any part thereof by anyone other than Tenant.

Any such transfer, sublease or permission without Landlord's prior written consent shall be void.  An assignment of Tenant's leasehold estate by operation of law shall at Landlord's option cause this Lease to terminate.

wcsi.sig
5/4/09

TENANT          LANDLORD

19

It is the intent of the parties that the Center maintain its professional specialty ratio or balance, and therefore, Landlord will not consent to any assignment or sublease to a specialist in any specialty or field other than that of Tenant. Notwithstanding any such consent, the undersigned Tenant will remain fully liable under this Lease and will not be relieved from performing any of its obligations hereunder. Any such consent by Landlord shall not relieve Tenant from obtaining Landlord's prior written consent to any further assignment or sublease. As a condition of any assignment, the assignee will be required to assume in writing the obligations of Tenant under this Lease. If this Lease shall be assigned or if the Demised Premises, or any part thereof, shall be subleased or occupied by any person or persons other than Tenant, Landlord may, after the default of Tenant and without in any way releasing Tenant of its obligations hereunder, collect Rent from such assignee, subtenant or occupant and apply the net amount collected to the Rent reserved herein. Such collection of Rent shall not be deemed an acceptance of any such assignee, subtenant or occupant.

If Tenant requests Landlord's consent to any transfer, sublease, or permission as provided above, and if Landlord reasonably refers the matter to its attorneys, then whether or not such consent is granted, Tenant agrees to pay to Landlord on demand Landlord's attorneys' fees incurred in connection with such request by Tenant.

If Landlord conveys or transfers its interest in the Building containing the Demised Premises or in the Center, upon conveyance or transfer Landlord (and in the case of any subsequent conveyances or transfers, the then grantor or transferor) shall be entirely released from all liability with respect to the performance of any obligations on the part of Landlord to be performed hereunder from and after the date of such conveyance or transfer.

## ARTICLE XVII - SURRENDER OF POSSESSION

17.01. **Surrender of Possession**. At the termination of this Lease Tenant shall surrender the Demised Premises to Landlord in the same condition as when entered upon, except for fire or casualty, reasonable wear and tear, 'and changes made with Landlord's consent. All improvements constructed or installed by Landlord or Tenant shall be and become part of the fee and shall be the property of Landlord, except usual trade fixtures and equipment installed by Tenant. Tenant shall be liable ifor any damage to the Demised Premises caused by removal of such trade fixtures and equipment.

17.02. **Failure to Remove Effects**. If Tenant shall fail to remove all effects from the Demised Premises which Tenant is entitled to remove upon abandonment thereof or upon the termination of this Lease for any cause whatsoever, Landlord, at its option, may remove such effects in any manner that it shall choose, and store them without liability to Tenant for loss or damage thereof. Tenant agrees to pay Landlord on demand any and all expenses incurred in such removal, including court costs and attorney's fees and storage charges on such effects for any length of time while they shall be in storage or in Landlord's possession or Landlord, at its option and without notice, may sell said effects, or any of them, at private sale and without legal process for such prices as Landlord may obtain, and apply the proceeds of such sale upon any amounts due under this Lease from Tenant to Landlord and upon the expense incident to the removal and sale of said effects, rendering the surplus, if any, to Tenant. Any such property of the Tenant not removed from the Demised Premises or retaken from storage by the Tenant within thirty (30) days after the end of the Term or within thirty (30) days after the termination of Tenant's right to possession of the Demised Premises, however terminated, shall be conclusively deemed to have been forever abandoned by the Tenant and may either be retained by Landlord as its property or may be disposed of in such manner as Landlord may see fit. Landlord may treat the

wcsi.sig
5/4/09

TENANT        LANDLORD

Demised Premises as "abandoned" by Tenant when for a period of ten (10) calendar days normal business operations are not conducted on the Demised Premises and no payments of Rent are made.

17.03.    **No Act Shall Constitute a Surrender.**    No act or thing done by Landlord or its agents during the Term hereby granted shall be deemed an acceptance of a surrender of the Demised Premises, and no agreement to accept a surrender of the Demised Premises shall be valid unless the same be made in writing and subscribed by Landlord.    No employee of Landlord or of Landlord's agents shall have any power to accept the keys of the Demised Premises prior to the termination of this Lease. The delivery of keys to any employee of Landlord, or of Landlord's agents, shall not operate as a termination of this Lease or a surrender of the Demised Premises.

## ARTICLE XVII - DEFAULT

18.01.    **Events of Default.**    Each of the following described events shall be considered an Event of Default, should it happen:

A.    If any Rent or any other payment to be made by Tenant shall remain overdue and unpaid after the expiration of five (5) calendar days from notice given by Landlord to Tenant; or

B.    If Tenant shall neglect or fail to perform or observe any of the covenants herein contained on the Tenant's part to be performed or observed and Tenant shall fail to remedy the same within ten (10) calendar days after Landlord shall have given to Tenant notice specifying such neglect or failure (or within such period, if any, as may be reasonably required to cure such default if it is of such nature that it cannot be cured within such ten (10) day period and Tenant commences to cure such default within such ten (10) day period and proceeds with due diligence); or

C.    If Tenant fails more than twice within any twelve (12) month period to observe any covenant, condition, or agreement of this Lease (including without limitation the payment of Rent), regardless of whether such defaults shall have been cured by Tenant, the third Default shall, at the election of Landlord, in its sole and absolute discretion, be deemed a noncurable Event of Default; or

D.    If Tenant shall fail to pay for or procure any insurance as above provided within five (5) calendar days after notice of default in procurement of insurance or of default in payment of insurance; or

E.    If Tenant vacates or abandons the Demised Premises, which is defined as ceasing to conduct normal business operations in the Demised Premises for a period of ten (10) calendar days; or

F.    If Tenant assigns or sublets or purports to assign or sublet the whole or any part of the Demised Premises without prior written consent of Landlord as provided in Article XVI; or

G.    If this Lease or the Demised Premises or any part thereof shall be taken upon execution or by other process of law directed against Tenant, or shall be taken upon or subject to any attachment at the instance of any creditor of or claimed against Tenant, and said attachment shall not be discharged or disposed of within thirty (30) days after the levy thereof; or

H.    If Tenant shall be involved in financial difficulties as evidenced by (1) its admitting in writing its inability to pay debts generally as they become due, or (2) by making an assignment of all or a substantial part of its property for the benefit of its creditors, or (3) by its seeking or consenting to or

wcsi.sig
5/4/09

TENANT        LANDLORD

acquiescing in the appointment of a receiver or trustee for all or a substantial part of its property or of the Demised Premises or of its interest in this Lease, or (4) by the entry of a court order without Tenant's consent, which order shall not be vacated, set aside or stayed within thirty (30) days from the date of entry appointing a receiver or trustee for all or a substantial part of its property; or

I.  if a petition in bankruptcy or insolvency or for reorganization or arrangement, composition, or the appointment of a receiver or trustee or any other relief from debt under the United States Bankruptcy laws or any other Federal or State laws now or hereafter providing for the relief of debtors is filed by or against Tenant; provided, however, that if such petition be filed by a third party against Tenant and Tenant:

    1.  desires in good faith to defend against the same;

    2.  is not in any way in default of any obligation hereunder at the time of the filing of such petition; or

J.  The occurrence of any other event described as a default elsewhere in this Lease or any amendment thereto, regardless of whether such event is described as an Event of Default.

18.02.  **Landlord's Remedies Upon Default**.  This Lease is on condition that if any one or more Events of Default shall occur, then at Landlord's election at any time while such Event of Default shall continue:

A.  Landlord may by notice to Tenant terminate this Lease effective on the delivery of such notice or on any later date specified in the notice, and on such termination Tenant's right to possession of the Demised Premises shall cease and this Lease shall thereupon be at an end.

B.  Landlord may, without demand or notice, and without termination of this Lease, re-enter and take possession of the Demised Premises or any part thereof, and expel Tenant and those claiming through or under Tenant, and remove the effects of both or either (forcibly, if necessary) without being deemed guilty of any manner of trespass and without prejudice to any remedies for arrears of Rent or preceding breach of covenants. Should Landlord elect so to re-enter or should Landlord take possession pursuant to legal proceedings or pursuant to any notice provided for by law, Landlord may, from time to time, without terminating this Lease, relet the Demised Premises or any part thereof for such term or terms and at such Rent or Rents, and upon such other terms and conditions as Landlord may deem advisable in its sole discretion, with the right to make alterations and repairs to the Demised Premises, at Tenant's sole cost and expense.

C.  Neither re-entry or reletting by Landlord pursuant to Section 18.02(B) nor the giving of any demand for payment or possession pursuant to unlawful detainer statutes shall be construed as an election by Landlord to terminate this Lease nor shall it relieve Tenant of its liability and obligations under this Lease, all of which shall survive, and Tenant shall pay to Landlord as liquidated current damages the Rent reserved by this Lease, less the net proceeds, if any, of any reletting of the Demised Premises after deducting all Landlord's expenses in connection with such reletting, including, but without limitation, all repossession costs, brokerage commissions, legal expenses, attorney's fees, expenses of employees, alteration costs and expenses of preparation for such reletting. Tenant shall pay such current

damages to Landlord on the days on which the Rent would have been payable if possession had not been retaken.

D.   If this Lease is terminated by Landlord by reason of any default by Tenant, Landlord shall be entitled to recover from the Tenant the worth at the time of such termination of the excess, if any, of the amount of Rent reserved in this Lease for the balance of the Term of this Lease over the then reasonable Rent value of the Demised Premises for the same period, to-wit:  the amount which the Landlord is able to obtain as Rent for the remaining balance of the Term.   The Rent reserved for the balance of the Term shall be computed using the average Base Rent, Additional Rent and all other charges payable by Tenant from the Commencement Date to termination, or during the preceding three (3) full calendar years, whichever period is shorter.

18.03.   <u>General Default Provisions</u>.

A.   If Tenant shall default in the performance of any covenant, agreement, term, provision or condition herein contained, Landlord, without thereby waiving such default, may perform the same for the account and at the expense of Tenant, without notice in a case of emergency and in any other case if such default continues after ten (10) calendar days from the date of the giving by Landlord to Tenant of written notice of intention so to do. Bills for any expense incurred by Landlord in connection with any such performance by Landlord for the account of Tenant, as well as bills for any property, material, labor or services provided, furnished or rendered, or caused to be provided, furnished or rendered, by Landlord to Tenant may be sent by Landlord to Tenant monthly, or immediately, at Landlord's option, and shall, unless otherwise provided, be due and payable by Tenant within five (5) calendar days after the bill is sent to Tenant by Landlord.

B.   If suit shall be brought for recovery of possession of the Demised Premises, for recovery of Rent or as the result of any breach of this Lease by Tenant, the prevailing party shall be entitled to its costs, expenses and reasonable attorney's fees incurred in said action.

C.   The mention in this Lease of any particular remedy shall not preclude Landlord from any other remedy Landlord might have, either in law or in equity, nor shall the waiver of or redress for any violation of any covenant or condition contained in this Lease or any of the rules and regulations set forth herein or hereafter adopted by Landlord prevent a subsequent act, which would have originally constituted a violation from having all the force and effect of an original violation.

D.   The receipt by Landlord of Rent with knowledge of the breach of any covenant in this Lease contained shall not be deemed a waiver of such breach.

E.   The failure of Landlord to enforce any of the rules and regulations set forth herein, or hereafter adopted, against Tenant and or any other tenant in the Building containing the Demised Premises or in the Center shall not be deemed a waiver of such rules and regulations or any thereof.

F.   The receipt by Landlord of Rent from any assignee, under-tenant or occupant of the Demised Premises shall not be deemed a waiver of the covenants in this Lease contained against assignment and underletting, or any acceptance of the assignee, under-tenant or occupant as Tenant, or a release of Tenant from the further observance or performance by Tenant of the covenants in this Lease contained on the part of Tenant to be observed and performed.

wcsi.sig
5/4/09



TENANT        LANDLORD

23

G.   No provisions of this Lease shall be deemed to have been waived by Landlord unless such waiver be in writing signed by an executive officer of Landlord.

H.   No payment by Tenant, or receipt by Landlord, of a lesser amount than a monthly installment of Base Rent, any Additional Rent or any other sums due and payable hereunder herein stipulated, shall be deemed to be other than on account of the earliest stipulated Rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as Rent, be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such Rent or pursue any other remedy available to Landlord.

I.   No payments of money by Tenant to Landlord after the termination of this Lease, in any manner, or after the giving of any notice (other than a demand for payment of money) by Landlord to Tenant, shall reinstate, continue or extend the Term of this Lease or affect any notice given to Tenant prior to the payment of such money, it being agreed that after the service of notice or the commencement of any suit or after final judgment granting Landlord possession of the Demised Premises, Landlord may receive and collect any sums of Rent due, or any other sums of money, whether as Rent or otherwise and such receipt or collection shall not waive said notice, or in any manner affect any pending suit or any judgment theretofore obtained.

18.04.   **Default by Landlord**.  Landlord shall only be deemed to be in default under the terms of this Lease in the event Landlord shall violate, neglect, or fail to observe, keep or perform any covenant or agreement which is not observed, kept, or performed by Landlord within thirty (30) days after the receipt by Landlord of written notice from Tenant of such breach which notice shall specifically set out the breach.  Landlord shall not be considered to be in default so long as Landlord commences to cure such breach in a diligent and prudent manner and is allowed such additional time as is reasonably necessary to correct the breach.

## ARTICLE XIX - CONDEMNATION AND FIRE CLAUSES

19.01.   Condemnation.

A.   If all of the Demised Premises shall be taken by right of eminent domain or by condemnation or shall be conveyed in lieu of any such taking then this Lease shall terminate as of the date of transfer of title or possession, whichever is earlier, and the Rent shall be pro-rated to the date of termination.

B.   If only part of the Demised Premises or if part of the Building in which the Demised Premises are situate shall be taken by right of eminent domain or by condemnation or shall be conveyed in lieu of any such taking or if twenty (20%) percent or more of the entire Center including buildings, parking facilities, Common Areas and common facilities are so taken or conveyed, Landlord may at its election terminate this Lease as of the date of transfer of title or possession, whichever is earlier, by notice delivered to Tenant not later than ninety (90) days after such transfer of title or possession.  If Landlord does not so elect to terminate this Lease, Landlord shall promptly and at its expense restore the Demised Premises to an architectural unit as nearly like the condition of the Demised Premises before such taking as shall be practicable and within the scope of the work done by Landlord in the original construction of the Demised Premises.  If this Lease is not so terminated it shall continue in effect but the Base Rent shall be suspended or abated in a fair proportion according to the nature and extent of the interference of the taking and Landlord's

wcsi.sig
5/4/09

TENANT   LANDLORD

24

restoration activities with the Tenant's operations, and according to the nature and extent of any reduction in the area of the Demised Premises. Installation or replacement of trade equipment, furniture and other property of Tenant shall be at Tenant's expense.

C.   In the event of any taking or conveyance as described in Subsections 19.01(A) or (B) above, Landlord shall receive the entire award or consideration for the land and improvements so taken or conveyed and Tenant hereby waives all claims against Landlord and against the condemnor for or on account of or incident to such taking or conveyance. Tenant may, however, separately claim and recover from the condemnor (but not from Landlord) the value of any personal property of Tenant which Tenant was entitled to remove pursuant to the terms of this Lease.

19.02.   Fire.

A.   If the Demised Premises shall be partially or totally destroyed by fire or other casualty insurable under standard fire insurance with extended coverage so as to become partially or totally untenantable then unless this Lease is terminated as provided below Landlord shall promptly and at its expense repair and restore the Demised Premises and during the period of restoration or repair the Base Rent shall be abated or reduced in fair proportion according to the degree of interference with Tenant's operations.

B.   If twenty (20%) percent or more of the entire Center including Buildings, parking facilities, Common Areas and common facilities shall be damaged by fire or other casualty to such extent that the Center in the sole judgment of Landlord cannot be operated as an integrated automotive center then (whether or not the Demised Premises themselves be damaged) Landlord may terminate this Lease by written notice delivered to Tenant within thirty (30) days after such damage and in the event of such termination the Rent and other charges payable shall be pro-rated to the date of such damage. If during the last two (2) years of the Primary Term or of any extended Term of this Lease, the Demised Premises shall be so damaged by fire or casualty as to be untenantable as to fifty (50%) percent or more of the Floor Area of the Demised Premises then either Landlord or Tenant may at its election by notice delivered to the other within sixty (60) days after such damage terminate this Lease as of the end of the first full calendar month following delivery of the notice and until this Lease is so terminated or the Demised Premises are restored by Landlord the Base Rent payable by Tenant shall be reduced according to the degree of interference with Tenant's operations.

## ARTICLE XX - HOLDOVER

If after the expiration of the Term of this Lease by lapse of time Tenant remains in possession of the Demised Premises with the consent of Landlord, but without written agreement as to such holding over, such holding over shall be deemed a tenancy from month to month at a monthly Rent equal to one hundred and fifty (150%) percent of the monthly installment of Base Rent and any Additional Rent payable for the last month of the Term of this Lease as it may have been extended, such monthly installments to be payable on the first day of each calendar month in advance. All other terms and conditions of this Lease shall apply to the monthly tenancy.

## ARTICLE XXI - QUIET ENJOYMENT

If Tenant pays the Rent and performs the covenants by it to be observed or performed, Landlord warrants and will defend Tenant in the enjoyment and peaceful possession of the Demised Premises throughout

wcri.sig
5/4/09

TENANT        LANDLORD

the Term of this Lease against the lawful claims of any persons whomsoever.

## ARTICLE XXII - DEMISED PREMISES LEASED "AS IS"

In entering into this Lease, Tenant has not relied on any representation, statement or warranty of Landlord, nor anyone acting for or on behalf of Landlord.  Tenant acknowledges that all matters concerning the Demised Premises and the Center have been independently verified by Tenant and that Tenant is leasing the Demised Premises in an "AS IS" physical condition and in an "AS IS" state of repair. TENANT DOES HEREBY WAIVE, and LANDLORD DOES HEREBY DISCLAIM, all warranties of any type or kind whatsoever with respect to the Demised Premises and the Center, express or implied, including, by way of description and not of limitation, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TENANTABILITY, HABITABILITY AND USE.

## ARTICLE XXIII - LENDER'S REQUIREMENTS

23.01.   **Subordination and Attornment.**  Tenant covenants and agrees:

A.  That, except as hereinafter provided, this Lease shall be subordinate to any mortgage, Deed of Trust or other security instrument (all hereinafter collectively referred to as "Mortgage") that has been or may hereafter be placed upon the Demised Premises or the Center, provided that in the event of foreclosure, the mortgagee or trustee or beneficiary named in said Mortgage shall agree to recognize the validity of this Lease and not to disturb Tenant in its use of the Demised Premises for so long as Tenant is not in default.

B.  That if the holder of any such Mortgage or if the purchaser at any foreclosure sale or at any sale under a power of sale contained in any Mortgage shall request, Tenant will attorn to, and recognize such Mortgagee or purchaser as the case may be, as Landlord under this Lease for the balance then remaining of the Term of this Lease, subject to all terms of this Lease.

C.   Should Landlord or any Mortgagee or purchaser desire confirmation of either such subordination or such attornment, as the case may be, Tenant upon written request, and from time to time, will execute and deliver without charge, all instruments or documents that may be required to acknowledge such subordination and agreement to attorn.  In the event Tenant fails to execute and deliver such instruments and documents within ten (10) days after receipt thereof, such failure shall constitute an acknowledgment by Tenant of such subordination or attornment on the terms and conditions as recited in all such instruments or documents, which acknowledgment may be relied upon by any person whomsoever.

23.02.   **Estoppel Certificates.**  At any time, and from time to time, upon the written request of the Landlord or the holder of any Mortgage on the Center, Tenant agrees, within ten (10) days of the date of such written request, to execute and deliver to Landlord or to such other party, without charge, a written statement:  (a) ratifying this Lease; (b) confirming the commencement and expiration dates of the Lease term; (c) certifying that Tenant is in occupancy of the Demised Premises, and that the Lease is in full force and effect and has not been modified, assigned, supplemented or amended except by such writings as shall be stated; (d) certifying that all conditions and agreements under this Lease to be satisfied or performed by Landlord have been satisfied and performed except by such writings as shall be stated; (e) certifying that Landlord is not in default under the Lease and there are no defenses or offsets against the enforcement of this Lease by Landlord, or stating the defaults and defenses claimed by Tenant; (f) reciting the amount of advance Rent, if any, paid by Tenant and the date to which such Rent has been paid; (g) reciting the amount of the Security

Deposit, if any; and (h) reciting any other information which Landlord or such party shall require.

The failure of Tenant to execute, acknowledge and deliver a statement in accordance with the provisions of this Article XXIII within said ten (10) days, shall constitute an acknowledgment by Tenant, which may be relied upon by any person holding or intending to acquire any interest whatsoever in the Demised Premises or the Center, that this Lease has not been assigned, amended, changed or modified, is in full force and effect and the Base Rent and all items of Additional Rent have been duly and fully paid not beyond the respective due dates immediately preceding the date of the request for such statement and shall constitute as to any persons entitled to rely on such statements a waiver of any defaults by Landlord or defenses or offsets against the enforcement of this Lease by Landlord which may exist prior to the date of the written request.

## ARTICLE XXIV - NOTICES

Unless otherwise expressly provided, all notices, consents, approvals and other communications between the parties required or permitted by this Lease shall be in writing, and must be delivered either by a nationally recognized overnight air carrier, or by certified mail - return receipt requested, or by courier. All such communications shall be addressed as follows:

To Landlord:        S/G ASSOCIATES, INC.
                    7840 Vallagio Lane
                    Englewood, CO 80112

To Tenant:          WESTERN CONVENIENCE STORES, INC.
                    9846 E Easter Avenue
                    Centennial, CO 80112

## ARTICLE XXV - MISCELLANEOUS

25.01.   It is expressly agreed by Tenant, as a material consideration for the execution of this Lease, that this Lease, with the specific references to written extrinsic documents, is the entire agreement of the parties; that there are, and were, no verbal representations, warranties, understandings, stipulations, agreements or promises pertaining to this Lease or the expressly mentioned written extrinsic documents not incorporated in writing in this Lease. Landlord and Tenant further agree that this Lease may not be altered, waived, amended or extended except by an instrument in writing signed by both Landlord and Tenant.

25.02.   Landlord reserves the absolute right to affect such other tenancies in the Center as Landlord, in the exercise of its sole business judgment, shall determine to best promote the interests of the Center. Tenant does not rely on the fact, nor does Landlord represent, that any specific tenant or number of tenants shall during the Term of this Lease occupy any space in the Center.

25.03.   If Tenant requests consent to any act that requires Landlord's consent under this Lease and if Landlord in good faith and with reason believes that the request is of such importance or involves considerations with which the Landlord may not be familiar and for that reason refers the matter to its attorneys then, whether or not such consent is granted, Tenant agrees to reimburse Landlord for its reasonable attorney's fees.

25.04.   This Lease shall not be recorded except by mutual consent of the parties.

25.05.   All obligations of Tenant which by their nature involve performance, in any particular, after the end of the Term, or which

wcsi.sig
5/4/09


TENANT        LANDLORD

27

cannot be ascertained to have been fully performed until after the end of the Term, shall survive the expiration or sooner termination of the Term.

25.06.   The rights and obligations created by this Lease inure to and shall be binding on the respective successors and assigns of the parties.

25.07.   Whenever the context permits, the masculine, feminine or neuter gender shall be deemed to refer equally to persons of both sexes and to organizations, singular to include plural and plural to include singular.

25.08.   If any clause or provision of this Lease is illegal, invalid or unenforceable under present or future laws effective during the Term of this Lease, then, in that event, it is the intention of the parties hereto that the remainder of this Lease shall not be affected thereby, and it is also the intention of the parties to this Lease that in lieu of each clause or provision of this Lease that is illegal, invalid or unenforceable there be added as a part of this Lease a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

25.09.   The laws of the State of Colorado shall govern the validity, performance and enforcement of this Lease.

25.10.   Tenant acknowledges and agrees that as of the date hereof, Landlord's estate in the Center is subject to (a) the effect of covenants, conditions, restrictions, reservations, easement, rights-of-way, mortgages or deeds of trust, and any other matters or documents of record, and may in the future be subject to such additional matters which Landlord may place of record in connection with the development or financing of the Center, (b) the effect of all zoning laws, use restrictions and ordinances of the County of Arapahoe and State of Colorado, and (c) general and special taxes. Tenant agrees that as to its leasehold estate, Tenant and all persons in possession or holding under it, will abide by and will not violate the terms of (a) and (b) above.

## ARTICLE XXVI - ADDITIONAL PROVISIONS

Landlord and Tenant hereby mutually agree that the following Additional Provisions are hereby made a part of this Lease:

26.01.   **Force Majeure.** Whenever a period of time is herein provided for either party to do or perform any act or thing, there shall be excluded from the computation of such period of time any delays due to strikes, riots, acts of God, shortages of labor or any cause or causes, whether or not similar to those enumerated, beyond the parties' reasonable control or the reasonable control of their agents, servants, employees and contractors engaged by them to perform work in connection with this Lease.

26.02.   **Exclusive use.** Provided that Tenant makes all payments herein required and performs in accordance with the terms and covenants of this Lease, Landlord agrees not to lease any other premises in the Center to a tenant whose business is the retail sale of motor fuel products.

26.03.   **Prevailing Party.** In the event either party takes legal action against the other in order to enforce the terms of this Lease, the party in whose favor final judgment is entered shall be entitled to recover from the other party it's reasonable attorney fees and costs.

26.04.   **Site Evaluation.** C.G.R.S. Inc., has completed a site compliance investigation pertaining to the Demised Premises for the

wcsi.sig
5/4/09

TENANT     LANDLORD

benefit of Tenant and Landlord. Prior to execution of the Lease the Tenant shall cause the compliance report to be submitted to Landlord, and Landlord shall reimburse Tenant for the charges assessed by C.G.R.S. for work at the Demised Premises.

26.05.    **Equipment Sale**. Concurrently with the execution of this Lease, (a) Tenant shall tender to Landlord the sum of Twenty Thousand Dollars ($20,000.00) (the "Purchase Price"), to acquire all Petroleum Equipment, and all other equipment, furniture, fixtures, and any other contents contained within the Demised Premises as of the date of this Lease (the "FF&E"); and (b) Landlord shall issue to Tenant a Bill of Sale conveying full and clear title to the FF&E.

During the first sixty days of this Lease, Tenant shall keep the FF&E in good repair and shall not remove any of the FF&E from the Demised Premises. If this Lease is terminated pursuant to Section 4.01.A, Landlord shall forthwith return the Purchase Price to Tenant and Tenant shall issue Landlord a Bill of Sale conveying full and clear title to the FF&E.

Landlord acknowledges that it will be necessary for Tenant to purchase fuel during the first sixty days of this Lease, and that such fuel will be stored in the underground storage tanks which are part of the FF&E. If this Lease is terminated pursuant to Section 4.01.A of the Lease, then Tenant shall be allowed to remove any such fuel prior to, or within five (5) days after the effective date said termination.

26.06.    **Center Operating Cost**. Notwithstanding anything to the contrary contained in Article VI of the Lease, Landlord guarantees to Tenant that Tenant's proportionate share of Center Operating Cost, EXCLUDING TAXES AND ASSESSMENTS AS DESCRIBED IN PARAGRAPH 6.02.(A) OF THE LEASE, shall not exceed $2.42 (the "COC Cap")per square foot of Floor Area of the Demised Premises (prorated for the date Tenant opens for business) for the 2009 calendar year. In each calendar year thereafter for the remainder of the Term and any extensions thereof, the COC Cap shall not increase by more than $.20 from one year to the next. By way of illustration, the COC Cap for the 2013 calendar year will be $3.22 (2.42 + .20 + .20 + .20 + .20 = 3.22).

The remainder of this page is intentionally left blank

wcsi.sig
5/4/09

TENANT   LANDLORD

## ARTICLE XXVII – EXHIBITS

The following drawings and special provisions are attached hereto as exhibits and made a part of this Lease:

EXHIBIT A –    General Site Plan

EXHIBIT B –    Sign Criteria.

IN WITNESS WHEREOF, the parties hereto have signed these presents the day and year first above written.

LANDLORD:                         S/G ASSOCIATES, INC.,
                                  a Colorado corporation


                                  By: _____
                                      Donald W. Orendorff, President


TENANT:                           WESTERN CONVENIENCE STORES, INC.,
                                  a Colorado corporation


                                  By _____
                                     Hossein Taraghi, President

wcsi.sig
5/4/09

TENANT    LANDLORD

30

## EXHIBIT A - SITE PLAN



wcsi.sig
5/4/09

## EXHIBIT B – SIGN CRITERIA

### I. SIGN CRITERIA

Tenant shall have all signage designed in a manner compatible with and complimentary to adjacent and facing storefronts and the overall design concept of the Center. All signs must conform in all respects with the following sign criteria:

STOREFRONT SIGNAGE: Tenant's storefront sign shall consist of premium-grade vinyl lettering applied to white "Panaflex" faces and installed in that section of the built-in storefront sign cabinet designated by Landlord for Tenant's use.

The total width of the sign copy shall not exceed sixty-six(66%)percent of the width of the leased store front. The total height of the sign copy shall not be less than two (2') feet or more than three (3') feet and shall be centered both horizontally and vertically on the designated sign cabinet. Wording of the sign shall not include the product sold except as part of the Tenant's trade name or logo.

MULTI-TENANT SIGNAGE:    Tenant's panels on the multi-tenant i.d. sign shall consist of premium-grade vinyl lettering applied to those panels designated by Landlord for Tenant's use.

Copy must be centered both horizontally and vertically on the designated sign panels with one (1") inch minimum top and bottom margins and two (2") inch minimum left and right margins.

### II. APPROVAL

Tenant shall, prior to fabrication, and within ten (10) days of the execution of this Lease, submit two (2) sets of complete shop drawings of the proposed signs to Landlord for approval. Storefront signage drawings must include a building elevation drawing. All drawings must be fully dimensioned and detailed, and specify location, size and style of lettering, material, type of illumination, installation details, color selections and logo design. One shop drawing is to be colored and submitted for approval.

Upon approval by Landlord, Tenant shall apply to Arapahoe County for a sign permit(s). All signs must be approved by Arapahoe County prior to installation. All permits for signs and their installation shall be obtained and paid for Tenant.

### III. CONSTRUCTION and INSTALLATION

A. Design, layout, dimensions, materials, and installation of Tenant signs shall conform in all respects with the approved sign drawings.

B. All signs shall be constructed and installed, including electrical hook-ups, at Tenant's expense. Tenant shall cause its sign to be installed no later than thirty (30) days after Tenant opens for business.

C. Electric service to signs shall be on Tenant's meter. No exposed raceway, crossovers, transformers, or conduit will be permitted excepting for stub-out through the wall. All signs shall bear U.L. Label and installation of Tenant's sign shall comply with all local building codes and electrical codes.

D. Tenant's sign contractor must leave the area surrounding Tenant's sign(s) free of debris after installation. Landlord is authorized to correct all such work at the expense of Tenant.

wcsi.sig
5/4/09

TENANT    LANDLORD

EXHIBIT B
(Page Two )

E. Tenant shall be responsible for the operations of their sign contractor.

## IV. MISCELLANEOUS

A.  No temporary signage or advertising devices of any kind (attraction boards, posters, banners, flags, etc.) will be permitted without the prior written consent of Landlord.

B. At the expiration of this lease, Tenant shall be liable for removal of Tenant's signs and replacement of sign faces.

C. This sign criteria may be changed to reflect the code of governing bodies involved or to reflect a change in, and the adoption of, a new signage design concept for the Center.

wcsi.sig
5/4/09

TENANT   LANDLORD